SEALED ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

2021 DEC 1  AM 11: 32

DEPUTY CLERK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § § § |
| Plaintiff, | § § |
| v. | § § § |
| THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON, | § § § § § § § § § § § § § § § § § § § |
| Defendants, | § § § |
| and | § § |
| DODSON PRAIRIE OIL & GAS LLC, et al. | § § § |
| Relief Defendants. | § § |

No. 4-21CV-1310-0

## FILED UNDER SEAL

### PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND EMERGENCY ANCILLARY RELIEF

Plaintiff United States Securities and Exchange Commission brings this civil law enforcement action on an emergency basis to halt ongoing misconduct by **defendants** The Heartland Group Ventures, LLC ("Heartland GV"); Heartland Production and Recovery LLC ("Heartland PAR"); Heartland Production and Recovery Fund LLC ("Debt Fund I"); Heartland Production and Recovery Fund II LLC ("Debt Fund II"); The Heartland Group Fund III, LLC ("Debt Fund III"); Heartland Drilling Fund I, LP ("Equity Fund I"); Carson Oil Field Development Fund II, LP ("Equity Fund II"); Alternative Office Solutions, LLC ("AOS"); Arcooil Corp.; Barron Petroleum LLC; James Ikey; John Muratore; Thomas Brad Pearsey; Manjit Singh (aka Roger) Sahota; and Rustin Brunson (together the "Defendants") and to safeguard ill-gotten gains currently held by **relief defendants** Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Muratore Financial Services, Inc.; Bridy Ikey; Encypher Bastion, LLC; IGroup Enterprises LLC; Harprit Sahota; Monrose Sahota; Sunny Sahota; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD (together the "Relief Defendants").

In support of this request, the SEC states as follows:

1. This case concerns an ongoing oil and gas offering fraud involving more than $122 million from more than 700 investors. The Heartland Defendants[1] made material misrepresentations and omissions to investors regarding the oil and

---

[1] In this complaint, **"Heartland Entities"** means Defendants Heartland Group Ventures; Heartland PAR; Debt Fund I; Debt Fund II; Debt Fund III; Equity Fund I; Equity Fund II and AOS; while **"Heartland Defendants"** or **"Heartland"** means the Heartland Entities in addition to Defendants Ikey, Muratore, Pearsey, and Brunson.

gas projects in offering documents for five securities offerings. For example, they falsely told investors that certain oil wells were producing hundreds of barrels of oil a day, including wells that had yet to produce a single barrel of oil. They told investors the wells were operated by Texas oil and gas operators with experience dating back to 2003; those operator entities didn't even *exist* until 2017.

2.      The Heartland Defendants directed a total of more than $54 million of Heartland investors' money to Defendants Manjit Singh ("Roger") Sahota ("Sahota"), ArcoOil Corp. ("ArcoOil"), and Barron Petroleum LLC ("Barron Petroleum) (collectively, the "Sahota Defendants")[2] and a third Sahota entity, Relief Defendant Dallas Resources Inc. ("Dallas Resources"), for projects involving working over existing oil and gas wells or drilling new wells. The Sahota Defendants and Dallas Resources used millions of dollars of proceeds from Heartland investors to purchase a private jet, a helicopter, real estate in the Bahamas, and on other non-oil and gas expenditures for themselves. The Sahota Defendants also made material misrepresentations to Heartland, its investors, and persons who solicited prospective investors about the existing and potential production of wells.

3.      To stop this ongoing malfeasance and to safeguard investor proceeds, the SEC seeks:

---

[2] In this complaint, **"Sahota Defendants"** means Defendants Sahota, ArcoOil, and Barron Petroleum.

- **Temporary Restraining Order** and **Preliminary Injunction**: The SEC seeks an Order enjoining defendants from further violating the securities laws, as alleged, particularly Section 5 and Section 17 of the Securities Act of 1933 [15 U.S.C. § 77e; 15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)] and Section 10(b) and Rule 10b-5 of the Securities Act of 1934 [15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5].

- **Asset Freeze**: The SEC seeks to have ill-gotten gains locked-down for certain defendants, as set forth in the proposed order, so that such funds are available as remedies in the form of disgorgement and penalties.

- **Accounting**, **Expedited Discovery**, and **Document Preservation Order**: Defendants and Relief Defendants should be Ordered to provide information on an expedited basis in furtherance of the immediate safeguarding of investor proceeds. They should also be ordered to preserve all evidence relating to this matter.

- **Receiver**: To effectuate the purpose of the injunctive relief, the SEC proposes a Court-ordered receivership to oversee day-to-day control over certain defendants, as set forth in the proposed receivership order, for the purpose of marshalling and preventing the dissipation of assets. The receiver will be authorized to issue notices of lis pendens on real estate in which a defendant and a relief defendant has an interest, and to otherwise provide notice to third-parties to prevent the dissipation of assets.

- **Other Emergency Relief**: Certain Defendants and Relief Defendants, as set forth in the attached order, should be ordered to cooperate with the Court-ordered receiver; repatriate foreign-based assets; forfeit passports to the Clerk of the Court and be barred from leaving the United States pending further Order of the Court; provide an interim, sworn accounting; and be prohibited from soliciting investments in the oil and gas sector during the pendency of litigation.

Except for the asset freeze and receivership, this relief is reflected in the proposed order attached as Exhibit 1 to this motion. The proposed asset freeze order is attached as Exhibit 2 to this motion. The receivership that the SEC requests is reflected in the proposed order attached as Exhibit 3 to this motion.

4

4.      The SEC brings this matter in its capacity as the "statutory guardian charged with safeguarding the public interest in enforcing securities laws." *See SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 808 (2d Cir. 1975). As such, the burden placed on the SEC is less than that required of private litigants seeking comparable relief. *See* 15 U.S.C. § 78aa; 15 U.S.C. § 77v(a); *SEC v. Cavanagh,* 155 F.3d 129, 132 (2d Cir. 1998); *SEC v. Unifund SAL,* 910 F.2d 1028, 1035-36 (2d Cir. 1990); *SEC v. International Swiss Inv. Corp.,* 895 F.2d 1272, 1276 (9th Cir. 1990); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir. 1972); *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1307 (2d Cir. 1971); *SEC v. Compania Internacional Financiera, S.A.,* No. 11 Civ. 4904, 2011 WL 3251813, at *11 (S.D.N.Y. July 29, 2011); *SEC v. Hollnagel,* 503 F. Supp. 2d 1054, 1058 (N.D. Ill. 2007).

5.      Regardless, the SEC has provided this Court with significant evidence of defendants' malfeasance and of the need for immediate relief. This includes:

- The Declaration of SEC Staff Accountant Rebecca Hollenbeck, with exhibits (Tab 1 of the Appendix; A1 – A391): Ms. Hollenbeck analyzed bank account statements for several defendants, among other financial analysis.

- The Expert Submission of Petroleum Engineer J. Daniel Arthur (Tab 2; A392 – A401): Mr. Arthur conducted a site visit to several Heartland wells. He also compared certain representations in Heartland offering documents, and other evidence, to publicly-available information about Heartland's wells on the Texas Railroad Commission's (sometimes called "TRRC") website.

- The Declaration of Brad Massey, with exhibit (Tab 3; A402 – A406): Mr. Massey is a petroleum geologist who Defendant Roger Sahota hired to draft a report. Sahota ultimately sent a doctored version of Mr. Massey's report to Heartland, which in turn distributed it to Heartland investors.

- The Declaration of Betina Gilmore, with exhibits (Tab 4: A407 – A445): Ms. Gilmore works for an oil gathering company, TransOil Marketing LLC, that bought oil from ArcoOil Corp. and Barron Petroleum, Defendant Roger Sahota's entities. As reflected in the declaration, Sahota sent doctored versions of TransOil payment receipts to Heartland.

- The Declaration of Zachary Miller (Tab 5; A446 – A448), and the transcript of the video he captured of Sahota (Tab 6; A449 – A455): Mr. Miller is a Heartland investor and a feeder fund manager who visited one of Heartland's wells, during which he videotaped Sahota making certain representations about the well.

- The Declaration of Heartland investor Scott Ostrowski, with exhibits (Tab 7; A456 – A474)

- A Certification Authenticating Certain Captures of Barron Energy's Website, with exhibits (Tab 8; A475 – A507): These captures of Barron Energy's website show Sahota's new and ongoing oil and gas offering.

- The Declaration of SEC attorney Stephanie Reinhart attaching various documents collecting by the SEC over the course of its investigation (Tab 9; A508 – A578)

6.      The SEC also submits contemporaneously herewith a motion to file this matter under seal, a motion for leave to file on oversized brief, and a Rule 65 Declaration regarding the *ex parte* nature of the SEC's application with respect to the Sahota and Ikey Defendants and Relief Defendants (as that term is set forth in the proposed TRO Order).

WHEREFORE, plaintiff United States Securities and Exchange Commission respectfully requests that the Court grant this motion; grant the relief requested in the proposed orders attached to this motion; and grant such other and further relief as this Court deems just and proper.

Dated: December 1, 2021

Respectfully submitted,

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**

By: _/s/ Jonathan S. Polish_
     Jonathan S. Polish

Jonathan S. Polish (IL Bar No. 6237890)
  *pro hac vice pending*
Stephanie L. Reinhart (IL Bar No. 6287179)
  *pro hac vice pending*
**UNITED STATES SECURITIES
  AND EXCHANGE COMMISSION**
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois 60604
(312) 353-6884 (Polish)
PolishJ@SEC.gov
(312) 886-9899 (Reinhart)
ReinhartS@SEC.gov

Keefe Bernstein (Texas Bar No. 24006839)
**UNITED STATES SECURITIES
  AND EXCHANGE COMMISSION**
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 900-2607
BernsteinK@sec.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON, | § § § § § § § § § § § § § § § § § § | No. _____  FILED UNDER SEAL |
| Defendants, | § § | |
| and | § § | |
| DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD., | § § § § § § § § § § § § § § | |
| Relief Defendants. | § § § § § | |

## [PROPOSED] ORDER FOR TEMPORARY RESTRAINING ORDER AND OTHER EMERGENCY RELIEF

This cause coming to be heard on plaintiff United States Securities and Exchange Commission's ("SEC") emergency motion for a temporary restraining order and other emergency relief (the "TRO Motion") against defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; Arcooil Corp.; Barron Petroleum LLC; James Ikey; John Muratore; Thomas Brad Pearsey; Manjit Singh (aka "Roger") Sahota; and Rustin Brunson (together the "Defendants") and relief defendants Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Muratore Financial Services, Inc.; Bridy Ikey; Encypher Bastion, LLC; IGroup Enterprises LLC; Harprit Sahota; Monrose Sahota; Sunny Sahota; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD. (together the "Relief Defendants"), the Court having considered the SEC's complaint, the TRO Motion, the supporting memorandum of law (for which the SEC is granted leave to file *instanter*), the exhibits and declarations, and the Court being advised of such in the premises, this Court finds as follows:

A.      This Court has jurisdiction over the subject matter of this case and over Defendants and Relief Defendants, and the SEC is a proper party to bring this action seeking the relief sought in the SEC's complaint.

B.      There is good cause to believe that the SEC will ultimately succeed in establishing that the Defendants set forth in Section I below have engaged and are likely to

engage in transactions, practices and courses of business that violate Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77e(a), (c)).]

C.       There is good cause to believe that the SEC will ultimately succeed in establishing that Defendants set forth in Section II have engaged and are likely to engage in transactions, practices and courses of business that violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

D.       There is good cause to believe that the SEC will ultimately succeed in establishing that Defendants set forth in Sections III and IV have engaged and are likely to engage in transactions, practices and courses of business that violate the enumerated subsections of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)].

E.       There is good cause to believe that the SEC will ultimately succeed in establishing that Relief Defendants, directly or indirectly, received funds or benefited from the use of such funds, which are the proceeds, or are traceable to the proceeds, of Defendants' unlawful activity and have no legitimate claim to these funds.

F.       There is good cause to believe that Defendants used improper means to obtain investor funds and assets. There is good cause to believe that investor funds and assets obtained through Defendants' unlawful activities have been misapplied and will be misappropriated, wasted, concealed, dissipated, or otherwise used to the detriment of investors.

G.       There is good cause to believe that, unless immediately restrained and enjoined by Order of this Court, Defendants will continue to engage in such transactions,

acts, practices and courses of business and in such violations; that Defendants' illicit gains that could otherwise be subject to an order of disgorgement may be dissipated; and that documents could be destroyed.

H.    An Order is appropriate directing the repatriation of assets of Defendant Manjit Singh (aka "Roger") Sahota ("Defendant Sahota") and Relief Defendant 1178137 B.C. LTD.; directing Defendant Sahota to forfeit his passports; and prohibiting Defendant Sahota from leaving the United States pending further Order of the Court.

I.    An Order is appropriate prohibiting Defendants from engaging in the solicitation of oil and gas investments.

J.    An Order is appropriate requiring Defendants and Relief Defendants to provide a sworn interim accounting.

K.    There is good cause to believe that it is necessary to preserve and maintain the business records of Defendants and Relief Defendants from destruction, and to take measures to avoid the dissipation of assets, including permitting the issuance of Notices of Lis Pendens and notices to third parties.

L.    Expedited discovery is appropriate to permit a prompt and fair preliminary injunction hearing.

M.    An Order is appropriate directing certain Defendants to reasonably cooperate with a Court-appointed Receiver in this matter in order for the Receiver to gain access to, and to operate, the oil and gas wells and leases that are the subject of the SEC's Complaint is appropriate.

N.    There is good cause to believe that providing notice of these proceeding to Defendants James Ikey and Alternative Office Solutions, LLC; Defendants Sahota),

4

ArcoOil Corp., and Barron Petroleum LLC; and Relief Defendants Bridy Ikey, Encypher

Bastion, LLC, IGroup Enterprises LLC, Harprit Sahota; Monrose Sahota; Sunny Sahota;

Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota

Capital LLC; and 1178137 B.C. LTD. (the "Ex Parte Parties") would result in the

dissipation of assets or the compromising of evidence. The SEC's submissions demonstrate

that immediate and irreparable injury, loss, or damage would have resulted had the SEC

provided such notice to the Ex Parte Parties. Thus, the Court finds that the SEC has

satisfied the requirements set forth in FED. R. CIV. P. 65(b), and that it is appropriate to

proceed *ex parte* with respect to the Ex Parte Parties.

      O.    Therefore, the SEC's TRO Motion should be, and is, granted as set forth

more fully below.

**      IT IS THEREFORE ORDERED:**

**I.      ORDER RESTRAINING CERTAIN DEFENDANTS FROM VIOLATING
THE REGISTRATION PROVISIONS OF THE SECURITIES ACT OF 1933**

      Defendants The Heartland Group Ventures, LLC; Heartland Production and

Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and

Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I,

LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; James

Ikey; John Muratore; Thomas Brad Pearsey; and Rustin Brunson, their agents, servants,

employees, attorneys, entities under their control, and those persons or entities in active

concert or participation with them who receive actual notice of this Order, by personal

service or otherwise, and each of them, are hereby restrained and enjoined from violating

Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] by, directly or

indirectly, in the absence of any applicable exemption:

A.      Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

B.      Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

C.      Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the SEC as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

## II.      ORDER RESTRAINING CERTAIN DEFENDANTS FROM VIOLATING SECTION 10(B) AND RULE 10B-5 OF THE SECURITIES EXCHANGE ACT OF 1934

Defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; ArcoOil Corp.; Barron Petroleum LLC; James Ikey; John Muratore; Thomas Brad Pearsey; and Manjit Singh (aka Roger) Sahota, their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are temporarily

restrained and enjoined from, directly or indirectly, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange:

      A.      employing any device, scheme or artifice to defraud;

      B.      making any untrue statement of material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

      C.      engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## III.   ORDER RESTRAINING CERTAIN DEFENDANTS FROM VIOLATING SECTION 17(a)(1), (2) and (3) OF THE SECURITIES ACT OF 1933

Defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; ArcoOil Corp.; Barron Petroleum LLC; James Ikey; John Muratore; Thomas Brad Pearsey; and Manjit Singh (aka Roger) Sahota, their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are temporarily restrained and enjoined from, directly or indirectly, in violation of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)], and in the offer and sale of

securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, from:

      A.      employing devices, schemes and artifices to defraud;

      B.      obtaining money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or

      C.      engaging in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

## IV.   ORDER RESTRAINING CERTAIN DEFENDANT FROM VIOLATING SECTION 17(a)(2) and (3) OF THE SECURITIES ACT OF 1933

Defendant Rustin Brunson, his agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are temporarily restrained and enjoined from, directly or indirectly, in violation of Section 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)], and in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, from:

      A.      obtaining money and property by means of untrue statements of material fact and by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or

      B.      engaging in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

## V.   TEMPORARY RESTRAINING ORDER REGARDING SOLICITATION OF OIL AND GAS INVESTMENTS

8

Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendants, participating in the issuance, purchase, offer, or sale of any security related to the production, exploration, extraction, purchase or sale of oil or gas, provided, however, that such injunction shall not prevent Defendants James Ikey, John Muratore, Thomas Brad Pearsey, Rustin Brunson, or Manjit Singh (aka Roger) Sahota from purchasing or selling securities listed on a national securities exchange for their own, personal accounts.

## VI.    REPATRIATION

A.      Defendant Manjit Singh "Roger" Sahota and and Relief Defendant 1178137 B.C. LTD., within seven (7) calendar days of entry of this Order, shall repatriate, and take such steps as are necessary to repatriate, to the territory of the United States of America, any and all assets and funds, held by or in the name of any Defendant or Relief Defendant, or in which any Defendant or Relief Defendant, directly or indirectly, has or had any beneficial interest, or over which any Defendant or Relief Defendant maintained or maintains or exercised or exercises control, including, any and all assets and funds (1) held in a foreign bank, brokerage or other financial account; and (2) transferred out of the United States from any account within the territory of the United States at any point from January 1, 2018 to the present.

B.      Defendant Manjit Singh "Roger" Sahota and and Relief Defendant 1178137 B.C. LTD. shall provide to this Court and to the SEC, within seven (7) calendar days of

9

entry of this Order, a written description of all funds and assets required to be repatriated and the status and location of such funds and assets.

## VII.   WRIT OF NE EXEAT AND SURRENDER OF PASSPORT

A.      Immediately upon entry of this Order and service thereof, Defendant Manjit Singh "Roger" Sahota shall surrender to the Clerk of the Court all passports in his possession, custody and control. The Clerk of the Court shall maintain custody of such passports until otherwise ordered by this Court.

B.      Defendant Manjit Singh "Roger" Sahota is prohibited from traveling outside the United States unless and until this Court finds that he, as well as any and all Defendants and Relief Defendants over which he maintains or maintained or exercised or exercises control, has fully complied with the provisions of this Order.

## VIII.   NOTICE OF LIS PENDENS

A.      The SEC and the Court-appointed Receiver in this matter ("Receiver") may file Notices of Lis Pendens, or any similar document that has the effect of clouding title, on all pieces of real property in which a Defendant or a Relief Defendant has an interest. Further, the SEC or Receiver may provide notice to third parties that certain assets belonging to Defendants or Relief Defendants should be safeguarded or locked-down or otherwise prevented from being moved, retrieved, or altered.

B.      Defendants and Relief Defendants are hereby prohibited from further encumbering their interests in any real or personal property by means of pledging it for collateral for any purpose or by allowing it to secure any obligation.

## IX.   ORDER DIRECTING DEFENDANTS TO REASONABLY COOPERATE WITH RECEIVER CONCERNING ACCESS TO AND OPERATION OF OIL/GAS WELLS AND LEASES

10

The Court hereby authorizes the Receiver to operate, and to have access to, the oil and gas wells and leases owned, controlled, or operated by any Defendant or Relief Defendant. Further, all Defendants or Relief Defendants who, before this Order, had owned, controlled, or operated any such wells or leases, are directed to reasonably cooperate with the Receiver for the purpose of the Receiver operating and accessing such wells and leases.

## X.   ALTERNATIVE MEANS OF SERVICE OF PROCESS

Notice of this Order, or any other Orders of the Court or notices required to be issued by the SEC, may be accomplished by delivery of a copy of the Order or notice by first class mail, overnight delivery, international express mail, facsimile, electronic mail, text or instant message, or personally, by agents or employees of the SEC or the Receiver, (i) upon any Defendant, Relief Defendant; and (ii) upon any bank, saving and loan institution, credit union, financial institution, transfer agent, broker-dealer, investment company, oil-and-gas operator, title company, commodity trading company, storage company, or any other person, partnership, corporation, or legal entity that may be subject to any provision of an Order.

## XI.   ORDER PROHIBITING DESTRUCTION OF RECORDS

A.   Defendants and Relief Defendants, and all of their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any of them, are restrained and enjoined from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, ledgers, accounts, financial transactions, statements, electronic files, computers, or any other property or data

of any kind, and wherever located or stored: (1) pertaining in any way to any matter described in the complaint, or any amendment thereto, filed by the Commission in this action; or (2) pertaining in any way to the business of Defendants and Relief Defendants as described in the complaint, the investments described in the Complaint, or the oil and gas wells referenced in the Complaint or described in the Heartland offering documents referenced in the Complaint. (These documents and data are collectively referred to here as "Evidence").

B.      Such Evidence includes both "hard copy" versions and electronically-stored information in Defendants' and Relief Defendants' possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, text messages, data bases, calendars and scheduling information, log, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence, or communications of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, iPads, digital recorders, netbooks, PDA, or other handheld or smartphone devices.

C.      The obligations set forth in this Section include an obligation to provide notice to all Defendants' or Relief Defendants' employees, custodians, agents, or contractors who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third parties, such as an internet service provider or a cloud computing provider, if such Evidence is within Defendants' or Relief Defendants' control.

D.      Defendants and Relief Defendants are ordered to act affirmatively to prevent the destruction of Evidence. This duty may necessitate: (1) quarantining certain Evidence to avoid its destruction or alteration; or (2) discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders.

E.      Defendants and Relief Defendants are directed not to run or install any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

## XII.    EXPEDITED DISCOVERY

A.      The timing restrictions set forth in FED. R. CIV. P. 16, 26(d), 26(f), 30(a)(2)(C), 33, 34, 36 and 45 shall not apply to this proceeding in light of the SEC's requested relief and its demonstration of good cause. Expedited discovery in this proceeding, in conformance with the foregoing timing parameters, is appropriate to permit a prompt and fair hearing on the SEC's motion for a preliminary injunction.

B.      Immediately upon entry of this Order, a party may take depositions upon oral examination of parties and non-parties subject to three (3) calendar days notice. All parties shall comply with the provisions of Rule 45 of the Federal Rules of Civil Procedure regarding issuance and service of subpoenas and documents sought from nonparties, and such nonparties shall be subject to at least three (3) calendar days notice. Parties failing to appear for a properly noticed deposition shall be prohibited from introducing evidence at a hearing on the SEC's request for a preliminary injunction.

C.      Immediately upon entry of this Order, a party shall be entitled to serve requests for the production of documents, to permit entry onto designated land or other

property possessed or controlled by the responding party, requests for admissions, and interrogatories. Absent agreement of the parties or an order of this Court, the responding party shall respond to such discovery requests and produce responsive documents within three (3) calendar days of service.

D.     Service of discovery requests, and subpoenas to appear at a preliminary injunction hearing, shall be sufficient if made upon counsel of record or, if there is no counsel of record, upon the party itself, by email, or text or instant message.

E.     All responses to discovery, all discovery and pleadings, and all information to which the SEC is entitled pursuant to the terms of this Order, including with respect to the interim accounting, shall be delivered to Jonathan S. Polish by email at the following email address: PolishJ@sec.gov.

F.     Should a party fail to respond to a request for admission within five (5) calendar days of service, that request may be deemed admitted for all purposes in this action.

G.     Should a party fail to respond to an interrogatory within five (5) calendar days of service, that party may be prohibited from introducing any evidence concerning the subject of the interrogatory for any purpose in this action.

H.     Should a party fail to produce a responsive document within five (5) calendar days of service, that party may be prohibited from introducing the withheld document for any purpose in this action.

I.     Depositions may be taken remotely.

J.     Depositions taken pursuant to this Order shall not impact the number of depositions a party may take in regular, non-expedited discovery.

14

## XIII.  INTERIM ACCOUNTING

Each Defendant and Relief Defendant is ordered to provide a sworn, interim accounting, under oath, within five (5) days of the issuance of this Order detailing (a) all monies and other benefits received, directly and indirectly, as a result of the activities alleged in the Complaint (including the date on which the monies or other benefit was received and the name and all contact information for the person paying the money or providing the benefit), (b) all assets of the Defendant and Relief Defendant, wherever they may be located and by whomever they may be held (including the name and all contact information for the holder and the amount or value of the holdings), and (c) all accounts with any financial or brokerage institution maintained in the name of, on behalf of, or for the benefit of the Defendant or Relief Defendant (including the name and all contact information for the account holder and the account number and the amount held in each account) held at any point during the period from January 1, 2018 through the date of the accounting.

## IX.  OTHER RELIEF

A.  The United States Marshals Service in any district in which any Defendant or Relief Defendant resides, transacts business, or may be found is authorized and directed to make service of process upon any Defendant or Relief Defendant at the request of the SEC.

B.  United States Marshals assigned to this Court are directed to promptly, in consultation with the SEC, effectuate service of the Complaint and the documents and Orders associated with the SEC's TRO Motion on Defendant Manjit Singh (aka "Roger") Sahota, individually and as registered agent for Defendants ArcoOil Corp. and Barron Petroleum LLC and Relief Defendants Dallas Resources Inc., Leading Edge Energy LLC,

and Sahota Capital LLC; and on Relief Defendants Harprit Sahota, Monrose Sahota, and

Sunny Sahota at their residence or business, including in and around Eldorado, Texas,

Graham, Texas, and/or San Angelo, Texas.

C.    This Court shall retain jurisdiction of this matter for all purposes.

D.    Pursuant to Federal Rule of Civil Procedure 65(c), no security is required of

the SEC.

## X.    PRELIMINARY INJUNCTION HEARING DATE, DURATION OF ORDER

A.    The SEC's TRO Motion is also deemed to be a motion for a preliminary

injunction order. The SEC is not required to file or serve a separate motion for a preliminary

injunction in order to seek the entry of such preliminary relief pursuant to FED. R. CIV. P. 65.

The Court will consider all materials filed by the SEC in connection with its TRO Motion to

have been filed in connection with the SEC's motion for a preliminary injunction hearing. The

SEC shall be permitted, but is not required, to file a supplemental brief and supporting exhibits

in advance of any preliminary injunction hearing.

B.    Any party wishing to make a written submission with respect to the SEC's

motion for a preliminary injunction shall do so no later than 72 hours before the

commencement of the preliminary injunction hearing set forth below, and shall be served on

the SEC in the manner set forth in Section XII(E) above.

C.    Any party wishing to be heard on this matter shall appear in this Court, on the

SEC's motion for preliminary injunction, before the Honorable Judge [Judge Name], at [Time]

o'clock [PM or AM], on the [Number] day of [Month, Year], in Courtroom [Name] of the

United States District Court for the Northern District of Texas, Fort Worth Division, 501 West

10th Street, Fort Worth, Texas, 76102 as soon thereafter as the matter can be heard, to show

16

cause, if there be any, why this Court should not enter a preliminary injunction and order

preliminary relief against them, pursuant to Rule 65 of the Federal Rules of Civil Procedure,

extending the temporary relief granted in this Order pending a final adjudication on the merits.

        D.      Solely those aspects of this Order that constitute a temporary restraining order

pursuant to Rule 65 of the Federal Rules of Civil Procedure, Sections I through V of this

Order, shall expire at 11:59 p.m. on November ___, 2021, unless otherwise ordered by this

Court.

**SO ORDERED this _____ day of _____, 2021 by**


                       JUDGE: _____,_____
                                       [JUDGE TITLE]

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES SECURITIES          §
AND EXCHANGE COMMISSION,           §
                                   §
          Plaintiff,               §
                                   §
          v.                       §
                                   §
THE HEARTLAND GROUP VENTURES,      §
LLC; HEARTLAND PRODUCTION AND      §
RECOVERY LLC; HEARTLAND            §
PRODUCTION AND RECOVERY FUND LLC;  §
HEARTLAND PRODUCTION AND           §
RECOVERY FUND II LLC; THE          §
HEARTLAND GROUP FUND III, LLC;     §
HEARTLAND DRILLING FUND I, LP;     §
CARSON OIL FIELD DEVELOPMENT FUND  §
II, LP; ALTERNATIVE OFFICE SOLUTIONS, §
LLC; ARCOOIL CORP.; BARRON         §
PETROLEUM LLC; JAMES IKEY; JOHN    §     No. _____
MURATORE; THOMAS BRAD PEARSEY;     §
MANJIT SINGH (AKA ROGER) SAHOTA; and §   FILED UNDER SEAL
RUSTIN BRUNSON,                    §
                                   §
          Defendants,              §
                                   §
          and                      §
                                   §
DODSON PRAIRIE OIL & GAS LLC;      §
PANTHER CITY ENERGY LLC; MURATORE  §
FINANCIAL SERVICES, INC.; BRIDY IKEY; §
ENCYPHER BASTION, LLC; IGROUP      §
ENTERPRISES LLC; HARPRIT SAHOTA;   §
MONROSE SAHOTA; SUNNY SAHOTA;      §
BARRON ENERGY CORPORATION;         §
DALLAS RESOURCES INC.; LEADING     §
EDGE ENERGY, LLC; SAHOTA CAPITAL   §
LLC; and 1178137 B.C. LTD.,        §
                                   §
          Relief Defendants.       §
                                   §
_____    §

## [PROPOSED] ASSET FREEZE ORDER

Plaintiff United States Securities and Exchange Commission has filed an Emergency Motion for a Temporary Restraining Order and Emergency Ancillary Relief ("Motion"). The Court, having considered the Motion, the memorandum of law in support thereof, the declarations, exhibits and all other documents filed contemporaneously therewith; having reviewed the SEC's complaint and other submissions it has filed in this matter; having considered the arguments of counsel; and having been fully advised of such in the premises, hereby finds as follows:

A.     This Court has subject matter jurisdiction over this case and there is good cause to believe it will have personal jurisdiction over defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; ArcoOil Corp.; Barron Petroleum LLC; Manjit Singh (aka Roger) Sahota; and relief defendants Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Encypher Bastion, LLC; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC, which is also known as Sahota Capital Corporation or Sahota Capital Inc.; and 1178137 B.C. LTD. (any and each of these parties is referred to in this Order as an "Asset Freeze Party"; they are collectively referred to herein as the "Asset Freeze Parties"), and the SEC is a proper party to bring this action seeking the relief sought in its complaint.

B.     The SEC has made a sufficient and proper showing and there is good cause to believe that it will ultimately succeed in establishing that the Defendants have engaged and

2

are likely to engage in transactions, practices and courses of business that violate the federal securities laws, as alleged in the complaint, including Sections 5 of the Securities Act of 1933 [15 U.S.C. § 77e], Section 17a of the Securities Act of 1933 [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)] and/or Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 [15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5].

C.      There is good cause to believe that the Defendants have obtained money or property from investors as a result of their securities laws violations alleged in the complaint.

D.      There is good cause to believe that unless frozen by Order of this Court, assets that otherwise could have been subject to an order of disgorgement pursuant to Section 20(d) of the Securities Act of 1933 [15 U.S.C. § 77t(d)] and Section 21(d) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)] will be dissipated, concealed, or transferred from the jurisdiction of this Court.

E.      An Order freezing assets of the Asset Freeze Parties is necessary to preserve the *status quo* and to protect this Court's ability to award equitable relief for the benefit of any investors who may have been harmed by the Defendants' conduct.

F.      There is good cause to believe that providing notice of these proceeding may have resulted in the dissipation of assets or the compromising of evidence. The SEC's submissions clearly demonstrate that immediate and irreparable injury, loss, or damage would have resulted had the SEC provided such notice.

G.      Therefore, the SEC's Motion should be, and is, granted as set forth more fully below.

3

For these reasons, it is **HEREBY ORDERED**:

A.     All funds and other assets held, managed or controlled, whether directly or indirectly, by Asset Freeze Parties are hereby frozen.

B.     The Asset Freeze Parties, and any of their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission, email, or otherwise, are hereby restrained from, directly or indirectly, transferring, selling, encumbering, receiving, concealing, changing, pledging, hypothecating, assigning, liquidating, incurring debt upon, or otherwise disposing of, or withdrawing, any funds, assets or other property (including money, real or personal property, securities, chose in action or any other form of asset or property of any kind whatsoever).

C.     The asset freeze articulated herein extends to accounts at any financial institution: (1) in the name of any Asset Freeze Party; (2) that any Asset Freeze Party has signatory authority or a beneficial interest; (3) that any Asset Freeze Party directly or indirectly controls, owns or manages; (4) held for the benefit of any Asset Freeze Party, including through corporations, trusts, partnerships, agents, nominees, friends or relatives; or (5) which are traceable to funds and assets, wherever located, belonging to the victims of the securities law violations alleged in the SEC's complaint.

D.     Any Asset Freeze Party, and their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile

transmission, email, or otherwise, is hereby restrained from, directly or indirectly, transferring, selling, encumbering, receiving, concealing, changing, pledging, hypothecating, assigning, liquidating, incurring debt upon, or otherwise disposing of, or withdrawing, any funds or assets, that constitute investor funds or any accounts or property into which investor funds were deposited or invested.

E.     Any Asset Freeze Party, and their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission, email, or otherwise, are hereby restrained from opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Asset Freeze Party, or subject to access by them, without providing the SEC prior notice and an opportunity to inspect the contents in order to determine whether they contain assets subject to this Order.

F.     Any bank, financial or brokerage institution or other person or entity holding any such funds or anything else of value, in the name of, for the benefit of, or under the control of any Asset Freeze Party, or any account holding investor funds wherever located, and that receives actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, email, facsimile transmission or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment, or other disposal of any such funds, assets or property belonging to any Asset

5

Freeze Party, or in which any Asset Freeze Party has a beneficial interest, wherever located and held in whatever name.

G.      Asset Freeze Parties, and each of their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including facsimile transmission, electronic mail, or overnight delivery service, shall hold and retain funds and other assets of any Asset Freeze Party presently held by them, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority (including assets held in the name of or for the benefit of any Asset Freeze Party, in whatever form such assets may presently exist and wherever located, and shall prevent any withdrawal, sale, payment, including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any such funds or other assets, which are hereby frozen, including, but not limited to, such funds held in the following accounts:

| INSTITUTION NAME | ACCOUNT NUMBER | ACCOUNT HOLDER |
|---|---|---|
| Bank of America | XXXXXXXXX6254 | Heartland Production & Recovery LLC |
| Wells Fargo Bank | XXXXXXX0120 | Heartland Production & Recovery LLC |
| Bank of America | XXXXXXXX6335 | Heartland Production & Recovery Fund LLC |
| Wells Fargo Bank | XXXXXX0112 | Heartland Production & Recovery Fund LLC |
| Wells Fargo Bank | XXXXXX2762 | Heartland Production & Recovery Fund II LLC |
| Wells Fargo Bank | XXXXXX8394 | Heartland Drilling Fund I LP |
| Wells Fargo Bank | XXXXXX4082 | Heartland Group Ventures LLC |
| Wells Fargo Bank | XXXXXX4074 | Heartland Group Fund III LLC |
| Wells Fargo Bank | XXXXXX3034 | Carson Oil Field Development Fund II LP |

| INSTITUTION NAME | ACCOUNT NUMBER | ACCOUNT HOLDER |
|---|---|---|
| PlainsCapital Bank | XXXXXX0001 | Alternative Office Solutions LLC |
| PlainsCapital Bank | XXXXXX0901 | Alternative Office Solutions LLC |
| Wells Fargo Bank | XXXXXX0313 | Encypher Bastion LLC |
| JP Morgan Chase Bank | XXXXX5581 | ArcoOil Corp. |
| Wells Fargo Bank | XXXXXX6891 | Barron Petroleum LLC |
| First State Bank | XXX0550 | Barron Petroleum LLC |
| Wells Fargo Bank | XXXXXX3910 | Dallas Resources Inc. |
| Wells Fargo Bank | XXXXXX8283 | Dallas Resources Inc. |
| Wells Fargo Bank | XXXXXX4815 | Barron Energy Corp. |
| Wells Fargo Bank | XXXXXX1573 | Panther City Energy LLC |
| Wells Fargo Bank | XXXXXX6661 | Panther City Energy LLC |
| Bank of Jackson Hole | XXXXX4116 | ArcoOil Corp. |
| Bank of Jackson Hole | XXXXX4108 | Barron Energy Corp. |
| Bank of Jackson Hole | XXXXX4132 | Barron Petroleum LLC |
| Bank of Jackson Hole | XXXXX4140 | Dallas Resources Inc. |
| Bank of Jackson Hole | XXXXX4124 | Sahota Capital Corporation and/or Sahota Capital LLC and/or Sahota Capital Inc. and/or Sahota Capital Corp. |
| The Toronto Dominion Bank | XXX9049 | 1178137 B.C. Ltd. |
| JP Morgan Chase Bank | XXXXX8608 | Leading Edge Energy LLC |

H.     To facilitate this asset freeze, no later than 9 a.m. tomorrow, each Asset

Freeze Party shall identify with specificity to the SEC all accounts, including bank accounts,

brokerage accounts, retirement accounts, and/or trust accounts, in which that Asset Freeze

Party has an ownership or beneficial interest.

**SO ORDERED this _____ day of December, 2021 by**


JUDGE: _____

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE HEARTLAND GROUP VENTURES, LLC;<br>HEARTLAND PRODUCTION AND RECOVERY<br>LLC; HEARTLAND PRODUCTION AND<br>RECOVERY FUND LLC; HEARTLAND<br>PRODUCTION AND RECOVERY FUND II LLC;<br>THE HEARTLAND GROUP FUND III, LLC;<br>HEARTLAND DRILLING FUND I, LP; CARSON<br>OIL FIELD DEVELOPMENT FUND II, LP;<br>ALTERNATIVE OFFICE SOLUTIONS, LLC;<br>ARCOOIL CORP.; BARRON PETROLEUM<br>LLC; JAMES IKEY; JOHN MURATORE;<br>THOMAS BRAD PEARSEY; MANJIT SINGH<br>(AKA ROGER) SAHOTA; and RUSTIN<br>BRUNSON,**<br><br>**Defendants,**<br><br>**and**<br><br>**DODSON PRAIRIE OIL & GAS LLC, et al.**<br><br>**Relief Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>No. _____ |

**FILED UNDER SEAL**

**(PROPOSED) ORDER APPOINTING RECEIVER**

    **WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S.

Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a receiver

in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants (the "Receivership Assets") and those assets of the Relief Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; Arcooil Corp.; and Barron Petroleum LLC; and Relief Defendants Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Encypher Bastion, LLC; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD. (collectively, the "Receivership Parties").

2.      Until further Order of this Court, Deborah Williamson, Dykema Gossett PLLC is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Parties.

2

**I. Asset Freeze**

3.      Except as otherwise specified herein, all Receivership Assets and Recoverable Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, concealing, selling, destroying, commingling, pledging, offsetting, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with any entity or person, including financial institutions such as banks, brokerage firms and mutual funds.

4.      Receivership Parties and each of their past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, vendors and third parties (including, but not limited to, all entities hosting servers, databases, any proprietary information, any electronic or digital format information, backup or storage files and/or computers, and all entities with possession of any aircraft), consultants and employees of the entity Receivership Parties, as well as all other entities and individuals, are hereby prohibited from selling, encumbering, transferring, gifting or otherwise disposing of any Receivership Assets and Recoverable Assets. The Receiver shall file a motion and obtain authority of this Court to dispose of, or abandon, any Receivership Assets and/or Recoverable Assets.

**II. General Powers and Duties of Receiver**

5.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Parties under applicable state and federal law, by the governing charters, bylaws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.

3

R. Civ. P. 66.

6.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Parties are hereby dismissed and the powers of any general partners, officers, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Parties' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Parties and shall pursue and preserve all of their claims.

7.      No person holding or claiming any position of any sort with any of the Receivership Parties shall possess any authority to act by or on behalf of any of the Receivership Parties.

8.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Parties, including, but not limited to, monies, funds, securities, credits, effects, goods, electronic devices, including phones and computers, chattels, lands, aircraft, vehicles, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Parties own, possess, lease, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Parties; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estates and hold in the Receiver's possession, custody and control all Receivership Property, pending further Order of this Court;

D.      To terminate, continue and/or modify any business operations;

E.      To abandon any asset that, in the exercise of the Receiver's reasonable business judgment, will not provide benefit or value to the Receivership Estates;

4

F.      To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging all duties as Receiver;

G.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Parties;

H.      To engage and employ persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, field and contract operators, appraisers, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

I.      To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

J.      The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

K.      To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging the Receiver's duties;

L.      To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and

M.      To enforce the rights of any Receivership Parties for policies

N.      To take such other action as may be approved by this Court.

### III. Access to Information

9.      The Receivership Parties and their past and/or present officers, employees, consultants, directors, agents, managers, general and limited partners, shareholders, trustees, attorneys, accountants, vendors and other third parties (including, but not limited to, all entities hosting servers, databases, any proprietary information, well files, and all other information related to the facilities, operation, drilling, or production of hydrocarbons, any electronic or digital format information, backup or storage files and/or computers), as well as those acting in their place, are

5

hereby ordered and directed to preserve and turn over to the Receiver or designee forthwith all paper and electronic information of, and/or relating to, the Receivership Parties and/or all Receivership Property, including, but not limited to, all storage lockers, well equipment, leased property, well sites, pumping equipment, offices, control and communication equipment and facilities; such information shall include but not be limited to computers, laptops, servers, ipads, tablets, cellphones, other communication devices, backup data devices, electronic files and databases, books, records, documents, accounts and all other instruments and papers, whether in digital format, or otherwise.  All such parties are directed to immediately turn over to the Receiver all passwords, pass cards, combinations to safes, keys to any locked cabinets or facilities, fobs or key cards, pass codes, user IDs, secondary user ID information such as recovery questions and answers, and any other device or information required to access any information of any Receivership Party.

10.     Manjit "Roger" Singh Sahota, Monrose Sahota, Sunny Sahota, Harprit Sahota, James Ikey, John Muratore, Thomas Brad Pearsey, Bridy Ikey, Rustin Brunson, and the Receivership Parties and their past and/or present officers, directors, agents, managers, general and limited partners, shareholders, employees, consultants, trustees, attorneys, accountants, vendors and other third parties (including, but not limited to, all entities hosting servers, databases, any proprietary information, any electronic or digital format information, backup or storage files and/or computers), are hereby ordered and directed to (a) preserve and not delete or encrypt any and all data, numbers, email, texts, electronic communications, recordings, and pictures, and (b) preserve and not destroy, alter or make unusable any devices, including, but not limited to, telephones, cell phones, cellular devices, computers, servers, laptops, iPads, tablets, cameras, and all other electronic and cellular devices.

11.     Within twenty (20) days of the entry of this Order, the Receivership Parties shall

file with the Court and serve upon the Receiver and the Commission a sworn statement, listing:

(a) the identity, location and estimated value of all Receivership Property; (b) all employees (and

job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of

the Receivership Parties; and, (c) the names, addresses and amounts of claims of all known

creditors of the Receivership Parties.

12.     Within thirty (30) days of the entry of this Order, the Receivership Parties shall file

with the Court and serve upon the Receiver and the Commission a sworn statement and accounting,

with complete documentation, covering the period from January 1, 2018 to the present:

> A.      Of all Receivership Property, wherever located, held by or in the name of
> the Receivership Parties, or in which any of them, directly or indirectly, has or had
> any beneficial interest, or over which any of them maintained or maintains and/or
> exercised or exercises control, including, but not limited to: (a) all securities,
> investments, funds, real estate, automobiles, aircraft, jewelry, coins, guns, gold
> silver, platinum, palladium, jade, diamonds, sapphires, emeralds, rubies,
> alexandrites, tanzanites, pearls, all electronic or crypto currency and any relevant
> access data, keys, passwords, and passcodes, and other assets, stating the location
> of each; and (b) any and all accounts, including all funds held in such accounts,
> with any bank, brokerage or other financial institution held by, in the name of, or
> for the benefit of any of them, directly or indirectly, or over which any of them
> maintained or maintains and/or exercised or exercises any direct or indirect control,
> or in which any of them had or has a direct or indirect beneficial interest, including
> the account statements from each bank, brokerage or other financial institution;
>
> B.      Identifying every account at every bank, brokerage or other financial
> institution: (a) over which Receivership Parties have signatory authority; and (b)
> opened by, in the name of, or for the benefit of, or used by, the Receivership Parties;
>
> C.      Identifying all credit, bank, charge, debit or other deferred payment card
> issued to or used by each Receivership Defendant, including but not limited to the
> issuing institution, the card or account number(s), all persons or entities to which a
> card was issued and/or with authority to use a card, the balance of each account
> and/or card as of the most recent billing statement, and all statements for the last 36
> months;
>
> D.      Of all assets received by any of them from any person or entity, including
> the value, location, and disposition of any assets so received;

7

E.      Of all funds received by the Receivership Parties, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F.      Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G.      Of all transfers of assets made by any of them.

13.     Within thirty (30) days of the entry of this Order, the Receivership Parties shall provide to the Receiver and the Commission copies of each of the Receivership Parties' complete federal income tax returns with all schedules for 2018 through the present with all relevant and necessary underlying documentation.

14.     The Receivership Parties' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Parties, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Parties. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

15.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

16.     The Receivership Parties are required to assist the Receiver in fulfilling the

8

Receiver's duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### IV. Access to Books, Records and Accounts

17.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, registration certificates for all aircraft, and all other documents or instruments relating to the Receivership Parties. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to immediately turn such property over to the Receiver.

18.     The Receivership Parties, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Parties, and any persons receiving notice of this Order by personal service, facsimile transmission, electronic mail, text, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Parties are hereby directed to deliver the same to the Receiver, the Receiver's agents and/or employees.

19.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, any of the Receivership Parties that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

> A.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Parties except upon instructions from the Receiver;
>
> B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;
>
> C.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

9

D.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

### V. Access to Real and Personal Property

20.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Parties, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, equipment, automobile titles, and registration certificates for all aircraft.

21.     The Receiver is authorized to take immediate possession of all real property of the Receivership Parties, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission, electronic mail, text, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing or erasing anything on such premises.

22.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change all locks, security codes, and other access to the premises described above. The Receiver shall have exclusive control of the keys and any security codes. The Receivership Parties, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.  In order to execute the express and implied terms

10

of this Order, the Receiver is authorized to change all user IDs and passwords and access for any electronic files or information of the Receivership Parties and/or all Receivership Property described above.  The Receiver shall have exclusive control of all such access, user IDs and passwords.

23.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Parties, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

24.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out the Receiver's duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate, including, without limitation, taking control of, sequestering and securing following:

A.     premises at 471 State Highway 67, Graham, Texas 76450;

B.     real estate and premises in or near Eldorado, Texas with the coordinates: 30.847820, -100.934100, owned by Dallas Resources Inc.;

C.     real estate and premises in or near San Angelo, Texas, with the description of Lot 8, Section 1, STONEWALL FIELDS SUBDIVISION, Tom Green County, Texas; Property ID R000103065 in Tom Green County, Texas; and/or 12642 Raspberry Lane, San Angelo, Texas;

D.     model CL-600-2B16 fixed wing multi-engine aircraft manufactured by Canadair Ltd., with N-Number 486BG, serial number 5133, and registered owner Dallas Resources Inc., wherever it may be located.

11

E.      model A109S rotorcraft aircraft manufactured by Agusta Spa, with N-Number 709DM, serial number 22043, and registered owner Dallas Resources Inc., wherever it may be located; and

F.      Certain oil and gas assets located in Val Verde County, Texas, which shall be identified by the Receiver.

## VI. Notice to Third Parties

25.     The Receiver shall promptly give notice of this appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Parties, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

26.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

27.     In furtherance of the Receiver's responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

28.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Parties (the "Receiver's Mail"), including all mail addressed to, or for the

benefit of, the Receivership Parties. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Parties shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Parties. The Receivership Parties shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.  The Receiver is authorized to receive, review and respond to all email, electronic communications, and electronic messages of the Receivership Parties.  The Receiver shall be given all passwords and other identifying information necessary to take control of all Receivership Parties' electronic mail and messaging, and the Receiver shall have exclusive control of all such email, messages and related data.

29.     Subject to payment for services provided after the appointment of the Receiver, any entity furnishing internet, broadband, pumping, transportation, drilling, water, electric, telephone, sewage, garbage or trash removal services to the Receivership Parties shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

30.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Parties, or their  officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection

13

with such policies.

## VII. Injunction Against Interference with Receiver

31.     The Receivership Parties and all persons receiving notice of this Order by personal service, facsimile, electronic mail, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

      A.     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property, or moving any aircraft bearing N-numbers 486BG or 709DM from their current location;

      B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      C.     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or

      D.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

32.     The Receivership Parties shall cooperate with and assist the Receiver in the performance of the Receiver's duties.

33.     Creditors and all officers and directors of the Receivership Parties are hereby prohibited and restrained from filing, commencing, taking, or enforcing any action, including the filing of any lawsuit in any federal or state court as well as any voluntary or involuntary bankruptcy case pursuant to the United States Bankruptcy Code, against any Receivership Property or any of

14

the Receivership Parties.

34.     Landlords and lessors are prohibited and restrained from prohibiting or restricting access to any Receivership Property or commencing, taking, or enforcing any action against Receivership Property or the Receivership Parties.

35.     Lessors and owners of surface rights are prohibited and restrained from prohibiting or restricting access to any Receivership Property or commencing, taking, or enforcing any action against Receivership Property or any of the Receivership Parties.

36.     The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VIII. Stay of Litigation

37.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings and voluntary or involuntary bankruptcy cases or petitions, arbitration proceedings, foreclosure actions, Texas Railroad Commission proceedings, default proceedings, or other actions of any nature involving: (a) the Receiver, in the Receiver's capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Parties, including subsidiaries and partnerships; or, (d) any of the Receivership Parties' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

38.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

39.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this

Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

### IX. Managing Assets

40.     The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

41.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

42.     Subject to Paragraph 43, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all personal and real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

43.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

44.     The Receiver is authorized to take all actions to manage, maintain, and/or winddown business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with

vendors, investors, governmental and regulatory authorities, and others, as appropriate.

### X. Investigate and Prosecute Claims

45.     Subject to the requirement, in Section VIII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in the Receiver's discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

46.     Subject to the Receiver's obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Parties were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

47.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Parties. All files of any attorney representing any Receivership Parties shall be immediately turned over to the Receiver upon written request.

48.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, the Receiver's Retained Personnel (as that term is defined below), and the

Receivership Estate.

## XI. Bankruptcy Filing

49.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any of the Receivership Parties. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 5  above, the Receiver is vested with management authority for all entity Receivership Parties and may therefore file a chapter 11 petition and manage a chapter 11 case and estate.

50.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Parties in bankruptcy proceedings.

## XII. Liability of Receiver

51.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter.

52.     The Receiver, the Receiver's attorneys and other agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to

18

act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

53.    This Court shall retain exclusive jurisdiction over any action or proceeding filed against the Receiver or  Retained Personnel based upon acts or omissions committed in their representative capacities.

54.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIII. Recommendations and Reports

55.    The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

56.    Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

57.    The Quarterly Status Report shall contain the following;

A.    A summary of the operations of the Receiver;

B.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.    A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.      A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

58.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XIV. Fees, Expenses and Accountings

59.     Subject to Paragraphs 61 – 66  immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

60.     Subject to the paragraphs that follow, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

61.     The Receiver and Retained Personnel are entitled to reasonable compensation and

expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

62.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

63.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

64.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

65.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing

thereof.

66.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in

a format to be provided by SEC staff, as well as the Receiver's final application for compensation

and expense reimbursement.

**IT IS SO ORDERED, this _____ day of December, 2021.**

_____
**UNITED STATES DISTRICT JUDGE**

22