IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON,<br><br>Defendants,<br><br>and<br><br>DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD.,<br><br>Relief Defendants. | No. 4-21CV-1310-O |

1

122686.000001  4857-3819-0598.2

## **INITIAL REPORT OF DEBORAH D. WILLIAMSON, AS RECEIVER**

Deborah D. Williamson, in her capacity as the Court-appointed Receiver (the "Receiver") for the Receivership Parties (as defined in the Court's December 3, 2021 *Order Appointing Receiver* [ECF No. 17]) and receivership estates (collectively, the "Estates") in the above-captioned case (the "Case" or "Receivership"), hereby files this *Initial Report of Deborah D. Williamson, as Receiver* (the "Report").[1] The *Order Appointing Receiver* [ECF No. 17] (the "Receivership Order") requires the Receiver to file a report within thirty (30) days of the end of each calendar quarter. However, at the beginning of a receivership and given the hearing scheduled for December 14, 2021, the Receiver believes it is appropriate to file an Initial Report regarding the first ten (10) days of the Receivership. Reasonable efforts have been made to fairly and accurately summarize the current status of the Receivership but any summary, of necessity, will omit details. The Receiver will be available to answer the questions of the Court on December 14, 2021, or otherwise at the Court's request.

### I.. Protection of information and assets

Upon entry of the *Asset Freeze Order* [ECF No. 14] (the "Asset Freeze Order"), Plaintiff United States Securities and Exchange Commission (the "SEC" or "Commission") served the Asset Freeze Order on those financial institutions which it had previously identified being used by one or more of the Asset Freeze Parties (as defined in the Asset Freeze Order). That process ultimately froze approximately $2,298,000 (the "Seized Bank Accounts").

On the morning of December 3, 2021, the Receiver became aware that the Court had entered the Receivership Order. The Receiver immediately began coordinating with the counsel

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Receivership Order.

2

for the SEC, federal marshals, Ms. Rose Romero, and attorneys at Dykema Gossett PLLC ("Dykema"), as counsel to the Receiver. In accordance with Paragraph 8.A of the Receivership Order, it was agreed that the immediate focus would be on (a) serving the Asset Freeze Parties where counsel had not agreed to accept service. The parties included Arcooil Corp.; Barron Petroleum LLC; Manjit Singh (aka Roger) Sahota; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC which is also known as Sahota Capital Corporation or Sahota Capital Inc.; 1178137 B.C. Ltd[2].; Harprit Sahota; Monrose Sahota[3]; and Sunny Sahota (collectively, the "Sahota Parties"). Other parties served include Alternative Office Solutions, LLC ("AOS"); James Ikey; Bridy Ikey; Encypher Bastion, LLC; and IGroup Enterprises LLC (collectively, the "Ikey Parties"). The Receiver immediately began to attempt to take control of assets pursuant to the Receivership Order. Two attorneys from the San Antonio office of Dykema, accompanied by a federal marshal and other law enforcement personnel, went to the ranch owned by Dallas Resources Inc. in Eldorado, Texas, and a house owned by Dallas Resources Inc. in San Angelo, Texas. The federal marshal served all of the Sahota Parties other than Monrose Sahota. The Dykema attorneys also took possession of 23 boxes of papers, files, cash, computers, phones, and easily portable and potential valuable objects. They were at the ranch for approximately 5.0 hours and the house for approximately 2.2 hours. Mr. Sunny Sahota claimed to not know the password for his phone.[4]

---

[2] It is my understanding that the SEC is attempting to serve 1178137 B.C. Ltd pursuant to the Hague Convention.

[3] It is my understanding that Monrose Sahota was in the Bahamas and has not yet been served.

[4] Counsel to the Receiver made an attempt to determine whether assets belonged to Receivership Parties or were otherwise subject to the Asset Freeze Order. For example, there was no attempt to take possession of the personal computer of the spouse of Sunny Sahota. The situation is more complicated for Manjit Singh (a/k/a Roger) Sahota and Harprit Sahota as apparently the SEC has been unable to identify any bank accounts in their individual names.

At approximately the same time, two attorneys from the Dallas office of Dykema went to the Ikey Parties in Mansfield, Texas. They served the Ikey Parties, and also obtained documents, computers, phones, and other information. However, it was discovered later that Mr. James Ikey and Ms. Bridy Ikey had each failed to deliver a phone. Those phones have now been retrieved. A second and third visit to the Ikey Parties was made on December 7, 2021 and December 13, 2021. Access was also obtained to locations where one or more of the Ikey Parties kept business records and other potentially valuable items. Control of those locations was requested and allegedly granted to the Receiver.

At approximately the same time, an attorney from the Dallas office of Dykema went to Graham, Texas, the alleged operations center of one or more of the Sahota Parties. Possession was taken of computers, phones, and documents. Locks were changed on the offices. Passcode/logins were also obtained from a person at that location. A second visit to the Graham location was made on December 7, 2021, to change the locks to an adjacent residence where coins, watches, jewelry, electronics, and other potentially valuable information and items were retrieved.

At approximately the same time, an attorney from the Dallas office of Dykema went to the airport located at Sherman, Texas, where a helicopter and plane owned by Dallas Resources Inc. were located. Possession was taken of the registration, flight logs, and other information which would prevent any pilot from legally flying the aircraft, and papers were served on the airport managers advising them to prevent the aircraft from being moved.

At approximately the same time, the Receiver went to 777 Main Street ("777 Main Street"), Fort Worth, Texas, which was the headquarters of The Heartland Group Ventures, LLC, Heartland Production and Recovery LLC, Heartland Production and Recovery Fund LLC, Heartland Production and Recovery Fund II LLC, The Heartland Group Fund III, LLC, Heartland Drilling

4

Fund I, LP Carson Oil Field Development Fund II, LP, Dodson Prairie Oil and Gas LLC, and Panther City Energy LLC (collectively, the "Heartland Parties"). The Heartland Parties, through Rustin Brunson, have been cooperative. The Receiver had the locks changed at the 777 Main Street location, conducted a preliminary inventory, and removed certain documentation, computers, and phones. Subsequent visits have been made to that location.

## II.  Security

In furtherance of the prosecution of this action, the Receiver has attempted to maintain a chain of custody of the information and electronics received from any Receivership Party or Asset Freeze Party. Maintaining a secure chain of custody is particularly important with data which is electronically stored. In order to minimize the costs to the Estates, the SEC has agreed to attempt to "image" or otherwise capture the information on all electronic phones, laptops, etc. It was decided that efforts would be made to (a) keep a "charge" on those electronics which had a charge when taken into custody and (b) prevent remote "wiping" of the electronics. It was also agreed that we prioritize a particular phone of Mr. Ikey's that he asserted held irreplaceable pictures of his grandchildren.[5] The Receiver and her counsel are in the process of working with the SEC to image other electronics including some servers found in the possession of Mr. Ikey. The Receiver is also in discussions with the SEC regarding the development of an efficient method of identifying documentation which needs to be scanned and which should be left solely in hard copy (at least initially) and the process for such scanning.

One or more of the Ikey Parties provided "back office" accounting and administrative services to one or more Heartland Parties. As part of that "back office" services, one or more

---

[5] Both James Ikey and Bridy Ikey previously testified that phones, which were not initially turned over to counsel for the Receiver, were paid for by AOS.

agreements were entered into with Encrypt Fortress based in Panama: https://encryptfortress.com/. These agreements allegedly included servers which house all of the Heartland investor data and accounting records. It is the Receiver's preliminary opinion that the agreements were not "market" and may include payments unrelated to services to oil and gas operations. Prior to the filing of the Complaint, the SEC had requested that the information belonging to any Heartland Party or any Ikey Party be produced. On information and belief, Encrypt Fortress did not fully comply. Upon entry of the Receivership Order, the Receiver requested that the information be fully turned over as it was now under her control. Negotiations are on-going. Encrypt Fortress is requiring the consent of Mr. Ikey, on behalf of IGroup Enterprises, LLC to permit a full imaging of the servers which allegedly contain information owned by Receivership Parties.

The Receiver has also been able to access the QuickBooks accounts for the Heartland Parties and the Ikey Parties.

### III.    Identification of Assets

The Asset Freeze Parties (as defined in the Asset Freeze Order), owned the aircraft, season tickets and licenses for Dallas Cowboys tickets and other events at AT&T Stadium, a collection of jade, real estate, oil and gas properties in at least Archer, Sutton, Crockett, Palo Pinto, Young, Val Verde, and Schleicher Counties with over 140 wells, vehicles (including vehicles originally in the possession of Mr. Brunson and Mr. Ikey), at least two drilling rigs, working interests, equipment, production payments, other checks, and cash on deposit.

####    A.    Aircraft

A decision has been made to re-locate the aircraft to a hangar which may have more restricted access. The current estimate of the hangar will be $2000 a month per aircraft. At least three parties have already indicated an interest in purchasing one or more of the aircraft. If

possible, the Receiver would prefer to avoid the costs of a broker. The purchase prices were approximately $4 million dollars (collectively). The Receiver has not had an opportunity to ascertain an appropriate range of a sales price given the current uncertainty over the maintenance history, the engine contracts, the maintenance schedule, the flight time, and other issues which may affect value. The Receiver is also in the process of obtaining a transfer of registration in compliance with FAA regulations.

      B.    <u>Dallas Cowboy Tickets and Other Events at AT&T Stadium</u>

In the late summer of 2021 (around July 22-27), one or more of the Sahota Parties entered into agreements to purchase 8 "Owner Club Seat Options" with a cost of $150,000 each. There were two down payments totaling $180,000. There are also two "Reserved Seats" where the options were $10,000 each. The reserved seats have been fully paid for. Season tickets were also purchased. Playoff tickets are also available on a "Pay As We Play". The Receiver will evaluate whether there is any financial benefit to purchasing any playoff tickets and reselling them on an exchange. She is also in the process of evaluating the best method for liquidating the Owner Club Seat Options and the Reserved Seat Options. The Owners Club tickets/licenses also provide an opportunity to purchase tickets to other events held at AT&T Stadium. On August 19, 2021, tickets were purchased for the Big 12 Championship, and on December 7, 2021, tickets for were purchased for the PBR/American Rodeo. On information and belief, those tickets were purchased by or with the cooperation of Sunny Sahota. As the right to acquire those tickets arose from a Receivership Asset, the Receiver is exploring whether there is any re-sale value to those tickets.

C.   Jade

On information and belief, there is jade from Guatemala.  A visual inspection of the jade has been conducted.  The Receiver has no opinion as to value.  The Receiver has received a reference for a potential expert in Guatemala jade figurines and other objects.

D.   Real Estate

There is a "ranch" located in Eldorado, Texas, which is owned by Dallas Resources Inc. and occupied by Manjit Singh (aka Roger) Sahota and Harprit Sahota.  The Receiver has allowed Mr. and Mrs. Sahota to remain after receiving evidence of current insurance.  There is a house in San Angelo, Texas, currently occupied by Sunny Sahota, his wife, and their minor children.  This house is also owned by Dallas Resources Inc.  The Receiver has also allowed them to remain in possession.  However, it is the intent of the Receiver hire a broker to sell both pieces of real estate, subject to Court approval, in the near future.

There are at least three (3) properties in the Bahamas (and potentially a fourth or an option on a fourth piece of property).  At least one of the properties is listed on VRBO at https://www.vrbo.com/2266040?noDates=true&unitId=2830912.  Funds related to the acquisition of the properties (and/or the option) can be traced to a Receivership Party.  The Receiver is attempting to ascertain what entities have title to the properties.  She has requested that the Sahota Parties cooperate in transferring control and title to the Receiver.  Absent a consensual agreement in the very near future, the Receiver may seek assistance of this Court.

Negotiations have begun to terminate the lease at 777 Main Street.  The Receiver was contacted by a party interested in acquiring the space.  The Receiver's goal is to sell the office equipment located at 777 Main Street and vacate that property by the end of 2021.

There is property located in Graham, Texas, which appears to be owned by a Receivership Party. The Receiver is exploring whether to continue to use that location, primarily to store information related to the oil and gas wells and leases. It could also be used to store some equipment and property located in storage units.

The Receiver understands that there may be property in Guatemala. She has not yet identified that property.

E.   Oil and Gas Properties

The Receiver reviewed the "Heartland and Barron Petroleum Evaluation" prepared by J. Daniel Arthur, P.E. attached to the Complaint as Tab 2 [ECF No. 6-1, p. 399 - 408]. There are approximately 142 wells located across multiple leases which were identified as being associated with Heartland offerings. The Receiver also spoke with Mr. Arthur and reviewed certain other publicly available information. Investors were led to believe that there was significant value in the oil and gas assets of one or more of the Receivership Defendants. The Receiver was concerned that (a) equipment was vulnerable to theft, (b) there may be environmental liabilities, and (c) the value investors were led to believe simply did not exist. As a result, working with Mr. Darrell Jones,[6] she entered into a Master Services Agreement ("MSA") with Contract Oil and Gas Operations LLC ("Contract"). Mr. Arthur had previous experience with Contract and/or Scott Robinowitz, a Manager of Contract. Neither the Receiver nor Mr. Jones had any prior experience with Contract or Mr. Robinowitz. Pursuant to the terms of the MSA, Contract is to deliver to the Receiver a "State of the Assets Report" no later than December 31, 2021. The SEC, Mr.

---

[6] The Receiver and Mr. Jones recognize that as of the filing of this Report, the Court has not authorized the retention of Mr. Jones. However, given the rapidly evolving situation and the need for immediate recommendations and decisions regarding the oil and gas assets and equipment, Mr. Jones agreed to assist pending a decision from this Court.

9

Robinowitz, Mr. Arnold, Mr. Jones, and the Receiver held a status update call on Saturday, December 11, 2021. Mr. Robinowitz has already visited multiple locations and identified a candidate to assist in on-going operations for at least some of the properties. Mr. Jones and Mr. Robinowitz were also able to obtain the cooperation of landowners and essentially "freeze" two drilling rigs which may have $1-3 million in value. The inspection has also revealed that equipment and vehicles have been moved. It has not been determined who moved the equipment or where they are currently located. Locks have also been changed without the consent of the Receiver.

### F. Other Equipment

There was equipment and vehicles in Graham which were also moved about the time the Asset Freeze Order was entered. Upon further investigation, that property was located at a location in Graham. The property had allegedly been removed pursuant to an oral ruling by a state court judge but not yet sold. The Receiver is looking for another, less expensive, location for the equipment.

### IV. Administrative Actions

Change of address notices have been filed for every location identified to date. The mail is being directed to the Receiver.

Notices have been filed pursuant to 28 U.S.C. §754 in 10 districts where there was evidence that the Assets Freeze Parties might have in the past or currently have assets. As there is a filing fee of $49.00 required in each district, the Receiver decided to not file in every district in the United States and, instead sought an extension of the time to file such notice, which this court granted on December 10, 2021. *See* ECF No. 30. The Receiver will continue to review the

122686.000001 4857-3819-0598.2

information which becomes available to determine whether additional notices should be filed and/or a further extension should be sought.

The Receiver has opened two bank accounts at the International Bank of Commerce. One account is for general purposes and the second will hold production payments until it is determined what amounts, if any, should be paid each month to third party holders of royalty interests (collectively, the "Receivership Accounts").

Notice has been given to purchasers of production to direct payments to the Receiver.

A website has been created to provide information to investors and creditors regarding the status of the receivership: www.heartlandreceivership.com. Dykema is in the process of creating an FAQ for the website. This should allow the Receiver to quickly, inexpensively, and broadly convey information regarding the Receivership. The Receiver has and will continue to update the website. Information regarding dispositions of personal property will be posted.

An email address has been created for direct communication by investors and other parties in interest: heartlandreceivership@dykema.com. The email address is currently being monitored by attorneys at Dykema, but it is anticipated that in the next few weeks that role will be handled primarily by a paralegal.

The process of transferring funds from the Seized Bank Accounts to the Receivership Bank Accounts is ongoing.

The Receiver is also focused on identifying a reasonably priced location to store and ultimately sell vehicles in the Fort Worth area, as there are at least 3 trucks which are Receivership Assets.

Similarly, the Receiver is obtaining advice on where to store other equipment where it cannot be easily removed.

## V.     General Communications

The Receiver and a Dykema attorney have been providing and receiving updates to and from the SEC on a regular basis.

The Receiver and/or a Dykema attorney have spoken to former employees and/or contractors including former pilots.

The Receiver and/or a Dykema attorney have spoken to counsel, potential counsel, and/or former counsel for Receivership Parties and/or Asset Freeze Parties.

The Receiver and Ms. Romero have worked with the SEC on a consent to an injunction regarding the Receivership Parties.

The Receiver and/or her attorneys have had multiple meetings with Receivership Parties, including a multi-hour meeting with Mr. Brunson and his counsel.

The Receiver has drafted an initial letter to investors, which has been posted on the Receivership website and was mailed to the known investors.  A notice of the initial investor letter has been filed with this Court.  *See* ECF No. 46.  The Receiver has also spoken directly with multiple investors.

The Receiver will need assistance with identifying and paying third party claims related to production.  This is complicated by the fact that the Receivership Parties did not operate off a single integrated system or with a single set of employees.  The Receiver has identified a firm that has experience with only the Heartland operations.  The Receiver will also need assistance in preparing accurate reports to the Texas Railroad Commission and other regulatory agencies.  She will also need assistance in preparing tax returns and the quarterly reports required by the SEC.  The Receiver is in the process of obtaining proposals from financial firms.

<table>
<tr><td>Dated December 13, 2021.</td><td>Respectfully submitted,<br><br>By: <i><u>/s/ Deborah D. Williamson</u></i><br>    Deborah D. Williamson<br>    <i>(Receiver)</i><br>    State Bar No. 21617500<br>    dwilliamson@dykema.com<br>    <b>DYKEMA GOSSETT PLLC</b><br>    112 East Pecan Street, Suite 1800<br>    San Antonio, Texas 78205<br>    Telephone: (210) 554-5500<br>    Facsimile: (210) 226-8395</td></tr>
</table>

    Rose L. Romero
    State Bar No. 17224700
    Rose.Romero@RomeroKozub.com
    **LAW OFFICES OF ROMERO | KOZUB**
    235 N.E. Loop 820, Suite 310
    Hurst, Texas 76053
    Telephone: (682) 267-1351
    and
    Jeffrey R. Fine
    *(Lead Counsel)*
    State Bar No. 07008410
    jfine@dykema.com
    Alison R. Ashmore
    State Bar No. 24059400
    aashmore@dykema.com
    **DYKEMA GOSSETT PLLC**
    1717 Main Street, Suite 4200
    Dallas, Texas 75201
    Telephone: (214) 462-6400
    Facsimile: (214) 462-6401
    and
    Danielle N. Rushing
    State Bar No. 24086961
    drushing@dykema.com
    **DYKEMA GOSSETT PLLC**
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    Telephone: (210) 554-5500
    Facsimile: (210) 226-8395

    **COUNSEL TO RECEIVER**

122686.000001 4857-3819-0598.2

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 13, 2021, the foregoing document was served via this Court's CM/ECF system.

                                                    */s/ Danielle N. Rushing*
                                                    Danielle N. Rushing

122686.000001 4857-3819-0598.2