## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON, | § § § § § § § § § § § § § § § § § § | No. 4-21CV-1310-O |
| Defendants, | § § § | |
| and | § § | |
| DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD., | § § § § § § § § § § § § | |
| Relief Defendants. | § § § | |

<u>**UNOPPOSED**</u>
<u>**APPLICATION TO EMPLOY BDO USA, LLP AS FORENSIC EXPERT AND**</u>
<u>**INVESTIGATIVE CONSULTANT TO RECEIVER EFFECTIVE AS OF**</u>
<u>**DECEMBER 23, 2021**</u>

Deborah D. Williamson, in her capacity as the Court-appointed Receiver (the "<u>Receiver</u>") for the Receivership Parties (as defined in the Receivership Order) and the receivership estates (collectively, the "<u>Estates</u>") in the above-captioned case (the "<u>Case</u>"), hereby files this *Unopposed Application to BDO USA, LLP as Forensic Expert and Investigative Consultant to Receiver Effective as of December 23, 2021* (the "<u>Application</u>"), pursuant to this Court's *Order Appointing Receiver* [ECF No. 17] (the "<u>Receivership Order</u>"),[1] requesting entry of an order, substantially in the form of the proposed order (the "<u>Proposed Order</u>") attached hereto as **Exhibit A**, granting approval to employ BDO USA, LLP ("<u>BDO</u>" or the "<u>Firm</u>") as a forensic expert to the Receiver in this Case.  In support of the Application, the Receiver respectfully represents as follows:

## I.    <u>Background</u>

1.    On December 1, 2021 (the "<u>SEC Application Date</u>"), Plaintiff, the Securities and Exchange Commission (the "<u>SEC</u>"), filed its application for the appointment of a receiver for the Receivership Parties (the "<u>SEC Application</u>").

2.    On December 3, 2021 this Court determined that entry of an order appointing a receiver over the Receivership Parties was both necessary and appropriate to marshal, conserve, hold, and operate all of the Receivership Parties' assets pending further order of this Court. Accordingly, the Court entered the Receivership Order on December 3, 2021 appointing Deborah D. Williamson as the Receiver over the Estates in this Case.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Receivership Order.

3.      Pursuant to Paragraph 60 of the Receivership Order, "the Receiver is authorized to solicit persons and entities ('Retained Personnel') to assist [her] in carrying out the duties and responsibilities described in this Order."

4.      Prior to the filing of the Complaint, Alternative Office Solutions, LLC ("AOS") and Encypher Bastion, LLC ("Encypher") (both Receivership Parties) allegedly entered into one or more agreements with Encrypt Fortress ("Encrypt").  Pursuant to such agreements, Encrypt hosted electronic data and provided other services through servers located in Panama.  *See* encryptfortress.com.

5.      AOS provided "back office support" to one or more of the Heartland Receivership Parties.

6.      Prior to the filing of the Complaint, the United States Securities and Exchange Commission ("SEC") sought to obtain full "images" of information on the servers in Panama.  The SEC was unsuccessful in that attempt but was instead provided selected documents.  The alleged rationale for denial of the request for a full image of the server(s) was that other data on the servers belonged to non-Heartland entities.  The Receiver has been informed that the other entities are Encypher and IGroup Enterprises LLC ("IGroup").  IGroup is a relief defendant but not a Receivership Party.  On information and belief, IGroup is owned and/or controlled by James Ikey ("Ikey"), a Defendant.  Ikey has given written consent to Encrypt to permit a full imaging of any server holding data owned by any Receivership Party.  Encrypt has now agreed to permit a full imaging of the servers in Panama.

7.      The Receiver understands that the data is at risk of loss or even destruction if Encrypt elects to "turn off" or repurpose the servers.  As of the filing of this Motion, Encrypt has agreed to cooperate but that could change.

## II.    Relief Requested

8.    The Receiver seeks entry of an order authorizing the employment and retention of BDO effective as of December 23, 2021, as a forensic consultant to the Receiver to handle issues related to the Estates.   Prior to the selection of BDO, the Receiver or her advisors identified multiple firms which could assist with the retrieval of the information on the servers in Panama. She requested proposals from two (2) firms.  The Receiver, her advisors and representatives of the SEC met with both of those firms.  Ultimately, the Receiver selected BDO based on its estimated price structure, expertise and connections in Panama.  A copy of the engagement letter between the Receiver and BDO is attached hereto as **Exhibit B**.  The Receiver anticipates that she will request approval to hire professionals to assist with other matters including bookkeeping, technical accounting, financial advisory services, the preparation of required regulatory reports, including to the Texas Railroad Commission, the SEC and the IRS.  This application is not intended to preclude or limit the ability of the Receiver to seek to engage other professionals to perform such services.

9.    BDO's assistance may include, without limitation, the following:

    a.    Preservation of electronically stored information ("ESI");

    b.    Analysis and reporting of ESI and relevant documents;

    c.    Processing and hosting of targeted ESI for review; and

    d.    Any other tasks the Receiver requests that BDO perform.

10.    In addition, it is likely that the Receiver and the BDO team will be confronted with and be required to respond to matters that cannot be anticipated at this time.  The issues listed above and ancillary issues related thereto are collectively referred to in this Application as the "Data Issues."

11.     The approval of this Application effective as of December 23, 2021, will not prejudice any parties-in-interest in this Case.  Given the potential risk to the data on the servers in Panama, the Receiver further submits that the relief requested herein is necessary, appropriate, and in the best interests of the Estates and its parties-in-interest.

### III.     BDO's Qualifications

12.     The Receiver believes the most efficient and cost-effective decision is to hire BDO for the Data Issues, with the assistance of her counsel as necessary.  BDO has personnel in Panama if in person services are required.  The Receiver believes that employing BDO for these purposes makes business sense and is in the best interest of the Estates.

13.     In addition, BDO is unaware of any conflicts with the Receivership Parties or the Receivership Assets and/or Recoverable Assets.

14.     The Receiver also believes that BDO has considerable experience in matters of this character and is well-qualified to provide services in connection with the Receivership Estates due to the Firm's expertise in the field of ESI processing, data hosting, investigation, and recovery, and forensic analysis.

15.     While additional services may be required, BDO has provided a range of $11,000 - $23,000 to retrieve, image and host the retrieved data from the servers in Panama.

### IV.     Compensation and Reimbursement

16.     Subject to this Court's approval of BDO's engagement, the Receiver proposes to compensate BDO on an hourly basis.  BDO's standard rates are subject to periodic adjustment, typically on May 1 of each year.  Set forth below are BDO's standard hourly rates as of the filing of this Application:

| Professional Title | Standard Hourly Rate (through May 1, 2022) |
|---|---|
| Partner/Managing Director | $425 - $695 |
| Director/Senior Manager | $350 - $400 |
| Manager | $295 - $325 |
| Associate/Senior Associate | $200 - $275 |

17.     In addition to the compensation for services rendered, BDO shall be reimbursed for all reasonable out-of-pocket expenses and internal charges for certain support activities incurred relating directly to work performed for the Receiver in this Case.

18.     BDO shall seek approval for compensation of its fees and expenses on an interim and final basis in accordance with the Court's Receivership Order, the local rules of this Court, the Billing Instructions, and other applicable orders of the Court.  BDO will keep contemporaneous time records on a daily basis and track its billings on a tenth-of-an-hour basis with time charges allocated accordingly.

19.     To the best of the Receiver's knowledge, neither BDO nor any employee thereof has any current connection with the Receivership Parties, the Estates, or any other significant parties-in-interest in this Case, nor represents any interest adverse to the Receivership Parties, the Estates, or any other significant parties-in-interest in this Case on the matters to which BDO is being retained.

20.     The Receiver submits that BDO's retention in this Case would be in the best interests of the Estates and the parties-in-interest thereof.

## VI.   <u>Notice</u>

21.    Notice of this Application has been provided via CM/ECF to: (a) counsel to the SEC and (b) any persons who have formally appeared and requested notice in this Case, as applicable.  The Receiver submits that no other or further notice need be provided.

**WHEREFORE**, the Receiver respectfully requests that this Court enter the Proposed Order (a) authorizing the employment of BDO as forensic expert and investigative consultant for the Receiver in this Case effective as of December 23, 2021; (b) authorizing BDO to be compensated as set forth herein; and (c) awarding the Receiver such other and further relief that this Court deems just and proper.

Dated: December 23, 2021                        Respectfully submitted,

                                                By: */s/ Deborah D. Williamson*
                                                    Deborah D. Williamson
                                                    *(Receiver)*
                                                    State Bar No. 21617500
                                                    dwilliamson@dykema.com
                                                    **DYKEMA GOSSETT PLLC**
                                                    112 East Pecan Street, Suite 1800
                                                    San Antonio, Texas 78205
                                                    Telephone: (210) 554-5500
                                                    Facsimile: (210) 226-8395

                                                    Jeffrey R. Fine
                                                    *(Lead Counsel)*
                                                    State Bar No. 07008410
                                                    jfine@dykema.com
                                                    Alison R. Ashmore
                                                    State Bar No. 24059400
                                                    aashmore@dykema.com
                                                    **DYKEMA GOSSETT PLLC**
                                                    1717 Main Street, Suite 4200
                                                    Dallas, Texas 75201
                                                    Telephone: (214) 462-6400
                                                    Facsimile: (214) 462-6401

                                                    and

                                                    Danielle N. Rushing
                                                    State Bar No. 24086961
                                                    drushing@dykema.com
                                                    **DYKEMA GOSSETT PLLC**
                                                    112 East Pecan Street, Suite 1800
                                                    San Antonio, Texas 78205
                                                    Telephone: (210) 554-5500
                                                    Facsimile: (210) 226-8395

                                                    and

Rose L. Romero
State Bar No. 17224700
Rose.Romero@RomeroKozub.com
**LAW OFFICES OF ROMERO | KOZUB**
235 N.E. Loop 820, Suite 310
Hurst, Texas 76053
Telephone: (682) 267-1351

**COUNSEL TO RECEIVER**

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 21, 2021, I conferred with Plaintiff Securities and Exchange Commission (the "SEC") as to the terms and conditions of the employment of BDO USA, LLP as set forth in the foregoing application. The SEC is not opposed to the relief sought in this motion.

*/s/ Deborah D. Williamson*
Deborah D. Williamson
Receiver

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, the foregoing document was served via CM/ECF on all parties appearing in this case, including counsel for Plaintiff Securities and Exchange Commission.

*/s/ Danielle N. Rushing*
Danielle N. Rushing

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES** | § | |
| **AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE HEARTLAND GROUP VENTURES, LLC;** | § | |
| **HEARTLAND PRODUCTION AND RECOVERY** | § | |
| **LLC; HEARTLAND PRODUCTION AND** | § | |
| **RECOVERY FUND LLC; HEARTLAND** | § | |
| **PRODUCTION AND RECOVERY FUND II LLC;** | § | |
| **THE HEARTLAND GROUP FUND III, LLC;** | § | |
| **HEARTLAND DRILLING FUND I, LP; CARSON** | § | |
| **OIL FIELD DEVELOPMENT FUND II, LP;** | § | |
| **ALTERNATIVE OFFICE SOLUTIONS, LLC;** | § | |
| **ARCOOIL CORP.; BARRON PETROLEUM** | § | |
| **LLC; JAMES IKEY; JOHN MURATORE;** | § | |
| **THOMAS BRAD PEARSEY; MANJIT SINGH** | § | **No. 4-21CV-1310-O** |
| **(AKA ROGER) SAHOTA; and RUSTIN** | § | |
| **BRUNSON,** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| | § | |
| **and** | § | |
| | § | |
| **DODSON PRAIRIE OIL & GAS LLC; PANTHER** | § | |
| **CITY ENERGY LLC; MURATORE FINANCIAL** | § | |
| **SERVICES, INC.; BRIDY IKEY; ENCYPHER** | § | |
| **BASTION, LLC; IGROUP ENTERPRISES LLC;** | § | |
| **HARPRIT SAHOTA; MONROSE SAHOTA;** | § | |
| **SUNNY SAHOTA; BARRON ENERGY** | § | |
| **CORPORATION; DALLAS RESOURCES INC.;** | § | |
| **LEADING EDGE ENERGY, LLC; SAHOTA** | § | |
| **CAPITAL LLC; and 1178137 B.C. LTD.,** | § | |
| | § | |
| **Relief Defendants.** | § | |
| | § | |
| | § | |

1

### ORDER APPROVING EMPLOYMENT OF BDO USA, LLP AS FORENSIC EXPERT AND INVESTIGATIVE CONSULTANT TO RECEIVER EFFECTIVE AS OF DECEMBER 23, 2021

Before the Court is the *Application to Employ BDO USA, LLP as Forensic Expert and Investigative Consultant to Receiver Effective December 23, 2021* (the "Application"),[2] filed by Deborah D. Williamson, Court-appointed Receiver in the Case, pursuant to the Court's *Order Appointing Receiver*, entered on December 3, 2021, in this Case; the Court finds that: (i) it has subject matter jurisdiction over the Application; (ii) it has personal jurisdiction over the Receivership Parties; (iii) BDO USA, LLP ("BDO") (a) does not represent or hold any interests adverse to the Receivership Parties or the Estates and (b) is disinterested and not otherwise disqualified from representing the Receiver; (iv) the Receiver's employment of BDO under the scope outlined in the Application is in the best interests of the Estates; (v) proper and adequate notice of the Application has been given and that no other or further notice is necessary; (vi) the SEC does not oppose the Application; (vii) (a) the Receiver engaged BDO on December 23, 2021, and (b) the employment of BDO should be effective as of that date; and (viii) the Receiver has shown good, sufficient, and sound business purpose and justification for the relief requested in the Application, and that, after due deliberation thereon, good and sufficient cause exists for approving the relief requested therein; accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is **APPROVED**.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed in the Application.

2.      Pursuant to the Receivership Order, the Receiver is authorized to employ and retain BDO as forensic expert and investigative consultant in accordance with the compensation terms detailed in the Application effective as of December 23, 2021.

3.      BDO is authorized to provide such professional services in this Case and assist the Receiver in relation to the Data Issues outlined in the Application, including, without limitation, any issues ancillary and related thereto.

4.      BDO shall file applications for the approval of compensation of its fees and expenses on an interim and final basis in compliance with the Court's Receivership Order, the local rules of this Court, and such other procedures that may be fixed by an order of this Court.

**SO ORDERED.**

[_____], 202_.

_____
REED O'CONNOR
UNITED STATES DISTRICT JUDGE

<u>Prepared and submitted by</u>:
Deborah D. Williamson
*(Receiver)*
State Bar No. 21617500
dwilliamson@dykema.com
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

Jeffrey R. Fine
*(Lead Counsel)*
State Bar No. 07008410
jfine@dykema.com
Alison R. Ashmore
State Bar No. 24059400
aashmore@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401

and

Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

**COUNSEL TO RECEIVER**

**EXHIBIT B**

**BDO**

312-856-9100                    330 North Wabash, Suite 3200
Fax:  312-856-1379              Chicago, IL 60611
www.bdo.com

December 22, 2021

Ms. Deborah D. Williamson
As Receiver appointed in case no 4-21cv-1310-O
pending in Northern District of Texas, Fort Worth Division
Dykema Gossett PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX  78205

**Re: Heartland Group Receivership**

Dear Ms. Williamson:

Thank you for selecting **BDO USA, LLP**.  We appreciate the opportunity to provide exceptional professional services to you in your capacity as **receiver appointed in Case No. 4-21cv-1310-O** ("Receiver",  "Client" or "you").  Your services will be provided by BDO USA, LLP and any of our wholly owned subsidiaries or affiliates (collectively "BDO" or "we") agreeing to be bound to the Terms and Conditions (as defined below).

This engagement letter, along with all attachments hereto, all serve to confirm our understanding of the services requested, and the terms and conditions of our engagement ("Services Agreement" or "Agreement") between BDO and Client.  This Agreement shall be effective for a period of three years beginning on the date of this letter (the "Effective Date").

**Description of Services**

BDO shall provide the services described on Attachment A hereto (the "Services"), which Services may be modified upon our mutual written agreement (email shall suffice).

This Agreement shall also be governed by the terms and conditions set forth in Attachment B and, if applicable, Attachment C.

**Fee Arrangement**

BDO's fee for Services will be based on BDO's standard rates unless stated otherwise by BDO in a written form.  BDO understands and agrees that payment of its fees and expenses are subject to approval of the district court pursuant to the terms of the Order Appointing Receiver. Those terms include, but are not limited to (a) Court approval of the engagement of BDO, (b) BDO's compliance with the SEC billing guidelines attached hereto as Attachment E and (c) approval of BDO fee applications. BDO also agrees that the Receiver has no liability for payment of any amounts to BDO as any payments will be made from assets of the receivership (the "Receivership Estates"). We also will bill Client for our reasonable out-of-pocket expenses and our internal charges for certain support activities.  Our internal charges include certain flat-rate amounts that reflect an allocation of estimated costs associated with general office services such as computer usage, telephone charges, facsimile transmissions, postage and photocopying.

| Title | Hourly Rates* |
|---|---|
| Partner/ Managing Director | $425 - $695 |

| Director/Senior Manager | $350 - $400 |
| Manager | $295 - $325 |
| Associate/Senior Associate | $200 - $275 |

*Billing rates are subject to firm-wide adjustment as of May 1st.*

Work not set forth in Attachment A will (i) be governed by the Services Agreement, (ii) be billed at our standard rates, or rates otherwise agreed to, and (iii) include charges for related expenses.

Please acknowledge your acceptance of the foregoing by signing and returning a copy of this Agreement to Eric Shirk.

Very truly yours,

**BDO USA, LLP**

By: _____
Name:   Eric Shirk
Title:    Principal

### ATTACHMENT A

**DESCRIPTION OF SERVICES**

**DESCRIPTION OF SERVICES**

We anticipate that our initial professional consulting services might include, but not be limited to, the following:

1. Discussions with you or those designated by you to assist us in understanding this matter
2. Preservation of electronically stored information currently in servers located in Panama
3. Analysis and reporting of electronically stored information ("ESI") and relevant documents as requested
4. Processing and hosting of targeted ESI for legal review

In addition, we may provide other professional services as requested by you or other parties to the matter. The current estimate of the fees range from $11,000 to $23,000. The Receiver recognizes that this is merely an estimate and not a budget or fixed amount.

**Attachment B**
**BDO USA, LLP**
**Terms & Conditions of the Services Agreement**

**1.       General.**  The Services Agreement will apply to all services BDO performs at Client's request and pursuant to the Client's directions (the "Services") even if such Services are not expressly covered by a SOW.  To the extent there is any conflict or inconsistency between the Services Agreement and any SOW and, unless the parties specifically state in writing that they intend to modify a term of this Services Agreement, the terms of the Services Agreement shall prevail.

**2.       Termination.**  Each party shall have the right to terminate this Services Agreement and/or any SOW, as applicable, at any time by giving written notice to the other party not less than 30 business days before the proposed effective date of termination. If this Services Agreement terminates or is terminated while one or more SOWs (or Services not covered by a SOW) remain outstanding, the terms of this Services Agreement shall continue to apply to the SOW and any other outstanding Services, and the Services Agreement shall be deemed finally terminated only upon termination of all outstanding SOWs, or completion of the Services thereunder. Termination of one or more SOWs will not automatically terminate this Services Agreement. In addition, BDO may terminate this Services Agreement and/or any SOW and outstanding Services immediately if BDO reasonably determines that it must do so to comply with applicable professional standards, applicable laws or regulations (e.g., a conflict of interest arises).  Those provisions in this Services Agreement and any SOW hereunder that, by their very nature, are intended to survive termination shall survive after the termination of the Services Agreement or any SOW, including, but not limited to, the parties' obligations related to any of the following provisions: indemnification, limitations on liability, confidentiality, dispute resolution, payment and reimbursement obligations, limitations on use or reliance, and non-solicitation.

If this Services Agreement and/or any SOW is terminated (or any other Services not covered by a SOW are terminated), Client agrees to compensate BDO for the Services performed and expenses incurred through the effective date of termination.  To the extent Client terminates any SOW that includes any licensing arrangements under which Client receives from BDO a license to use, or obtain access to, External Computing Options (as defined below), Client agrees that it will be responsible for all fees and expenses associated with such licenses for External Computing Options through and including the date that is thirty days after date the Client provides such termination notice to BDO.

**3.       Indemnification and Limitation of Liability.**  As the Services are intended for Client and not third parties, Client agrees to release, indemnify and hold harmless BDO and its partners, principals, employees, affiliates, contractors and agents (collectively "BDO Group") from and against all claims, liabilities, damages or expenses (including attorneys' fees) of any kind relating to the Services or this Agreement, whether arising in contract, statute, tort (including without limitation, negligence) or otherwise (collectively, the "Claims") that are brought by a third-party.  Client further agrees to release, indemnify and hold harmless BDO Group from all Claims relating to the Services or this Agreement attributable to any misrepresentations made by Client.  Except to the extent finally determined to have resulted from BDO Group's fraud or intentional misconduct, BDO Group's aggregate liability to Client for all direct or third-party Claims shall not exceed the amount of fees paid by Client to BDO during the 12 months preceding the date of the Claim pursuant to the applicable SOW or such other work performed outside a SOW, under which the Claim arose.  In no event shall BDO Group be liable for consequential, special, indirect, incidental, punitive, or exemplary losses or damages, loss of profits or losses resulting from loss of data, business or goodwill relating to the Agreement, regardless of whether BDO has been advised of the possibility of such damages.  Client shall bring any Claims related to the Services or otherwise related to this Agreement no later than one year after (i) the completion of the Services set forth in SOW under which the Claims arose or (ii) if the applicable SOW or this Agreement was terminated prior to completion of the

Services, the date the applicable SOW or this Agreement was terminated.  In no event shall the preceding sentence extend any otherwise legally applicable period of limitations on such Claims.

4.      **Third-Parties and Use.**  All Services and deliverables hereunder shall be solely for Client's use and benefit pursuant to our client relationship.  This engagement does not create privity between BDO and any person or party other than Client, and is not intended for the express or implied benefit of any third party.  No third party is entitled to rely, in any manner or for any purpose, on the Services or deliverables of BDO hereunder.

5.      **BDO Responsibilities.**  BDO's Services will not constitute an audit, review, compilation, examination or other form of attest engagement.  BDO shall have no responsibility to address any legal matters or questions of law.  After completion of the Services, BDO will have no responsibility to update its advice, recommendations or work product for changes or modifications to the law and regulations or for subsequent events or transactions, unless Client separately engages BDO in writing to do so.

6.      **Client Responsibilities.**  For BDO to remain independent, professional standards require BDO to maintain certain respective roles and relationships with Client regarding the Services.  Client understands and agrees that BDO will not perform management functions or make management decisions on behalf of Client.  However, BDO will provide advice and recommendations to assist management of Client in performing its functions and fulfilling its responsibilities.  In connection with BDO's provision of Services, Client agrees that Client shall perform the following functions: (a) make all management decisions and perform all management functions with respect to the Services performed by BDO; (b) assign an individual who possesses suitable skill, knowledge and experience to oversee such Services and to evaluate the adequacy and results of such Services; and (c) accept responsibility for the results of such Services.

Because professional and certain regulatory standards require us to be independent, in both fact and appearance, with respect to the Client in the performance of our Services, any discussions that you have with personnel of BDO regarding employment could pose a threat to our independence.  Therefore, BDO requests that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

7.      **Client Materials.**  BDO shall be entitled to rely on and assume, without independent verification, that all representations, assumptions, information and data supplied by or on behalf of Client, its personnel, representatives, and agents (the "Client Materials") are complete and accurate. Client is responsible for ensuring that all Client Materials provided to BDO may be transferred to BDO and processed in accordance with the terms of this Agreement and applicable laws, and that to the extent required thereunder Client has obtained all consents required for BDO's receipt and use of the Client Materials. Client agrees that it will not transmit or make accessible to BDO in any manner personally identifiable information unless reasonably required for BDO's performance of the Services. BDO will not audit or otherwise verify the accuracy or completeness of the data you submit, although we may need to ask you for clarification of some of the information.  Client shall be responsible for maintenance and retention of its records.  Unless otherwise agreed to by the parties, BDO shall not assume any responsibility for any financial reporting with respect to the Services.

8.      **Ownership of Working Papers.**  In connection with the performance of the Services, we will prepare records and deliverables as set forth in the SOW. We also will prepare documents that support our work and include items such as work programs and analyses that do not constitute part of Client's records ("Working Papers"). The Working Papers prepared pursuant to this Agreement are the property of BDO. The Working Papers constitute confidential, proprietary, and trade secret information, and will be retained by BDO in accordance with our policies and procedures and all applicable laws.

9.      **Consent for Disclosure.**  If BDO is engaged in the preparation of tax returns, Internal Revenue Code Sections 6713 and 7216 require BDO to obtain your consent in order to disclose or use information that you furnish to us in connection with the preparation of your return(s) (including Client's name and contact information) and for the purpose of providing you with materials and information, including newsletters or other business-related items of interest, news about BDO, and invitations to BDO-sponsored events.  Client hereby consents to BDO's use of Client's information as set forth above.  Client consent is also required where, e.g., BDO may seek to disclose Client's tax return information to other parties who are involved in providing the Services hereunder.  By signing this agreement, Client consents to BDO's disclosure and use of any information provided by Client in connection with the preparation of Client's current and prior-year tax return(s) pursuant to this Agreement and for the purposes set forth above.  Such consent shall be effective during the term of this Agreement unless a more limited disclosure is requested.

10.      **Fees and Expenses.**  The fees and expenses under this Agreement shall be set forth in the applicable SOW.  If no SOW is in place, fees will be at our standard rates, or rates otherwise agreed to, and related expenses will be charged to Client.  BDO may charge additional fees if Client requests that BDO perform services in addition to the Services described in any SOW.  The amount of our fees is based upon the expectation that certain information and assistance will be received by BDO in a timely manner from Client as set forth in this Agreement.  If BDO believes an additional fee is required as the result of the failure of Client to meet any of these requests for information or for any other reason, BDO will inform you in a timely manner.

11.      **Assignment and Sole Recourse.**  In performing the Services hereunder, BDO may assign its rights to perform a portion of the Services to, and may engage the service of independent contractors, including independent BDO Alliance USA members (a nationwide association of independently-owned local and regional accounting, consulting and service firms), members of the international BDO network of independent member firms ("Member Firms") or affiliates of BDO (each, a "Subcontractor") without Client's prior consent.  If such Subcontractor is utilized or assignment is made, Client agrees that, unless Client contracts directly with Subcontractor, all of the applicable terms and conditions set forth in the Agreement, shall apply to Subcontractor.  BDO agrees that it shall not permit Subcontractor to perform any work relating to the Services until Subcontractor agrees to be bound by the applicable terms and conditions of the Agreement.  BDO further agrees that it will remain primarily responsible for the Services, unless Client and BDO agree otherwise, and BDO will supervise the work of Subcontractor to ensure that the work performed relating to the Services is in accordance with this Agreement.  From time to time, and depending on the circumstances, Subcontractors located in other countries may participate in the Services, and, in some cases, BDO may transfer information to or from the United States or another country.  Although applicable privacy laws may vary depending on the jurisdiction, and may provide less or different protection than those of Client's home country, BDO requires Subcontractors to agree to maintain the confidentiality of Client's information and observe BDO's policies concerning any confidential client information that BDO provides to Subcontractors.  You agree that you shall bring no Claims against any Member Firm that is a Subcontractor in any way arising from, in respect of or in connection with the Services or this Agreement, except to the extent finally judicially determined to have resulted from the fraud or intentional misconduct of such Member Firm.  A Member Firm that is a Subcontractor may enforce any limitations or exclusions of liability available to BDO under this Agreement.

Without our prior written consent, Client may not assign this Agreement except to a party that acquires substantially all of your assets and operations.

12.      **Dispute Resolution.  Any dispute or claim between you and BDO arising out of or relating to the Agreement or a breach of the Agreement, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud or claims based in whole or in part on any other common-law, statutory, regulatory, legal or equitable theory, and**

disputes regarding all fees, including attorneys' fees of any type, and/or costs charged under this Agreement ("<u>Arbitration Claims</u>") (except to the extent provided below) shall be submitted to binding arbitration administered by the American Arbitration Association ("<u>AAA</u>"), in accordance with its Commercial Arbitration Rules.  Arbitration Claims shall be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.  Arbitration Claims shall be heard by a panel of three (3) arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten (10) days of their appointment.  If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the AAA.  The arbitration panel shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of this arbitration agreement.  The arbitration panel may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding.  The arbitration panel shall have no authority to award non-monetary or equitable relief, but nothing herein shall be construed as a prohibition against a party from pursuing non-monetary or equitable relief in a federal or state court.  The place of arbitration shall be the city in which the BDO office providing the majority of the Services involved is located, unless the parties agree in writing to a different location.  Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration and the Agreement shall be governed by the provisions of the laws of the State of New York (except if there is no applicable state law providing for such arbitration, then the Federal Arbitration Act shall apply) and the procedural and substantive law of such state shall be applied without reference to conflict of law rules.  The parties shall bear their own legal fees and costs for all Arbitration Claims.  The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof.  Except as may be required by law or to enforce an award, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to the Agreement.

The parties to the Agreement acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision.  The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration.

13.   **Conflicts of Interest**.  BDO is not aware of any conflicts of interest with respect to any of the names Client has provided.  BDO is not responsible for continuously monitoring other potential conflicts that could arise during the course of the engagement, although we will inform Client promptly should any come to our attention.  We reserve the right to resign from this engagement at any time if conflicts of interest arise or become known to us.  Additionally, our engagement by Client will in no way preclude us from being engaged by any other party in the future.  Notwithstanding anything contained in confidentiality provisions set forth herein, BDO shall be permitted to disclose that it is engaged to provide the Services to Client under this Agreement if BDO in its reasonable professional judgment determines that such disclosure is required in connection with BDO's provision of services on behalf of other clients of BDO, including, without limitation, professional services engagements under which BDO personnel act as professionals in legal proceedings that require disclosures, arbitrators in post-acquisition disputes or act as expert witnesses.

14.   **Power and Authority**.  Each of the parties hereto has all requisite power and authority to execute and deliver this Agreement and to carry out and perform its respective obligations hereunder.  This Agreement constitutes the legal, valid and binding obligations of each party, enforceable against such party in accordance with its terms.

**15.**     **Subpoenas.**  If Client requests BDO to object to or respond to, or BDO receives and responds to, a validly issued third party subpoena, court order, government regulatory inquiry, or other similar request for, or legal process for the production of, documents and/or testimony relative to information we obtained and/or prepared during the course of this or any prior engagements with Client, you agree to compensate us for all time BDO expends in connection with such response, at our standard rates, and to reimburse BDO for all related out-of-pocket costs (including outside attorneys' fees) that we incur.

**16.**     **Email Communications.**  BDO disclaims and waives, and the Client releases BDO from all liability for the interception or unintentional disclosure of e-mail transmissions or for the unauthorized use or failed delivery of e-mails transmitted or received by BDO in connection with the performance of the Services.

**17.**     **External Computing Options.**  If, at the Client's request, BDO agrees to use certain external commercial services, including but not limited to services for cloud storage, remote access, third party software and/or file sharing options (collectively "External Computing Options"), that are outside of BDO's standard security protocol, the Client acknowledges that such External Computing Options may be associated with heightened security and privacy risks.  Accordingly, BDO disclaims, and the Client agrees to release BDO from, and indemnify BDO for, all liability arising out of or related to the use of such External Computing Options.

**18.**     **Electronic Transmissions.**  This Agreement may be transmitted in electronic format and shall not be denied legal effect solely because it was formed or transmitted, in whole or in part, by electronic record; however, this Agreement must then remain capable of being retained and accurately reproduced, from time to time, by electronic record by the parties to this Agreement and all other persons or entities required by law.  An electronically transmitted signature to this Agreement will be deemed an acceptable original for purposes of consummating this Agreement and binding the party providing such electronic signature.

**19.**     **Severability.**  If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable in whole or in part, for any reason whatsoever, such portion of this Agreement shall be amended to the minimum extent required to make the provision enforceable and the remaining portions of this Agreement shall remain in full force and effect.

**20.**     **Independent Contractor.**  BDO is providing the Services to Client as an independent contractor bound by the terms hereof to perform the Services pursuant to the Client's instructions.  BDO's obligations to Client are exclusively contractual in nature.  This Agreement does not create any agency, employment, partnership, joint venture, trust, or other fiduciary relationship between the parties.  Neither BDO nor Client shall have the right to bind the other to any third party or otherwise to act in any way as a representative or agent of the other except as otherwise agreed in writing between the parties.

**21.**     **Confidentiality.**  Each of the parties hereto shall treat and keep all the "Confidential Information" as confidential, with at least the same degree of care as it accords to its own confidential information, but in no event less than a reasonable degree of care.  Each party shall disclose the Confidential Information only to its employees, partners, contractors, agents or its legal or other advisors, provided that they have: (i) each been informed of the confidential, proprietary and secret nature of the Confidential Information, or are subject to a binding, preexisting obligation of confidentiality no less stringent than the requirements of this Agreement and (ii) a demonstrable need to review such Confidential Information.  "Confidential Information" means all non-public information that is marked as "confidential" or "proprietary" or has commercial value in the party's business and is obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party").  All terms of this Agreement are considered Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include any information that was or is: (a) known to the Receiving Party prior to disclosure by the Disclosing Party; (b) as of the time of its

disclosure, or thereafter becomes, part of the public domain through a source other than the Receiving Party; (c) made known to the Receiving Party by a third person who is not subject to any confidentiality obligation known to Receiving Party and such third party does not impose any confidentiality obligation on the Receiving Party with respect to such information; (d) required to be disclosed pursuant to governmental authority, professional obligation, law, decree regulation, subpoena or court order; or (e) independently developed by the Receiving Party.  If BDO is providing tax services for the Client, in no case shall the tax treatment or the tax structure of any transaction be treated as confidential as provided in Treas. Reg. sec. 1.6011-4(b)(3).  If BDO is providing services for a Client that involves government contracting, BDO shall be permitted to disclose to any government or regulatory agency requesting such information the name of the BDO Client and any related information requested by such government or regulatory agency. If disclosure is required pursuant to subsection (d) above, the Receiving Party shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement), to the extent legally permissible, provide prior written notice thereof to allow the Disclosing Party to seek a protective order or other appropriate relief.  Upon the request of the Disclosing Party, the Receiving Party shall return or destroy all of the Confidential Information except for: (y) copies retained in work paper files retained to comply with a party's professional or legal obligations; and (z) such Confidential Information retained in accordance with the Receiving Party's normal data back-up procedures.

**22.     Intellectual Property.**  BDO shall retain the right to reuse the ideas, concepts, know-how, and techniques derived from the rendering of the Services so long as it does not require the disclosure of any of Client's Confidential Information (as defined above).  BDO shall be entitled to all protections afforded under State and Federal statutory or common law with respect to any report, computer program (source code and object code) or programming and/or material documentation, manual, chart, specification, formula, database architecture, template, system model, copyright, diagram, description, screen display, schematic, blueprint drawing, tape, license, listing, invention, record, development frameworks, code libraries, best practices, general knowledge, skills and experience, or other materials preexisting the execution of this Agreement ("BDO Intellectual Property").  Unless otherwise specifically stated in this Agreement, the reproduction, distribution or transfer, by any means or methods, whether direct or indirect, of any of BDO's or its agents' Intellectual Property or proprietary information by the Client is strictly prohibited.

**23.     Non-CPA Owner Notice Requirement.**  BDO is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Therefore, depending on the nature of the Services being provided, non-CPA owners may be involved in providing certain Services hereunder.

**24.     Entire Agreement.**  This Agreement sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations, or understandings, whether oral or written, with respect to the subject matter herein. This Agreement may not be changed, modified, or waived in whole or part except by an instrument in writing signed by both parties.

By signing below, the authorized signatory represents that he/she has power and authority and has obtained all approvals, authorizations and consents necessary to enter into this Agreement on behalf of the Client set forth below for whom the authorized signatory is executing this Agreement.  The authorized signatory represents that this Agreement constitutes the legal, valid and binding obligation of the Client set forth below for whom the authorized signatory is executing this Agreement and is enforceable against the Client in accordance with its terms and conditions.

Accepted and Agreed to by:


By: _____          December 23, 2021
                                              _____
Name: Ms. Deborah D. Williamson               Date
Title: As Receiver appointed in Case No. 4-21cv-1310-O
pending in the Northern District of Texas, Fort Worth Division


(Please sign and return to us one copy; retain a copy for your files)

**ATTACHMENT C**

**FORENSIC TECHNOLOGY SERVICE PROVISIONS**

To the extent the Services involve forensic technology, the following provisions shall also apply to the Services:

1.  Indemnification and Limit of Liability.  As part of the Services contemplated herein, BDO may perform Services that involve imaging workstations, servers or other data storage devices that are in the Client's possession (the "Imaging Services").  The Client agrees that such Imaging Services could result in hardware, software or data loss or destruction.  The Client agrees to release, indemnify and hold harmless the BDO Group for any claims, liabilities, or expenses incurred in connection with any hardware, software or data loss or destruction.

2.  Shipment of Materials.  The Client authorizes BDO to ship electronic and/or paper-based materials via USPS, FedEx, UPS or other similar carrier.  BDO shall take all necessary precautions to enclose such materials in the proper, sealed evidence containers and to ensure that the materials are properly packed to prevent damage from normal handling.  In the event that materials are lost by the carrier, BDO will file a claim on the appropriate party's behalf and seek appropriate remedies; however, BDO will not be held responsible for the loss of the shipment while the package is in the carrier's possession.

3.  Data Hosting.  To the extent that BDO provides data-hosting services to Client, or Counsel, as applicable, fees for monthly hosting along with supporting analytics, processing repositories and user access will be assessed at the rates identified within this document.  The monthly hosting volume and rate will be assessed at the start of each calendar month, or at the last day of the calendar month for Services that start in the middle of a billing cycle.  BDO will bill in full monthly increments with no proration for partial service periods.  BDO may host a portion of the Client's data through the cloud solution RelativityOne ("RelOne"), unless Client informs BDO in writing that it does not wish for BDO to utilize RelOne.  A copy of RelOne's ISO/IEC 27001: 2013 Certificate can be made available upon request.

4.  Media Storage Charges.  As part of the Services, BDO may store electronic media in our evidence vault.  The monthly volume and rate will be assessed at the start of each calendar month, or at the last day of the calendar month for storage that start in the middle of a billing cycle.  BDO will bill in full monthly increments with no proration for partial storage periods. BDO will calculate and invoice these fees in accordance with the price points identified in Attachment D.

    The engagement is deemed to have become inactive when BDO is no longer invoicing for services. BDO will continue to retain electronic data until the Client indicates that we should return or destroy it.  At this point, data being stored by BDO will be invoiced based on the general pricing outlined in Attachment D.

5.  Proprietary Software.  To the extent that the Client wishes to make use of BDO's Tristan self-collection software and device(s) (the "Device"), the following will apply:

    (a)    BDO owns or licenses the Devices on which are resident certain Tristan software programs are either owned by or licensed to BDO for its ordinary course business use ("Software").  BDO deploys the Software on the Device to forensically retrieve and capture electronically stored information.  The foregoing described process is known as "Tristan," and is a patent-pending device/process, for which all appropriate rights are held by BDO.

(b)      Per Client's instructions, BDO shall deliver a Device, together with requisite hardware, step-by-step instructions for the use of the Device and access to a help desk to assist in the use of the Device.  The user shall attach one Device to one desktop or laptop computer or a mobile device, and follow the instructions provided by BDO for the forensic retrieval of the data residing on that computer or mobile device.

(c)      Within not more than ten (10) days after the date the Device is shipped, the Client shall facilitate the return of the Device containing the retrieved data to BDO in the pre-addressed courier package provided by BDO.  At such time the Client directs BDO, but within not more than six (6) months after the date the Device is shipped, BDO shall process the retrieved data.  If BDO does not receive a direction from the Client to process the data within six (6) months after the date the Device is shipped, BDO is relieved of any obligation to process the data as well as any obligation to maintain the Device or the data thereon.

(d)      The Client agrees that BDO and its third-party vendors and licensors own and shall continue to own the entire right, title, and interest in and to all proprietary rights to the Device, the Software and Tristan, including without limitation any and all copyrights, trademarks, trade secrets and patent attributed thereto, including modifications and enhancements.   Nothing in this Agreement shall be construed as transferring to the Client or any other user any of the proprietary rights owned by BDO or its third-party vendors or its licensors.  The Client or any other user is granted the right to use the Device with only a single computer or mobile device legally used by the Client or other necessary and authorized parties.  The Client or any other user may not sell, license or otherwise transfer or use the Device or the Software to any other person.  The Client and any authorized user agrees that it shall not tamper with the Device or seek to reverse engineer any Software.  The Client is prohibited from copying any of the contents of the Device to any type of media without prior written consent from BDO.

**ATTACHMENT D**

BDO is pleased to provide the following agreed upon pricing.

| FORENSIC DATA COLLECTION SERVICES[1] | |
|---|---|
| **Forensic Hard Drive Imaging** | • PC @ $500 + media<br>• MAC @ $750 + media |
| **Other Data Collection Activities** | • Data mapping, structured data reporting and/or extraction from database-driven applications @ $350 to $525 per hour<br>• All other data collection @ between $295 and $350 per hour |
| **Mobile Device Imaging** | • Smart Phone, iPad and similar mobile devices @ $995 per device<br>• Mobile device reporting and forensic analysis @ $295 to $350 per hour |
| **Remote Data Collection** | • Tristan for PC @ $795 per device<br>• Tristan for MAC @ $995 per device |
| HOURLY SERVICES[1] | |
| **Forensic Analysis Services** | • Sr. Forensic Analyst @ $350 to $450 per hour<br>• Forensic Technician @ $295 per hour<br>• Forensic iNformer Fixed Fee @ $2,950 per drive |
| **Project Management, Review Management & Technical Services[2]** | • Sr. Project/Review Management @ $275 per hour<br>• Project/Review Management @ $250 per hour<br>• Technical Time & Custom Reporting @ $195 per hour |
| **Consulting & Expert Testimony** | • Manager @ $300 per hour<br>• Sr. Manager @ $375 per hour<br>• Director @ $425 per hour<br>• Managing Director / Partner $500 - $695 per hour |
| **Discovery Analytics Consultation** | • $325 per hour |
| **Travel Time** | • Travel Time @ 50% of hourly rate |
| STANDARD PRICING | |
| **Relativity Data Ingestion & Processing – (Import)** | • @ $35 per GB[3] |
| **Relativity Data Upload – (Export)** | • $125 per GB (Relativity Analytics & Email Threading @ $2.50 per GB) |
| **Brainspace Text Ingestion** | • Text Extraction @ $45 per GB (if not using Relativity)<br>• Brainspace text Ingestion @ $0.02 per document |

[1] Rates for all data collection & hourly services noted above are for US collections, or collections completed by a US-based employee. The unitized pricing is inclusive of all Chain of Custody, inventory documentation, coordination of shipping (e.g. Tristan remote data collection) and imaging.

[2] Project management hours are incurred for client meetings (e.g. telephonic, MicrosoftTeams, in person), project planning, internal/external coordination, and status reporting.

[3] Data ingestion & upload volumes subject to a 1 GB minimum charge, and is based on the expanded, post-ingestion volume.

| Matter Analytics (in Relativity) | •$0.035 per document |
|---|---|
| **DATA HOSTING SERVICES** | |
| Data Hosting | •@ $9.00 per GB, per month |
| User Access | •$85 per user, per month |
| **OPPOSING & 3RD PARTY PRODUCTIONS** | |
| Opposing & 3rd Party Production Upload | •$49 per GB |
| Relativity Analytics & email threading | •$2.50 per GB (for 3rd party productions) |
| Brainspace Analytics | •$0.02 per record (for 3rd party productions) |
| **PRODUCTION SERVICES** | |
| Production | Export / Production @ $295 per GB |
| **DATA ARCHIVING, STORAGE, & MEDIA[4]** | |
| Original Media & Data Storage | •$25 per item, per month[5]<br>•Storage of data on forensic, staging & processing servers @ $2.50 per GB, per month[5]<br>•Near-line / cold Relativity data storage @ 50% of data hosting rate[5] |
| Data Conversion for Case Close-Out | •$195 per hour |
| Shipping | •$68.50 per package<br>•International @ cost + duties and customs |
| Media | •Hard drive (no enclosure) @ $125 per drive<br>•Hard drive (with USB enclosure) @ $250 per drive<br>•Thumb drive @ $65 per item<br>•CD/DVD @ $15 per item<br>•FTP @ Technical Hourly Rate |

[4] Fees for services may be charged on a monthly, quarterly, or yearly basis, depending on monthly invoice amount.
[5] $500 monthly minimum

# Exhibit "E"

## BILLING INSTRUCTIONS FOR RECEIVERS IN CIVIL ACTIONS
## COMMENCED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION

Except where inconsistent with guidelines established by the applicable district or circuit court, the undersigned hereby represents that, if appointed receiver in a civil action commenced by the U.S. Securities and Exchange Commission (the "SEC" or the "Commission"), each application for professional fees and expenses (the "Application") submitted by the receiver, including all contractors and/or professionals retained by the receiver, will comply with these billing instructions (the "Billing Instructions"). Undersigned further represents that any deviation from the Billing Instructions will be described in writing and submitted to the SEC at least 30 days prior to the filing of the Application with the Receivership Court. Following its receipt and review of proposed applications, as described in section A.2 below, the SEC may object to deviations and charges with which it does not agree.

Undersigned acknowledges that all applications for compensation are interim and are subject to a cost benefit review and final review at the close of the receivership. At the close of the receivership, the receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the receiver during the course of the receivership.

Undersigned acknowledges that, to the extent requested by the SEC, interim fee applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the court as part of the final fee application submitted at the close of the receivership.

### A.   **CERTIFICATION**

1.   Each Application must contain a Certification by the Applicant that:

 (a)   the Certifying Professional has read the Application;

 (b)   to the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in the Certification and described in the Application);

 (c)   all fees contained in the Application are based on the rates listed in the Applicant's fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

 (d)   the Applicant has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and,

 (e)   in seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Applicant requests reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.   If such services are performed by the receiver, the receiver will certify that it is not making a profit on such reimbursable service.

2.   At least 30 days prior to the filing of the Application with the Court, the Applicant will provide to SEC Counsel a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

### B.   **ATTENDANCE AT HEARING ON APPLICATION**

The Receiver or other Certifying Professional shall be present at any hearing to

consider the Application.

C.   **CONTENT OF APPLICATION**

The following information must be provided in the Application:

1.   Information about the Applicant and the Application.

   (a)   the time period covered by the Application;

   (b)   the date the receiver was appointed, the date of the order approving employment of the Applicant, and the date services commenced;

   (c)   the names and hourly rates of all Applicant's professionals and paraprofessionals (the "Fee Schedule"); and,

   (d)   whether the Application is interim or final, and the dates of previous orders on interim Applications along with amounts requested and the amounts allowed or disallowed, all amounts of previous payments, and amount of any allowed Applications which remain unpaid.

2.   Case Status (Narrative).

   (a)   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

   (b)   Summary of the administration of the case, including all funds received and disbursed, and when the case is expected to close;

   (c)   Summary of creditor claims proceedings, including a description of established or anticipated procedures for: (i) providing notice to known and unknown claimants; (ii) receipt and review of claims; (iii) making recommendations to court for payment or denial of claims; and, (iv) final disposition of claims. This summary should also include the status of such claims proceedings after they have been commenced;

   (d)   Description of assets in the receivership estate, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended; and,

(e)     Description of liquidated and unliquidated claims held by the receiver, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments).

3.     Current and Previous Billings.

(a)     Total compensation and expenses requested and any amount(s) previously requested;

(b)     Total compensation and expenses previously awarded by the court; and,

(c)     Total hours billed and total amount of billing for each person who billed time during the period for which fees are requested.

4.     Standardized Fund Accounting Report.

The SEC's Standardized Fund Accounting Report ("SFAR") submitted by the Receiver for the most recent quarter shall be attached to any fee application as "Exhibit A".

## D.     TIME RECORDS REQUIRED TO SUPPORT FEE APPLICATIONS

1.     Each professional and paraprofessional must record time in increments of tenths of an hour, and must keep contemporaneous time records on a daily basis.

2.     Time records must set forth in reasonable detail an appropriate narrative description of the services rendered. Without limiting the foregoing, the description should include indications of the participants in, as well as the scope, identification and purpose of the activity that is reasonable in the circumstances.

3.     The Application should separately describe each business enterprise or litigation matter (i.e., "Project") for which outside professionals have been employed. For example, separate litigation matters should be set out individually in the Application as

individual Projects and each such Project should contain Activity Categories as described in Sections D.4 and D.5 below. Each Project Category should contain a narrative summary of the following information:

      (a)     a description of the project, its necessity and benefit to the estate and the status of the project including pending litigation for which compensation and/or reimbursement of expenses is requested;

      (b)     identification of each person providing services on the project; and

      (c)     a statement of the number of hours spent and the amount of compensation requested by professionals and paraprofessionals on the project.

     4.     In recording time, each professional and paraprofessional may, subject to Section D.5 immediately below, describe in one entry the nature of the services rendered during that day and the aggregate time expended for that day in an "Activity Category" (as described in section D.5.a and D.5.b, below) without delineating the actual time spent on each discrete activity in an Activity Category, provided, however, single time entries of more than one hour in an Activity Category that include two or more activities must include a notation of the approximate time spent on each activity within the Activity Category.

     5.     Time records shall be in chronological order by Activity Category. Only one category should be used for any given activity and professionals and paraprofessionals should make their best effort to be consistent in their use of categories. This applies both within and across firms. Thus, it may be appropriate for all professionals to discuss the categories in advance and agree generally on how activities will be categorized. Every effort should be made to use the listed categories in the first instance and to coordinate the use of additional categories with other professionals in the case. Notwithstanding the above, all categories must correspond with the SEC's SFAR. The

time information reflected on the Application shall also be supplied to the SEC Counsel in an

electronic format as directed by SEC staff.

(a)    <u>Legal Activities.</u>  The following categories are generally more

applicable to attorneys but may be used by all professionals where appropriate.

**ASSET ANALYSIS AND RECOVERY.**  Identification and review of potential
assets including causes of action and non-litigation recoveries.

**ASSET DISPOSITION.**  Sales, leases, abandonment and related transaction
work. Where extended series of sales or other disposition of assets is
contemplated, a separate category should be established for each major
transaction.

**BUSINESS OPERATIONS.**  Issues related to operation of an ongoing
business.

**CASE ADMINISTRATION.**  Coordination and compliance activities, including
preparation of reports to the court, investor inquiries, etc.

**CLAIMS ADMINISTRATION AND OBJECTIONS.**  Expenses in formulating,
gaining approval of and administering any claims procedure.

**EMPLOYEE BENEFITS/PENSIONS.**  Review issues such as severance,
retention, 401K coverage and continuance of pension plan.

(b)    <u>Financial Activities.</u>  The following categories are generally more

applicable to accountants and financial advisors, but may be used by all professionals where

appropriate.

**ACCOUNTING/AUDITING.**  Activities related to maintaining and auditing
books of account, preparation of financial statements and account analysis.

**BUSINESS ANALYSIS.**  Preparation and review of company business plan;
development and review of strategies; preparation and review of cash flow forecasts
and feasibility studies.

**CORPORATE FINANCE.**  Review financial aspects of potential mergers,
acquisitions and disposition of company or subsidiaries.

**DATA ANALYSIS.**  Management information systems review, installation and

analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc.

**STATUS REPORTS.** Preparation and review of periodic reports as may be required by the court.

**LITIGATION CONSULTING.** Providing consulting and expert witness services relating to forensic accounting; etc.

**FORENSIC ACCOUNTING.** Reconstructing books and records from past transactions and bringing accounting current; tracing and sourcing assets.

**TAX ISSUES.** Analysis of tax issues and preparation of state and federal tax returns.

**VALUATION.** Appraise or review appraisals of assets.

E.   **PAYMENT OF FEES AND EXPENSES**

1.   Presentation of Fees and Expenses in Application.

(a)   All fees and expenses must be necessary and reasonable; excessive charges will not be paid. To the extent that an Applicant seeks reimbursement of expenses, the Application shall include a categorization of such expenses along with an exhibit summarizing the total expenses for the period covered by the Application.

(b)   Charges for litigation will be paid only if the litigation is reasonably likely to produce a net economic benefit to the estate. With respect to each litigation matter, the Applicant shall certify that the Applicant determined that the action was likely to produce a net economic benefit to the estate, based on reviews of: (i) the legal theories upon which the action was based, including issues of standing; (ii) the likelihood of collection on any judgment which might be obtained; and, (iii) alternative methods of seeking the relief, such as the retention of counsel on a contingency basis. Retention of counsel on a contingency fee basis should be pursued where the Receiver (after consulting with SEC Counsel) concludes that retention of counsel under the approved fee schedule would produce a lesser economic benefit to the receivership estate. The receiver should memorialize these cost-benefit analyses, through communications with the receiver's counsel, as support for the engagement of such counsel.

(c)   Invoices and/or bills for each expense item for which reimbursement

is sought must be kept for seven (7) years after the close of the receivership. Such support shall be provided on request to the court and the SEC, and in appropriate circumstances to any party in interest provided that, where applicable, privilege or confidentiality can be preserved.

(d)    Time spent preparing fee applications, or any documentation in support thereof, may not be charged to the receivership estate.

2.    <u>Allowable and Non-Allowable Reimbursable Expenses.</u>

(a)    <u>Filing Fees Process Service Fees, Witness Fees and Expert Witness Fees.</u>

Filing fees (including for necessary adversaries), process service fees, witness fees, and expert witness fees (subject to court approval of the employment of any professionals and the reasonableness of such fees) shall be allowable to the extent of the actual cost incurred by the Applicant.

(b)    <u>Court Reporter Fees and Transcripts.</u>

Court reporter fees and copies of transcripts shall be allowable to the extent of the actual cost incurred by the Applicant.

(c)    <u>Lien and Title Searches.</u>

The cost for lien and title searches (whether done in-house or by an outside vendor) is allowable to the extent of the actual cost incurred by, or invoiced to, the Applicant.

(d)    <u>Photocopying.</u>

Photocopying shall be allowable at a cost not to exceed $.15 per page. The Applicant shall set forth in its fee application the total number of copies. Outside vendor photocopying charges are allowable at the actual cost invoiced to the Applicant. Necessary copies obtained from the Clerk of the Court (including certified copies) or from the approved court copy service will be permitted at the actual cost incurred by the Applicant.

The Applicant shall not reflect on the Application any copies for which the Applicant has been, or expects to be, reimbursed (eg., payment from an opposing party for document production from which the Applicant has been reimbursed).

(e)     Postage, Overnight Delivered Courier/Messenger Services.

The cost of postage, overnight delivery, and outside courier/messenger services are reimbursable for the actual cost incurred, if reasonably incurred. Charges should be minimized whenever possible.  For example, couriers/messengers and overnight delivery service should be used only when first-class mail is impracticable.

(f)     Telephone.

Long distance telephone charges are allowable to the Applicant for the actual cost invoiced from the telephone carrier. Charges for local telephone exchange service and cellular telephone service shall not be reimbursable.

(g)     Facsimile Transmission.

A charge for outgoing facsimile transmission to long distance telephone numbers are reimbursable at the lower of (a) toll charges or (b) if such amount is not readily determinable, $1.00 per page for domestic and $2.00 per page for international transmissions. Charges for in-coming facsimiles are not reimbursable.  The Application shall state the total number of pages of the outgoing transmissions.

(h)     Computerized Research.

Computerized legal research services such as Lexis and Westlaw are reimbursable to the extent of the invoiced cost from the vendor, however if such service is provided on a monthly or other periodic rate, proportional usage shall not be reimbursable.

(i)     Parking.

Reimbursement for parking is allowable, including parking by a professional to attend court proceedings, depositions or case conferences, parking at the airport, and client and third party parking (including validation).

(j)    Travel Expenses and Meals.

Local travel time and related expenses for destinations within a twenty (20) mile radius of the Applicant's office including mileage, taxis, etc. and meals (including staff meals) will not be reimbursed.  Mileage charges for out-of-town travel (outside a twenty (20) mile radius of the Applicant's office) with one's own car are reimbursable at the lesser of the amount customarily charged clients or the amount allowed by the Internal Revenue Service for per mile deductions. For purposes of the foregoing, the Applicant's office shall be the office in which the person incurring the travel expense is located.

Long distance travel time outside a twenty (20) mile radius of the Applicant's office is reimbursable at 50% of the Applicant's regular billing rate. The reimbursement of long distance travel expenses is subject to the following limitations:  (1) the Applicant shall seek and use the lowest airfare or train fare available to Applicant; (2) luxury accommodations and deluxe meals are not reimbursable; (3) personal, incidental charges such as telephone and laundry are not reimbursable unless necessary as a result of a reasonably unforeseen extended stay not due to the fault of the traveler; and (4) each out-of-pocket travel and allowable miscellaneous administrative expense exceeding $75 requires a receipt that is to be attached to the invoice.

(k)    Word Processing, Document Preparation, Data Processing, Proofreading, Secretarial and Other Staff Services.

Secretarial, library, word processing, document preparation (other than by professionals or paraprofessionals), data processing, and other staff services (exclusive of paraprofessional services), including overtime for the foregoing, are not reimbursable.  Charges for proofreading for typographical or similar errors are not reimbursable whether the services are performed by a paralegal, secretary, or temporary staff.

(l)     Communications with Investors.

Where appropriate, the estate should promptly create a website, and update the website as appropriate, to provide information as to the activities and condition of the estate to investors.  In addition, any necessary basic communications with investors should be handled by clerical or paralegal staff (or comparatively paid staff) to the extent possible.  Expenses stemming from a failure to comply with this policy will not be submitted.

Candidate for Appointment as Receiver in
Civil Action Commenced by the
U.S. Securities and Exchange Commission


Date: _____        _____
                              [Printed Name]
                              [Address 1]
                              [Address 2]
                              [Address 3]
                              [E-Mail Address]
                              [Phone Number]
                              [Fax Number]

EXHIBIT A

RECEIVER NAME
ADDRESS
CONTACT NUMBER

# STANDARDIZED FUND ACCOUNTING REPORT

## CIVIL – RECEIVERSHIP FUND

FUND NAME
CIVIL COURT DOCKET No.

REPORTING PERIOD MM/DD/YYYY TO MM/DD/YYYY

OR

FINAL REPORT DATED MM/DD/YYYY

---

REPORT INSTRUCTIONS

---

The Standardized Fund Accounting Report (SFAR) should be prepared for the reporting period on a cash basis which is a comprehensive basis of accounting other than generally accepted accounting principles. In cash basis accounting, revenues are recorded only when cash is received and expenses are recorded only when cash is paid. Cash basis accounting does not recognize promises to pay or expectations to receive money or services in the future. For all income and expenses, provide documentation evidencing the income received or expense incurred. Business income or assets that are not cash should be reported in the notes with documentation of their current fair market value. For cash and cash equivalents, provide the latest bank and/or investment records to the SEC. Do not file any of the above documentation with the court unless ordered.

**Line 1 – Beginning Balance:** Balance of the Fund at the beginning of the reporting period. The beginning balance may not necessarily include all amounts received in the Fund since inception unless this is the first SFAR filed.

**Line 2 – Business Income:** Amounts received by the Fund from operational income of the business assets, or other business sources.

**Line 3 – Cash and Cash Equivalents:** Include the value of bank and/or brokerage/security accounts as of the reporting period end date. Cash includes coins, currency, checks, money orders, and funds on deposit with a financial institution. Securities include U.S. government securities, municipal securities, corporate stocks, corporate bonds, and securitized debt instruments.

**Line 4 – Interest/Dividend Income:** Interest and/or dividends earned by the Fund from investments and other personal assets during the reporting period.

**Line 5 – Business Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the assets of the business in receivership. This is separate from the income generated by the asset and reported in Line 2.

**Line 6 – Personal Asset Liquidation:** Amounts received by the Fund as a result of selling or disposing of the personal assets of individuals.

**Line 7 – Third-Party Litigation Income:** Amounts received by the Fund pursuant to third-party litigation. This should not be included in the income reported in Line 2.

**Line 8 – Miscellaneous - Other:** Amounts received from, an identified payor.

**Line 9 – Disbursements to Investors:** Amounts distributed from the Fund to harmed investors/claimants.

**Line 10 – Disbursements for Receivership Operations:**

> **Line 10a – Disbursements to Receiver or Other Professionals:** Amounts paid from the Fund (both fees and costs, including travel) for Receiver services and contractual services by accountants, bookkeepers, stock brokers, realty brokers, appraisers, agents, trustees, investigators, not related to expenses under Line 10b.
> **Line 10b – Business Asset and Operating Expenses:** Amounts paid from the Fund for the business property assets' maintenance and business operating expenses, taxes,

8/01/08 Final Version 1.0

professional fees, liquidation expenses, administrative services, appraisals and valuation expenses, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10c – Personal Asset Expenses:** Amounts paid from the Fund for the personal property assets' maintenance and operating expenses, taxes, professional fees, liquidation expenses, administrative services, appraisals and valuation costs, payment to participant, moving/storage, office furniture and equipment, delivery services, resident agent, copying costs, asset protection costs, etc. These expenses are separate and distinct from those in Line 10a.

**Line 10d – Investment Expenses:** Amounts paid from the Fund for banking fees, Court Registry Investment System (CRIS) fees, mandated or economically necessary continuing investments, and other investment related costs.

**Line 10e – Third–Party Litigation Expenses:** Amounts paid from the Fund for attorney fees related to receivership operations and litigation expenses to recover assets to the receivership estate, including outside counsel fees and costs, travel costs, investigative services, filing fees, process servers, court reporters for depositions, etc.

**Line 10f – Tax Administrator Fees and Bonds:** Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 10g – Federal and State Tax Expenses:** Amounts paid in federal and state taxes.

**Line 11 – Disbursements for Distribution Expenses Paid by the Fund:** This line reflects amounts paid from the Fund to administer the plan and should not include amounts reported per Line 14 below. For any disbursement claimed, you must provide the documentation evidencing the expense.

> **11a – Distribution Plan Development Expenses:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.
>
> **11b – Distribution Plan Implementation Expenses:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**Line 12 – Disbursements to Court/Other:** Amounts paid from the Fund for
> **12a –** Court Registry Investment System (CRIS) or other banking fees related to the Fund.
> **12b –** federal income taxes.

**Line 13 – Ending Balance:** Compute as Total Funds Available less Total Funds Disbursed.

**Line 14 – Ending Balance of Fund – Net Assets:** Describe the structure of the Fund's ending balance (basis of the Fund's net assets):
> **14a – Cash & Cash Equivalents:** Amount of the Fund consisting of cash and currency.
> **14b – Investments:** Amount of the Fund that is invested.
> **14c – Other Assets or Uncleared Funds:** Amount of other assets or funds that have not cleared a financial institution.

## OTHER SUPPLEMENTAL INFORMATION

**Line 15 – Disbursements for Plan Administration Expenses Not Paid by the Fund:** This line reflects amounts paid by the defendant or other party to administer the plan and should not include amounts paid from the Fund assets as reported in Line 11.

8/01/08 Final Version 1.0

**15a – Plan Development Expenses Not Paid by the Fund:** All expenses related to the development of a plan of distribution which precede the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**15b – Plan Implementation Expenses Not Paid by the Fund:** All expenses related to the implementation of a plan of distribution which occur following the order approving such plan. Include in Administrative Expenses items such as information technology services, mailing, postage, photocopying, etc.

**15c – Tax Administrator Fees & Bonds Not Paid by the Fund:** Amounts paid to the Fund's tax administrator for services and/or fiduciary bonds.

**Line 16 – Disbursements to Court/Other Not Paid by the Fund:** Amounts not paid from the Fund for

**16a** – Court Registry Investment System (CRIS) or other banking fees related to the Fund.
**16b** – federal income taxes.

**Line 17 – DC & State Tax Payments:** Taxes paid by a third party which are paid to the DC government or state tax authority.

**Line 18 – No. of Claims:** This should reflect

**18a** – the number of claims received from investors <u>during this reporting period.</u>
**18b** – the number of claims received from investors as a result of all orders since the inception of the Fund.

**Line 19 – No. of Claimants/Investors:** This should reflect

**19a** – the number of claimants/investors receiving distributions <u>during this reporting period.</u>
**19b** – the number of claimant/investors receiving distributions pursuant to all orders of distribution since the inception of the Fund.

**STANDARDIZED FUND ACCOUNTING REPORT for {Name of Fund} - Cash Basis**
Receivership; Civil Court Docket No.
Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of MM/DD/YYYY): | | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | **Business Income** | | | |
| Line 3 | **Cash and Securities** | | | |
| Line 4 | **Interest/Dividend Income** | | | |
| Line 5 | **Business Asset Liquidation** | | | |
| Line 6 | **Personal Asset Liquidation** | | | |
| Line 7 | **Third-Party Litigation Income** | | | |
| Line 8 | **Miscellaneous - Other** | | | |
| | Total Funds Available (Lines 1 – 8): | | | |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | | | |
| Line 10 | **Disbursements for Receivership Operations** | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | | | |
| Line 10b | *Business Asset Expenses* | | | |
| Line 10c | *Personal Asset Expenses* | | | |
| Line 10d | *Investment Expenses* | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | | | |
| | 2. Litigation Expenses | | | |
| | *Total Third-Party Litigation Expenses* | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | | | |
| Line 10g | *Federal and State Tax Payments* | | | |
| | *Total Disbursements for Receivership Operations* | | | |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator………………………………… | | | |
| | Independent Distribution Consultant (IDC)……….. | | | |
| | Distribution Agent………………………………… | | | |
| | Consultants………………………………………… | | | |
| | Legal Advisers……………………………………… | | | |
| | Tax Advisers……………………………………….. | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses* | | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator………………………………… | | | |
| | IDC…………………………………………………. | | | |
| | Distribution Agent………………………………… | | | |
| | Consultants………………………………………… | | | |
| | Legal Advisers……………………………………… | | | |
| | Tax Advisers……………………………………….. | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan………………… | | | |
| | Claimant Identification…………………………… | | | |
| | Claims Processing………………………………… | | | |
| | Web Site Maintenance/Call Center……………… | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution | | | |
| | (FAIR) Reporting Expenses | | | |
| | *Total Plan Implementation Expenses* | | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | |
| Line 12 | **Disbursements to Court/Other:** | | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | | | |
| Line 12b | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other:** | | | |
| | Total Funds Disbursed (Lines 9 – 11): | | | |
| Line 13 | **Ending Balance (As of MM/DD/YYYY):** | | | |

9/08/08

**STANDARDIZED FUND ACCOUNTING REPORT for {Name of Fund} - Cash Basis**
Receivership; Civil Court Docket No.
Reporting Period MM/DD/YYYY to MM/DD/YYYY or Final Report Dated MM/DD/YYYY

| | | | | |
|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund – Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | |
| Line 14b | *Investments* | | | |
| Line 14c | *Other Assets or Uncleared Funds* | | | |
| | **Total Ending Balance of Fund – Net Assets** | | | |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | ***Report of Items NOT To Be Paid by the Fund:*** | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………………… | | | |
| | IDC………………………………………………… | | | |
| | Distribution Agent………………………………… | | | |
| | Consultants………………………………………… | | | |
| | Legal Advisers…………………………………… | | | |
| | Tax Advisers……………………………………… | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………………… | | | |
| | IDC………………………………………………… | | | |
| | Distribution Agent………………………………… | | | |
| | Consultants………………………………………… | | | |
| | Legal Advisers…………………………………… | | | |
| | Tax Advisers……………………………………… | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan…………………… | | | |
| | Claimant Identification…………………………… | | | |
| | Claims Processing………………………………… | | | |
| | Web Site Maintenance/Call Center……………… | | | |
| | 4. Fund Administrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 16a | *Investment Expenses/CRIS Fees* | | | |
| Line 16b | *Federal Tax Payments* | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | |
| **Line 17** | **DC & State Tax Payments** | | | |
| **Line 18** | **No. of Claims:** | | | |
| Line 18a | *# of Claims Received This Reporting Period*………………………………………………… | | | |
| Line 18b | *# of Claims Received Since Inception of Fund*……………………………………………… | | | |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| Line 19a | *# of Claimants/Investors Paid This Reporting Period*……………………………………… | | | |
| Line 19b | *# of Claimants/Investors Paid Since Inception of Fund*…………………………………… | | | |

Receiver:

By: _____
        (signature)

_____
(printed name)

_____
(title)

Date: _____

9/08/08