## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | |
| THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON, | § § § § § § § § § § § § § § § § § | No. 4-21CV-1310-O-BP |
| Defendants, | § § § | |
| and | § § | |
| DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD., | § § § § § § § § § § § § § | |
| Relief Defendants. | § § § | |

**RECEIVER'S MOTION (I) TO APPROVE PROPOSED SETTLEMENT WITH FORMER COUNSEL TO CERTAIN HEARTLAND-RELATED RECEIVERSHIP PARTIES, (II) TO ENTER A BAR ORDER, AND (III) TO APPROVE PAYMENT OF FEES AND EXPENSES OF REID COLLINS & TSAI LLP, LITIGATION COUNSEL TO <u>RECEIVER</u>**

TO THE HONORABLE U.S. MAGISTRATE JUDGE HAL R. RAY, JR.:

Deborah D. Williamson, in her capacity as the Court-appointed Receiver (the "<u>Receiver</u>") for the Receivership Parties (as defined in the *Order Appointing Receiver* [ECF No. 17] (the "<u>Receivership Order</u>")[1] and the Receivership Estates (as defined in the Receivership Order) in the above-captioned case (the "<u>Case</u>" or the "<u>Receivership</u>"), hereby files this motion (the "<u>Motion</u>") requesting the Court to enter an order granting the Motion related to the proposed settlement (the "<u>Settlement</u>") between the Receiver and Locke Lord LLP ("<u>Locke</u>") pursuant to the settlement agreement (the "<u>Settlement Agreement</u>") that the Receiver and Locke have executed. If granted, the Motion will provide the following relief:

(1) the setting of a deadline by which any objection to the Settlement or Settlement Agreement must be filed;

(2) the scheduling of a hearing to consider final approval of the Settlement Agreement and this Motion; and

(3) following the hearing:

(i) approval of the Settlement and Settlement Agreement, including the "earmarking" of Net Settlement Proceeds (as defined below) solely for the benefit of investors in the Heartland-Related Receivership Parties;

(ii) the entry of an order barring certain claims against Locke; and

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed in the Settlement Agreement (as defined below), as applicable.  To the extent that defined terms are inconsistent in this Motion and in the Settlement Agreement, the Settlement Agreement shall control.

(iii) approval of the payment of the Receiver's attorneys' fees in accordance with the contingency fee agreement between the Receiver and its litigation counsel, Reid Collins & Tsai LLP ("RCT").

For the Court's convenience, attached to this Motion is: **Exhibit A**, which is a copy of the Settlement Agreement, and **Exhibit B**, which is a proposed final order (the "Proposed Order") that sets forth the relief the Receiver and Locke require as part of the Settlement.

In support of the Motion, the Receiver respectfully submits as follows:

## I. INTRODUCTION

1.      After a thorough investigation and protracted negotiations, the Receiver has entered into a Settlement Agreement with Locke, former counsel to certain of the Heartland-Related Receivership Parties.[2]  Under the Settlement Agreement, once approved and effective, Locke has agreed to pay the Receiver the Settlement Amount (defined below), of which the Net Settlement Proceeds (defined below) will be distributed to "Heartland Investors" (as defined in the Settlement Agreement) who have an allowed claim in the Receiver's claims process.

2.      In exchange for its payment, Locke negotiated for a global release of all Settled Claims against Locke and the Locke Released Parties. Thus, the Settlement Agreement is conditioned upon the Court entering an order providing substantially the same relief as the Proposed Order. Among other things, the order would permanently bar, restrain, and enjoin the Receivership Parties, the Heartland Investors, the creditors of any Heartland-Related Receivership Party, and the Non-Receivership-Party Defendants and Relief Defendants from directly or

---

[2] The "Heartland-Related Receivership Parties" are the Receivership Parties that are Heartland entities. They are: The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; and Carson Oil Field Development Fund II, LP.

indirectly, or through a third party, instituting, reinstituting, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting against any of the Locke Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to any Settled Claim (as defined in the Settlement Agreement), whether in a court or any other forum.

3.      The Receiver asks the Court to approve the Settlement by granting this Motion and entering an order providing the requested relief, which when final will effectuate the Settlement and enable the Receiver to make a substantial distribution to Heartland Investors. The Receiver also requests that the Court approve the "earmarking" of the Net Settlement Proceeds as returned capital solely for the benefit of Heartland Investors pending future Court approval of any interim and/or final distribution.

4.      The Receiver further requests that the Court approve payment of attorneys' fees to RCT as litigation counsel to the Receiver, whose work was necessary to achieve the Settlement, in an amount consistent with the contractual twenty-five percent (25%) contingency fee agreement with the Receiver that this Court previously approved [ECF No. 260].

## II.  JURISDICTION AND VENUE

5.      The Receivership Order grants this Court exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Parties.  Receivership Order, ¶ 1.

6.      Further, the Receiver is charged with pursuing "all suits, actions, claims and demands" of the Receivership Estates.  Receivership Order, ¶ 8(L).

7.      Thus, this Court possesses exclusive jurisdiction over the proposed Settlement detailed herein, and venue is proper.

### III.  <u>RELEVANT BACKGROUND</u>

**A.      Appointment of Receiver and Retention of Litigation Counsel**

8.      On December 1, 2021, Plaintiff, the Securities and Exchange Commission (the "<u>Commission</u>"), filed its *Emergency Motion for a Temporary Restraining Order and Emergency Ancillary Relief* [ECF No. 3] which included an application for the appointment of a receiver for the Receivership Parties.

9.      On December 2, 2021, this Court determined that entry of an order appointing a receiver over the Receivership Parties was both necessary and appropriate to marshal, conserve, hold, and operate all of the Receivership Parties' assets pending further order of this Court. Accordingly, the Court entered the Receivership Order on December 2, 2021, appointing Deborah D. Williamson as the Receiver over the Receivership Estates in this Case.  *See* ECF No.17.

10.      The Receivership Order authorized the Receiver to "engage and employ persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities[.]"  Receivership Order, ¶ 8(H).

11.      The Receivership Order also directed the Receiver to pursue all "actions, claims and demands which may now be pending or which may be brought by . . . the Receivership Estates[.]" Receivership Order, ¶ 8(L).

12.      On August 23, 2022, the Receiver filed the *Application to Employ Reid Collins & Tsai LLP as Litigation Counsel to Receiver Effective as of August 18, 2022* [ECF No. 249] (the "<u>RCT Employment Application</u>"), seeking Court approval to employ RCT as litigation counsel to investigate and pursue potential claims of the Receivership Estates against former professionals of the Receivership Parties.  The RCT Employment Application sought approval to

compensate RCT on a contingency-fee basis in the amount of 25% of Gross Recoveries (defined below) obtained on any claims prior to filing a lawsuit.

13.     On September 8, 2022, the Court entered an *Order* [ECF No. 260] (the "<u>RCT Employment Order</u>") approving the RCT Employment Application and the proposed compensation terms.  The RCT Employment Order also required that RCT "file applications for approval of compensation of its fees and expenses."  RCT Employment Order, at ¶ 5.

14.     In accordance with the RCT Employment Order, the *Notice of Filing of Amendment to Letter of Engagement Between Receiver and Reid Collins & Tsai LLP* [ECF No. 261] was filed on September 9, 2022.

**B.     Investigation of Potential Claims Against Locke**

15.     After being retained by the Receiver, RCT commenced an investigation into claims against former counsel for the Heartland-Related Receivership Parties, including Locke, an international AmLaw 100 law firm that represented one or more Heartland-Related Receivership Parties in one or more matters from February 2020 through commencement of this Case.

16.     As part of its investigation for the Receiver, RCT reviewed voluminous documents, emails, and other records.  Generally, RCT carefully reviewed the evidence submitted by the Commission in support of this Case.  RCT also reviewed thousands of emails and other documents obtained by the Receiver regarding the Heartland-Related Receivership Parties, and transcripts of interviews conducted by the Receiver during her investigation. In addition, RCT reviewed the client files and other documents produced to the Receiver by Locke related to its representation of certain of the Heartland-Related Receivership Parties. Further, RCT thoroughly researched case law in developing its legal theories and damage models for the Receiver's potential claims against Locke.

17.     After reviewing these documents and researching the law, RCT concluded that there were potentially viable claims against Locke.  Specifically, the Receiver is prepared to assert a claim alleging that Locke and its attorneys, as counsel to certain of the Heartland-Related Receivership Parties in connection with oil-and-gas offerings and the Commission's investigation, knew or should have known that the Heartland-Related Receivership Parties were violating securities laws, were not in compliance with Commission regulations, and were using investor funds to make improper payments, including interest payments to prior investors with new investor funds, undisclosed payments to insiders, and commissions to unlicensed sales representatives.  The Receiver would allege that, despite this purported knowledge, Locke, *inter alia*, negligently advised the Heartland-Related Receivership Parties to maintain the status quo, failed to properly advise the Heartland-Related Receivership Parties of their disclosure obligations to investors, failed to review offering and other key documents for legal compliance for the protection of investors, and failed to advise the Heartland-Related Receivership Parties to cease raising new funds and avoid incurring additional liabilities to investors.  The Receiver contends that if the Heartland-Related Receivership Parties had received that advice, they would have stopped raising new funds and would have avoided various categories of damages, including the loss of money through illegal or improper out-of-pocket payments. All of the Receiver's proposed claims against Locke are referred to as the "Alleged Claims."

18.     Locke denies the Alleged Claims and any and all allegations of wrongdoing, fault, liability, causation, or damages whatsoever. *See also* Paragraph 36 below. During the course of settlement negotiations with the Receiver, Locke retained an expert accountant to evaluate and rebut the Receiver's damages and damages model. Locke presented the Receiver with arguments

supported by its expert accountant that, in Locke's opinion, disproves and/or establishes material defenses to the Alleged Claims.

**C.      Mediation Regarding Potential Claims Against Locke**

19.     Beginning in September 2022, RCT, on behalf of the Receiver, engaged with Locke in pre-suit negotiations, and the parties entered into a tolling agreement. In March 2023, RCT provided Locke a confidential draft complaint, and offered to engage in pre-suit mediation.  After further discussions, the parties agreed to participate in mediation with the Honorable Jeff Kaplan (Ret.), a well-respected former federal and state judge and JAMS mediator.

20.     On August 22, 2023, after exchanging extensive and confidential mediation statements and supporting exhibits, the Receiver and Locke participated in an in-person mediation with Judge Kaplan.  At mediation, the Receiver was unable to reach a resolution of the Heartland Receivership Parties' claims against Locke.  However, the parties continued extensive and arms-length negotiations with Judge Kaplan throughout the next several months.

21.     On December 20, 2023, Judge Kaplan issued to the parties his mediator's proposal to resolve all claims of the Receiver against Locke.  Ultimately, on December 22, 2023, the parties accepted the mediator's proposal, subject to definitive documentation.

22.      On March 28, 2024, the Receiver and Locke executed the Settlement Agreement. Court approval of the proposed settlement and entry of a bar order are conditions of the proposed settlement.

**D.      Proposed Settlement of All Claims Against Locke**

23.      The items below provide a general overview of the proposed Settlement, as

described in the Settlement Agreement (attached as **Exhibit A**):

a.      The Settlement is by and between the following parties (the "Parties"): (a) the Receiver, as the Court-appointed Receiver on behalf of the Receivership Parties, and (b) Locke;

b.      Locke will pay $12.5 million (the "Settlement Amount"), which will be deposited with the Receiver pursuant to the Settlement Agreement;

c.      The Parties agree to the mutual release of any claims and causes of action, known or unknown, as of the Settlement Effective Date;

d.      The Settlement Agreement is conditioned upon entry of an order that permanently enjoins the Receivership Parties, the Heartland Investors, the creditors of Heartland-Related Receivership Parties, and Non-Receivership-Party Defendants and Relief Defendants from bringing, encouraging, assisting, continuing, or prosecuting, against Locke or any of the Locke Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature arising from or relating to any Settled Claim;

e.      The Settlement will be effective (the "Settlement Effective Date") upon the Court's entry of an order granting the relief sought in this Motion and that order becoming final. Within twenty (20) calendar days after the Settlement Effective Date, Locke shall pay, or cause to be paid, the Settlement Amount by wire transfer to the Receiver;

f.      The Receiver will disseminate notice of the Settlement and this Motion to the Receivership Parties, Heartland Investors, creditors of Heartland-Related Receivership Parties, and Non-Receivership-Party Defendants and Relief Defendants, through one or more of the

following: first-class mail, email, CM/ECF notification, and/or the Receivership website (www.heartlandreceivership.com);

g. The Net Settlement Proceeds[3] shall be distributed to Heartland Investors as returned capital pursuant to a subsequent order of this Court approving any such distributions under a distribution plan;

h. Under the distribution plan, once approved, the Net Settlement Proceeds will be distributed by the Receiver, under the supervision of the Court, to Heartland Investors who have Claims that have been allowed by the Receiver;

i. Heartland Investors who accept funds from the Settlement Amount will, upon accepting the funds, fully release Locke and the Locke Released Parties from any and all Settled Claims.

24.     As explained below, the proposed Settlement is fair, equitable, and in the best interests of the Heartland-Related Receivership Parties and their estates. Further, because paying the Net Settlement Proceeds to the Heartland Investors increases the recoveries available to pay those investors in the Receivership claims process, the Settlement is also in the best interests of the Heartland Investors, who are the largest contingent of Heartland creditors. The Receiver has conferred with the Commission with respect to the Settlement, and the Commission has no objection to the proposed Settlement with Locke.

## IV.  RELIEF REQUESTED, ARGUMENT, AND AUTHORITIES

### A.     Request for Approval of Proposed Settlement and Entry of Bar Order

25.     Although not required under the Receivership Order, the Receiver requests this Court's approval of the proposed Settlement and entry of an order as required by the Settlement Agreement.

---

[3] "Net Settlement Proceeds" shall be the Settlement Amount less fees and expenses incurred by the Receiver including, without limitation, the amounts to be paid to RCT. The Receiver estimates that the "Net Settlement Proceeds" will be approximately $9,275,000.00.

26.     This Court "has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).  Within such broad authority lies this Court's power to approve settlements, provided that the settlement is "fair and equitable and in the best interests of the estate[s]." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (quoting *Ritchie Capital Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015) (internal citation omitted)).  Here, the proposed Settlement is the result of a mediator's proposal and is fair, equitable, and in the best interests of Heartland Investors and the Heartland-Related Receivership Parties and their estates.

27.     "Courts have consistently held that Congress intended for federal equity receivers to be utilized in situations involving federal securities laws, like the present receivership," and in such cases for the court to act as a court in equity for the benefit of defrauded investors.  *See id.* at 35 (internal quotation marks omitted); *see also* 15 U.S.C. § 80a-41(d). A receiver's mandate is "to maximize the value of the corporations [in receivership] for the benefit of their investors and any creditors[.]"). *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 191 (5th Cir. 2013) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 754–55 (7th Cir. 1995)).

28.     The Receivership Order in this Case closely reflects and furthers the above objectives, directing the Receiver to prosecute, defend, and compromise actions to maximize timely distributions to claimants.  *See* Receivership Order ¶ 45.

29.     The ability to compromise claims is critical to this Receivership.  Courts have long emphasized that public policy favors settlement.  *See, e.g.*, *Lydondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 n.43 (5th Cir. 2010).  That is especially true here, as Heartland Investors await recovery, further costs would come directly out of the Receivership Estates, and

the Settlement would allow the Receiver to make a significant distribution solely for the benefit of Heartland Investors as returned capital, pending further order of the Court on a distribution plan.

30.     Consistent with all the foregoing purposes, this Court has the authority to enter a bar order prohibiting litigation against settling third parties in receivership cases.  *See Zacarias v. Stanford Int'l Bank, Ltd.,* 945 F.3d 883, 896-97 (5th Cir. 2019) (approving bar order enjoining third-party claims against defendants that settled with receiver); *SEC v. Kaleta*, 530 F. App'x 360, 362–63 (5th Cir. 2013) ("*Kaleta II*").  Bar orders have often been used in other receivership cases to achieve these purposes.  *See e.g.*, *SEC v. DeYoung*, 850 F.3d 1172, 1180–81 (10th Cir. 2017); *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009); *Janvey v. Proskauer Rose, LLP*, No. 3:13-cv-0477-N-BQ, at pp. 6–11 (N.D. Tex. Jan. 16, 2019) (ECF No. 358); *SEC v. Parish*, No. 2:07-cv-00919-DCN, 2010 U.S. Dist. LEXIS 11786, at *14–17 (D.S.C. Feb. 10, 2010); *SEC v. Enter. Tr. Co., et al.*, No. 1:08-cv-01260, at pp. 2–3 (N.D. Ill. Jan. 29, 2009) (ECF No. 245).

31.     Bar orders foreclosing suit against third-party defendants against whom the receiver is engaged in litigation "can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales, as well as preventing piecemeal resolution of issues that call for a uniform result." *See Zacarias*, 945 F.3d at 897 (internal citations omitted).

32.     The Fifth Circuit in *Kaleta II* stated that a district court was within its discretion to enter a bar order, such as the ones requested here, where (i) the bar order is necessary for "securing" the settlement payment; (ii) the settlement agreement "expressly permits" those affected by the bar order "to pursue their claims by participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate"; and (iii) the scope of the bar order is designed to

achieve these objectives.  *See Kaleta II*, at 362–63 (internal citations and quotation marks omitted).

Each of the factors mentioned in *Kaleta II* is present in this Case.

33.     This Court and other district courts in this Circuit have also looked to factors such

as: (1) the value of the proposed settlement; (2) the value and merits of the receiver's potential

claims; (3) the risk that litigation would dissipate the receivership assets; (4) the complexity and

costs of future litigation; (5) the implications of any satisfaction of an award on other claimants;

(6) the value and merits of any foreclosed parties' potential claims; and (7) other equities incident

to the situation.  *See Certain Underwriters at Lloyd's of London, et al. v. Janvey*, No. 3:09-CV-

1736-N-BQ, at p. 6 (N.D. Tex. May 16, 2017) (ECF No. 200); *SEC v. Kaleta,* No. 4:09-3674, 2012

U.S. Dist. LEXIS 14880, at *18 (S.D. Tex. Feb. 7, 2012) ("*Kaleta I*").

34.     The factors articulated in *Kaleta I* all support approval of the proposed Settlement.

*First*, the proposed Settlement yields a significant payment to Heartland Investors as returned

capital, pending further order of the Court on a distribution plan.

35.     *Second*, the proposed Settlement eliminates any claim Locke may have against the

Receivership Parties for unpaid fees and expenses related to its representation of the Receivership

Parties.  This claim will be released as part of the mutual releases in the proposed Settlement.

36.     *Third*, although the Receiver believes the claims against Locke are viable and have

value, the claims involve risk and uncertainty.  Indeed, Locke has vigorously disputed and

discredited the Receiver's claims, arguing that, *inter alia*, (1) Locke had no role in providing legal

services regarding the matters for which the Receiver claims damages, (2) the Heartland-Related

Receivership Parties were represented by other counsel, not Locke, in connection with the drafting

of certain offering statements and other key documents, (3) Locke's representation met the

standard of care in light of the information provided to and withheld from Locke, (4) the Receiver's

alleged damages are due to the criminal conduct of a third party, and are therefore not recoverable from Locke, (5) Locke did not cause or contribute to causing any of the underlying damages, (6) the Receiver lacks legal standing to seek some of the damages she alleges, (7) the Heartland-Related Receivership Parties concealed material information from Locke, (8) the Receiver's damage model was flawed and included millions of dollars that were either not damages to the Receiver or not recoverable from Locke, even if the Receiver prevailed in litigation, and (9) Locke does not agree with the Commission that the Heartland-Related Receivership Parties' oil and gas activities met the definition of the Ponzi scheme.  The Receiver disagrees with Locke's arguments, but the Receiver acknowledges that these arguments demonstrate that litigation against Locke would involve substantial risk and uncertainty, particularly with calculation of damages for the ultimate recovery and distribution of returned capital to Heartland Investors.

37.     *Fourth*, litigation against Locke would be complex, lengthy, and expensive.  As reflected above, the litigation would involve complex, difficult, and hotly contested issues.  Many of these issues would require costly expert reports and testimony.  These issues would also require costly depositions and discovery from other witnesses, including certain Non-Receivership-Party Defendants and Relief Defendants.  Up to $100,000 of such costs would ultimately be reimbursed by the Receiver in accordance with the RCT Employment Order from any recovery on the claims against Locke.  Further, upon the filing of litigation the contingency fee approved by this Court would increase from 25% to 40% of Gross Recoveries (defined herein).

38.     *Fifth*, the proposed Settlement is equitable for other potential claimants, specifically for Heartland Investors who stand to recover by "participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate." *See Kaleta II*, 530 F. App'x at 362. Indeed, approval of the Settlement is in the collective best interest of all Heartland Investors

by "maximiz[ing] assets available to them and facilitate[ing] an orderly and equitable distribution of those assets." *See Zacarias*, 945 F.3d at 902.

39.     *Sixth*, although the Proposed Order would preclude Heartland Investors and certain other persons or entities from asserting the Settled Claims against Locke, such claims are subject to the "attorney immunity doctrine" in Texas. The attorney immunity doctrine renders law firms like Locke immune from suit by non-clients based on the provision of legal services to the law firm's client. *See Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 67 (Tex. 2021). Further, even if an individual investor were able to assert a Settled Claim against Locke, it is extremely unlikely that any investor could obtain a more favorable settlement than the Settlement Agreement, or one that would benefit as many investors as the Settlement Agreement will. *See Parish*, 2010 U.S. Dist. LEXIS 11786, at *12. Thus, the lack of "value and merits of any foreclosed parties' potential claim[]" supports the entry of a bar order. *Kaleta I*, at *18.

40.     *Seventh*, a bar order is a necessary condition to Locke making payment under the Settlement Agreement. In consideration for Locke's payment of $12.5 million, despite its belief that it has meritorious defenses, Locke negotiated for the entry of a bar order to buy complete and final peace and to guarantee that it will not incur the additional expense and burden of litigation related to the Settled Claims. Under the Settlement Agreement, Locke will only pay the Settlement Amount upon the entry and finality of an order, such as the Proposed Order, that grants the relief requested herein, including, but not limited to, a bar provision.

41.     Fifth Circuit authority shows that it is within the Court's discretion to approve the Settlement and enter a bar order.  For example, in *Zacarias*, the Stanford receiver settled with third-party defendants conditioned upon bar orders prohibiting claims against the settling defendants related to the receivership. *Zacarias*, 945 F.3d at 894. The district court approved the

settlement and entered the bar orders. *Id.* On appeal, the Fifth Circuit affirmed, rejecting challenges to the bar orders from various investors who had filed separate lawsuits against the settling defendants. *Id.* at 899–905. The court reasoned that the objecting investors suits "are derivative of and dependent on the receiver's claims and compete with the receiver for the dollars in [the settling defendants'] pockets," and that the settling defendants negotiated for the bar orders because their "incentives to settle are reduced—likely eliminated—if each SIB C-D investor retains an option to pursue full recovery in individual satellite litigation. Such resolution is no resolution." *Id.* at 900. The Fifth Circuit concluded the entry of the bar orders was proper because allowing individual investors to bring claims against the settling defendants "would frustrate the central purposes of the receivership and confound the SEC's mission to achieve maximum recovery from the malefactors for distribution" to investors. *Id.* at 905.

42.     Likewise, in *Kaleta II*, the Kaleta receiver sued and later settled with a third-party defendant, and the settlement required entry of a bar order enjoining all claims against the settling defendant as a condition of payment. *Kaleta II*, 530 Fed. App'x at 362. The district court entered the bar order and the Fifth Circuit affirmed. *Id.* at 363. The Fifth Circuit reviewed the factors considered by the district court in entering the bar order, "namely the necessity of the bar order for securing [the settling defendants'] personal guarantees to pay the Receivership Estate, and the fact that the settlement expressly permits Appellants and other investors to pursue their claims by 'participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate,'" and upheld the entry of the bar order. *Id.* at 362–63.

43.     In sum, the proposed Settlement is fair, equitable, and in the best interests of the Heartland-Related Receivership Parties' estates and the Heartland Investors. A bar order is a necessary condition to the Settlement, which is in the collective best interest of the Heartland

Investors, who stand to benefit from distribution of the Net Settlement Proceeds as returned capital. The proposed Settlement is the product of arms-length and good-faith negotiations between the Parties, with the assistance of a well-respected mediator. The Commission does not object to the proposed Settlement. Therefore, the Receiver requests that this Court approve the proposed Settlement and provide the relief requested in the Proposed Order.

**B.     Request for Approval of "Earmarking" Net Settlement Proceeds Solely for the Benefit of Heartland Investors**

44.     The origin of the damage claims alleged by the Receiver are for the allegedly fraudulent operation of one or more of the Heartland-Related Receivership Parties, and the resultant destruction to the value of the capital invested in one or more Heartland-Related Receivership Parties and their subsequent inability to satisfy obligations owed to Heartland Investors. The Receiver further requests this Court approve that the Net Settlement Proceeds received by the Receiver—the Settlement Amount, less any fees and expenses owed to RCT—be "earmarked" for the sole benefit of Heartland Investors in any interim and/or final distribution approved by this Court to reduce their injury and destruction to the value of their respective investments/capital in the Heartland-Related Receivership Parties. The underlying claims of the proposed Settlement solely relate to the Heartland-Related Receivership Parties. As such, the Receiver proposes that she serve merely as a conduit on behalf of the Heartland-Related Receivership Parties and hold the Net Settlement Proceeds as returned capital solely for the benefit of Heartland Investors pending future Court approval of any interim and/or final distribution.

45.     The Receiver's proposal to earmark the proposed Net Settlement Proceeds solely for the benefit of the investors harmed in the oil and gas investment offerings is fair, equitable, and in the best interests of the estates of the Heartland-Related Receivership Parties. If approved, the Receiver shall receive the Net Settlement Proceeds of the Settlement Amount on behalf of

Heartland Investors for distribution to those investors to reduce their alleged damages for the injury and destruction to the value of their respective invested capital in the one or more Heartland-Related Receivership Parties.  Thus, the Court should approve the Receiver's request to "earmark" the Net Settlement Proceeds for the eventual distribution solely to Heartland Investors, which will be requested as part of a separate proposed distribution motion.

**C.    Request for Approval of Litigation Counsel's Fees and Expenses**

46.    In accordance with the Receivership Order and the RCT Employment Order, the Receiver also requests that this Court approve payment of RCT's fees and expenses related to the proposed Settlement with Locke.  This Motion shall be considered as RCT's final application for compensation of its fees and expenses associated with the proposed Settlement.

47.    The Court approved the Receiver's retention of RCT as litigation counsel with the following contingency-fee arrangement:

a.    <u>Pre-Suit Phase Contingency Fee</u>: **25% of Gross Recoveries**[4] obtained for the claims prior to the filing of a lawsuit.

b.    <u>Costs and Expenses</u>. The Receiver will fund an expense retainer in the amount of $100,000.00, which may be paid in installments of $25,000.00 and replenished when depleted.  The amount of out-of-pocket expenses that the Receiver will have to advance to RCT is capped at $100,000.00. RCT shall be entitled to reimbursement from any recoveries or expenses advanced by the firm.

*See* RCT Employment Application, at pp. 24–25; RCT Employment Order, at p. 2.

48.    On October 30, 2023, the Receiver sent RCT an initial retainer in the amount of $25,000.00 (the "<u>Retainer</u>") in accordance with the RCT Employment Order.

---

[4] "<u>Gross Recoveries</u>" includes the gross amount of any cash payments to the Receivership, including settlement amounts.  Gross Recoveries shall be the amount of the recoveries prior to the deduction of any expenses. *See* RCT Employment Application, at pp. 24–25.

49.     Pursuant to this Court-approved agreement, the Receiver seeks authority to pay RCT's contingency fee and to reimburse RCT's out-of-pocket expenses (the "Expenses") related to the proposed Settlement.   Specifically, the Receiver requests Court authority to pay a contingency fee of 25% of the proposed Settlement amount[5] and to reimburse RCT for Expenses in the amount of $5,443.82.[6]  A list of Expenses incurred by RCT is attached hereto as **Exhibit C**.

50.     This Court has previously approved the compensation to RCT funding that the engagement, including the contingency fee proposal, as being in "the best interests of the Estates." RCT Employment Order, at p. 2.   However, even if the compensation terms had not been previously approved, the payment to RCT should be approved as reasonable.  *See SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-00298-N, 2018 U.S. Dist. LEXIS 57257, at *26 (N.D. Tex. Mar. 26, 2018) (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012)).

51.     "The Fifth Circuit is 'amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable.'"  *Id.* at 643 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–720 (5th Cir. 1974)).   The proposed contingency fee to RCT is reasonable under the percentage method and the *Johnson* framework.

52.     The proposed contingency fee is reasonable under the percentage method, which was previously approved by the Court.  Courts in this District and the Fifth Circuit have approved contingency fees of 25% or more of the total recovery.  *See, e.g.*, *Stanford*, 2018 U.S. Dist. LEXIS 57257, at *25 (approving contingency fee of 25%); *see also SEC v. Howard*, No. 3:17-cv-420-E (N.D. Tex. Dec. 17, 2019) (ECF No. 130, 127) (order granting settlement motion with contingency

---

[5] RCT would deduct the balance, if any, remaining from the Retainer after payment of court approved Expenses.

[6] RCT shall first apply the initial $25,000.00 retainer to its Expenses.  To the extent the retainer exceeds Expenses, RCT shall apply the balance to the contingency fee.

fee of 33%).   Indeed, the 25% fee requested is "substantially below the typical market rate contingency fee percentage of 33% to 40%" that law firms typically charge for complex cases such as this. *See Stanford*, 2018 U.S. Dist. LEXIS 57257, at *3. Accordingly, the 25% contingency fee is reasonable under the percentage method.

53.     The proposed contingency fee is also reasonable under the *Johnson* factors, which include: (a) time and labor required; (b) novelty and difficulty of the issues; (c) required skill; (d) whether other employment is precluded; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations; (h) amount involved and results obtained; (i) attorney's experience, reputation, and ability; (j) "undesirability" of the case; (k) nature and length of the professional relationship with the client; and (l) awards in similar cases.  *See Johnson*, 488 F.2d at 717–20.  As explained below, the *Johnson* factors weigh heavily in favor of approving RCT's contingency fee:

     a.   <u>Time and Labor Required</u>:  This case required substantial time and effort.  Over the past 24 months, RCT has spent approximately 1,500 hours of attorney time investigating and pursuing the underlying claims.  RCT's efforts included: (i) gathering, reviewing, and analyzing thousands of documents; (ii) drafting and negotiating tolling agreements; (iii) conferring with accounting specialists regarding damages issues; (iv) researching potential claims and drafting a detailed complaint; (v) corresponding with Locke's counsel through phone calls and letters regarding the substance of the claims and defenses; (vi) preparing extensive mediation briefing; (vii) participating in mediation and extended settlement discussions with Judge Kaplan and Locke's counsel; and (viii) drafting and negotiating the Settlement Agreement and related papers with Locke's counsel.

     b.   <u>Novelty and Difficulty of Issues</u>:  This case involved complex factual and legal issues.  As explained above, Locke asserted defenses to the Receiver's claims and damages.

     c.   <u>Skill Required</u>:  Given the complexity of the factual and legal issues, this case required significant, sophisticated skill and effort on RCT's part.

     d.   <u>Preclusion of Other Employment</u>:  Although the case did not necessarily preclude RCT from accepting other employment, the sheer amount of time

and effort required by the case reduced RCT's ability to devote time and effort to other matters.

e.   Customary Fee:  As discussed above, the proposed fee is similar to or less than the customary fee for comparable cases. The "typical market rate" is a 33% to 40% contingency fee for a complex securities-related case.

f.   Whether Fee is Fixed or Contingent:  The proposed fee was contingent upon obtaining a recovery from Locke.  As such, RCT bore significant risk in accepting the engagement.

g.   Time Limitations:  The engagement involved some time limitations.  This Receivership had been pending for approximately 8 months when RCT was retained.  Therefore, RCT felt compelled to act quickly.  Had RCT not obtained the proposed Settlement, then it would have likely taken years of litigation to resolve the Receiver's claims against Locke.

h.   Amount Involved and Results Obtained:  The proposed Settlement results in a significant payment to the Receiver as a conduit on behalf of the Heartland-Related Receivership Parties for the benefit of the Heartland Investors—a payment which is not only substantial, but also represents a large portion of the total damages that the Receiver could potentially recover from Locke with respect to the underlying claims.

i.   Attorney's Experience, Reputation, and Ability:  RCT and its attorneys are preeminent in the pursuit of claims involving complex financial fraud and, particularly, in claims against professionals and law firms. RCT has significant experience representing receivers, trustees, and other court-appointed fiduciaries in pursuit of third-party claims.

j.   Undesirability of Case:  The case involves claims against a law firm.  Many attorneys and firms refuse to, or express reluctance to, handle claims against other attorneys and firms.  In Texas, entitlement of Receivers to damages creates uncertainty and adds to the uncertainty of collection.

k.   Nature and Length of Professional Relationship:  RCT has not represented the Receiver in other matters, but the Receiver could potentially expand RCT's scope of engagement in this Case.

l.   Awards in Similar Cases:  As discussed above, the proposed fee is comparable to or lower than other awards in similar cases.

54.   In sum, the proposed contingency fee is reasonable under the percentage method and the *Johnson* factors.  Thus, RCT's contingency fee and Expenses should be approved and paid from the proceeds of the proposed Settlement Amount.

## V. **CONCLUSION AND PRAYER**

55.     The Settlement was reached after many months of arms-length negotiations with Locke and is a fair and equitable result. The large recovery, the significant time and expense required to pursue claims against Locke, and the uncertainty of obtaining a judgment against Locke all weigh in favor of approving the Settlement, entering an order granting this Motion, including the bar order requested, setting a schedule that allows for objections to and a hearing on the Settlement, and approving the contingency fee of RCT as Litigation Counsel to the Receiver.

56.     For the foregoing reasons, the Receiver requests that this Court grant the Motion and provide the following relief:

(1) the setting of a deadline by which any objection to the Settlement or Settlement Agreement must be filed on the docket in this Case;

(2) the scheduling of a hearing to consider final approval of the Settlement Agreement and this Motion; and

(3) following the hearing:

(i) approval of the Settlement and Settlement Agreement, including the "earmarking" of Net Settlement Proceeds solely for the benefit of Heartland Investors in the Heartland-Related Receivership Parties,

(ii) the entry of an order barring certain claims against Locke in a manner that provides substantially the same relief as **Exhibit B**, and

(iii) approval of the payment of RCT's 25% contingency fee and Expenses in the amount of $5,443.82 relating to the proposed Settlement, and

(4) such further relief to which the Receiver may be entitled.

Dated: April 2, 2024                         Respectfully submitted,

                                             By: */s/ Danielle Rushing Behrends*
                                             Danielle Rushing Behrends
                                             State Bar No. 24086961
                                             dbehrends@dykema.com
                                             **DYKEMA GOSSETT PLLC**
                                             112 East Pecan Street, Suite 1800
                                             San Antonio, Texas 78205
                                             Telephone: (210) 554-5500
                                             Facsimile: (210) 226-8395

                                             and

                                             Rose L. Romero
                                             State Bar No. 17224700
                                             Rose.Romero@RomeroKozub.com
                                             **LAW OFFICES OF ROMERO|KOZUB**
                                             235 N.E. Loop 820, Suite 310
                                             Hurst, Texas 76053
                                             Telephone: (682) 267-1351

                                             **COUNSEL TO RECEIVER**

## CERTIFICATE OF CONFERENCE

The Receiver, through the undersigned counsel, conferred with counsel for Plaintiff, Securities and Exchange Commission (the "Commission") on March 13, 2024, regarding the relief requested in the Motion. The Commission consents to the relief requested in the Motion.

                                             */s/ Danielle Rushing Behrends*
                                             Danielle Rushing Behrends

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2024, the foregoing document was served via CM/ECF on all parties appearing in this Case, including counsel for Plaintiff, Securities and Exchange Commission and on the following unrepresented persons via email:

James Ikey
Bridy Ikey
james.ikeyrcg@gmail.com
bridydikey@gmail.com

IGroup Enterprises LLC
c/o James Ikey
james.ikeyrcg@gmail.com

John Muratore
jmuratore6@gmail.com

Muratore Financial Services, Inc.
c/o John Muratore
jmuratore6@gmail.com

Thomas Brad Pearsey
bradpearsey@aol.com

Manjit Singh (aka Roger) Sahota
Harprit Sahota
Monrose Sahota
rogersahota207@gmail.com

Sunny Sahota
sunnysanangelo@gmail.com

I further certify that all known parties in interest, including all Heartland Investors and claimants, will be served via first-class U.S. mail and/or email, as applicable, by Stretto, on behalf of the Receiver.  I will file a supplemental certificate of service (redacted, as appropriate) upon completion of service by Stretto.

*/s/ Danielle Rushing Behrends*
Danielle Rushing Behrends

**EXHIBIT A (Settlement Agreement)**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made and entered into by and between (i) Deborah D. Williamson, solely in her capacity as the court-appointed receiver for the estates of the Receivership Parties (the "Receiver"); and (ii) Locke Lord LLP ("Locke") (Receiver, on the one hand, and Locke, on the other hand, are referred to in this Agreement individually as a "Party" and together as the "Parties");

**WHEREAS**, on December 1, 2021, the Securities and Exchange Commission (the "Commission"), filed in the United States District Court for the Northern District of Texas, Fort Worth Division (the "Court") its *Emergency Motion for a Temporary Restraining Order and Emergency Ancillary Relief* in *United States Securities and Exchange Commission v. The Heartland Group Ventures, LLC, et al*., Case No. 4:21-cv-01310 (the "Case" or the "SEC Action"), which included an application for the appointment of a receiver for the Receivership Parties[1] [ECF No. 3].

**WHEREAS**, in the *Order Appointing Receiver*, dated December 2, 2021 [ECF No. 17] (the "Receivership Order"), the Court determined that entry of an order appointing a receiver over the Receivership Parties was both necessary and appropriate to marshal, conserve, hold and operate all of the Receivership Parties' assets pending further order of this court.[2] Accordingly, the Court

---

1 The "Receivership Parties" are: The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; Arcooil Corp.; Barron Petroleum LLC; Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Encypher Bastion, LLC; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD.

As used herein, the term "Heartland-Related Receivership Parties" refers to the subset of the Receivership Parties that are Heartland entities. The Heartland-Related Receivership Parties are: The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP.

2 Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Receivership Order.

1

entered the Receivership Order, appointing Deborah D. Williamson of Dykema Gossett PLLC as the Receiver over the Receivership Estates.

**WHEREAS**, Deborah D. Williamson has served as Receiver continuously since her appointment and continues to so serve;

**WHEREAS**, the Receiver alleges that Locke and its attorneys, as counsel to certain of the Heartland-Related Receivership Parties in connection with oil-and-gas offerings and the Commission's investigation, knew or should have known that the Heartland-Related Receivership Parties were violating securities laws, were not in compliance with Commission regulations, and were using investor funds to make improper payments, including interest payments to prior investors with new investor funds, undisclosed payments to insiders, and commissions to unlicensed sales representatives. The Receiver alleges that, despite this purported knowledge, Locke, *inter alia*, negligently advised the Heartland-Related Receivership Parties to maintain the status quo, failed to properly advise the Heartland-Related Receivership Parties of their disclosure obligations to investors, failed to review offering and other key documents for legal compliance for the protection of investors, and failed to advise the Heartland-Related Receivership Parties to cease raising new funds and avoid incurring additional liabilities to investors. The Receiver contends that if the Heartland-Related Receivership Parties had received that advice, they would have stopped raising new funds and would have avoided various categories of damages, including illegal or improper out-of-pocket payments. All the Receiver's claims are referred to as the "Alleged Claims";

**WHEREAS**, Locke categorically denies the Alleged Claims and any and all allegations of wrongdoing, fault, liability, causation, or damages whatsoever and is entering into this Agreement solely to avoid the burden, very substantial expense, and risks of litigation;

2

**WHEREAS**, the Receiver and her advisors have conducted an investigation into the facts and the law relating to the Alleged Claims and after considering the results of that investigation and the benefits of this Settlement, as well as the burden, expense, and risks of litigation, have concluded that a settlement with Locke under the terms set forth below is fair, reasonable, adequate, and in the best interests of the Receiver, the Receivership Parties, the Heartland Investors, and all Persons affected by the Heartland-Related Receivership Parties, and have agreed to enter into the Settlement and this Agreement, and to use their best efforts to effectuate the Settlement and this Agreement;

**WHEREAS**, the Parties desire to fully, finally, and forever compromise and effect a global settlement and discharge of all claims, disputes, and issues between them;

**WHEREAS**, the Parties have engaged in extensive, good-faith, and arm's-length negotiations, including participation in a formal mediation attended in person by representatives of the Parties, and in further discussions following the conclusion of such mediation, leading to this Agreement;

**WHEREAS**, absent approval of this Settlement, the resolution of the Alleged Claims will likely take many more years and cost the Parties significant funds to litigate to final judgment and through appeals, and the outcome of all such litigation would be uncertain;

**WHEREAS**, absent approval of this Settlement, the resolution of the Alleged Claims will require the filing of a Complaint, which will substantially redreuce the Receiver's percentage of recovery because, under the contingent fee contract with the Receiver's litigation counsel, the filing of a Complaint triggers an increase in counsel's contingent fee to 40% from 25%.

**WHEREAS**, the Parties acknowledge and agree that: (1) the origin of the Alleged Claims held and asserted by the Receiver are for the alleged injury and losses sustained by the Heartland-

Related Receivership Parties, which alleged losses also represent the destruction to the value of the capital invested in the Heartland-Related Receivership Parties by the Heartland Investors, and (2) the Receiver shall receive the settlement amount on behalf of such Heartland Investors in the Heartland-Related Receivership Parties for distribution to those Heartland Investors to reduce their damages for the injury and destruction to the value of their respective invested capital in one or more of the Heartland-Related Receivership Parties.

**WHEREAS**, the Parties acknowledge and agree that the effectiveness of this Settlement Agreement is contingent on the Court entering an order including provisions by which the Receiver, the Receivership Parties, the Heartland Investors and certain other third parties are forever barred from asserting the Settled Claims against the Locke Released Parties (as defined below).

**NOW, THEREFORE,** in consideration of the agreements, covenants, and releases set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I. <u>AGREEMENT DATE</u>

1.      This Agreement shall take effect once all Parties have signed the Agreement, and as of the date of the last signature to the Agreement (the "<u>Agreement Date</u>").

## II. <u>TERMS USED IN THIS AGREEMENT</u>

The following terms, as used in this Agreement and in the Proposed Order (attached as Exhibit 1), have the following meanings:

2.      **<u>Affiliate</u>"** means a Person that directly, or indirectly through one or more intermediaries, owns or controls, is owned or is controlled by, or is under common ownership or control with, another Person. As used herein, "control" means the power to direct the management

or affairs of a Person, and "ownership" means the beneficial ownership of at least 10% of the voting securities of the Person.

3.      **"Allowed Heartland Investor Claim"** means a Claim held by a Heartland Investor, which (a) has not been objected to by the Receiver or, (b) has been objected to by the Receiver but has been allowed pursuant to entry of a final order of the Court.

4.      **"Attorneys' Fees"** means those fees and expenses awarded by the Court to Receiver's counsel from the Settlement Amount pursuant to the terms of the applicable engagement agreement.

5.      **"Claim"** means a Person's potential or asserted right to receive funds from the Heartland Receivership Parties.

6.      **"Claimant"** means any known investor in the Heartland Receivership Parties who has submitted a Claim to the Receiver or who has not disputed the Receiver's proposed claim amount (the Net Transaction Amount).[3] Where a Claim has been transferred to a third party and such transfer has been acknowledged by the Receiver, then the transferee is a Claimant, and the transferor is not a Claimant unless the transferor has retained a Claim that has not been transferred. Where the Receiver has sought to disallow a Claim and the disallowance has become Final, then the submission of the disallowed Claim does not make the Person who submitted it a Claimant.

7.      **"Confidential Information"** means the communications and discussions in connection with the negotiations and mediation that led to the Settlement and this Agreement.

---

[3] Known investors were mailed and emailed (where available) an investor notice with instructions and a proof of claim form, including a personalized transaction schedule detailing investment(s) and payment/disbursement information, on November 20, 2023. Known non-investor creditors were mailed and emailed (where available) a non-investor notice with instructions and a proof of claim form on November 20, 2023. Investors (if necessary) and other creditors were required to timely submit a proof of claim and all supporting documentation on or before February 5, 2024, at 11:59 p.m. Central. *See generally* SEC Action ECF Nos. 408, 422, 431.

Confidential Information does not include the existence and terms of the Settlement and this Agreement when and after that Information is disclosed in a publicly available filing.

8.    **"Final"** means unmodified after the conclusion of, or expiration of any right of any Person to pursue, any and all possible forms and levels of appeal, reconsideration, or review, judicial or otherwise, including by a court or Forum of last resort, wherever located, whether automatic or discretionary, whether by appeal or otherwise. The Proposed Order shall include findings under Federal Rule of Civil Procedure 54(b) and will become Final as set forth in this Paragraph as though such orders were entered as judgments at the end of a case, and the continuing pendency of the SEC Action shall not be construed as preventing such Proposed Order from becoming Final.

9.    **"Forum"** means any court, adjudicative body, tribunal, or jurisdiction, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise.

10.    **"Hearing"** means a formal proceeding in open court before the United States District Court Judge having jurisdiction over the SEC Action.

11.    **"Heartland-Related Receivership Parties"** means the Receivership Parties that are Heartland entities. They are: The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; and Carson Oil Field Development Fund II, LP.

12.    **"Heartland Investor"** means any Person or Claimant with a Claim arising out of an investment in the form of a loan, promissory note or partnership interest in a Heartland-Related Receivership Party. Heartland Investor shall NOT include any Non-Receivership-Party Defendant

or Relief Defendant or any Affiliate, officer, director, equity holder, partner or member of any Non-Receivership-Party Defendant or Relief Defendant.

13.     **"Locke Released Parties"** means Locke, and all of its predecessor firms and, of each of the foregoing: all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity. Notwithstanding the foregoing, "Locke Released Parties" shall not include any Person other than Locke who becomes employed by, related to, or affiliated with Locke after the Agreement Date and whose liability, if any, arises solely out of or derives solely from their actions or omissions at a time the Person was not employed by, related to, or affiliated with Locke.

14.     **"Net Settlement Proceeds"** means the Settlement Amount ($12,500,000.00) less Attorney's Fees and related expenses.

15.     **"Non-Receivership-Party Defendants or Relief Defendants"** means the defendants and relief defendants in the SEC Action that are not Receivership Parties. They are James Ikey; John Muratore; Thomas Brad Pearsey; Manjit Singh (AKA Roger) Sahota; Rustin Brunson; Muratore Financial Services, Inc.; Bridy Ikey; IGroup Enterprises LLC; Harprit Sahota; Monrose Sahota; and Sunny Sahota.

16.     **"Person"** means any individual, entity, governmental authority, agency or quasi-governmental person or entity, worldwide, of any type, including, without limitation, any

7

individual, partnership, corporation, limited liability company, estate, trust, committee, fiduciary, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

17.     **"<u>Receiver Released Parties</u>"** means each Heartland Investor, the Receiver, the Receivership Parties, and each of their counsel. Receiver Released Parties also includes each of the foregoing persons' respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.

18.     **"<u>Receivership Parties</u>"** means The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; Arcooil Corp.; Barron Petroleum LLC; Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Encypher Bastion, LLC; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD.

19.     **"<u>Releasor</u>"** means any Person granting a release of any Settled Claim.

20.     **"<u>Settled Claim</u>"** means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or

otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, is derivative of, or is in any manner connected with (i) Locke's relationship with any one or more of the Receivership Parties or the Non-Receivership-Party Defendants or Relief Defendants, and/or any of their personnel or Affiliates; (ii) Locke's provision of services to or for the benefit of or on behalf of the Receivership Parties, the Non-Receivership-Party Defendants or Relief Defendants, and/or any of their Affiliates, or Locke's agreement to provide such services; (iii) Locke's involvement in any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, or any proceeding concerning the Receivership Parties pending or commenced in any Forum; or (iv) legal fees and costs paid or owed from the Receivership Parties or the Non-Receivership-Party Defendants or Relief Defendants, on the one hand, to Locke, on the other hand. Settled Claims specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims"). Each Releasor expressly waives, releases, and relinquishes any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which governs or limits the release of unknown or unsuspected claims, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Releasor acknowledges that he, she, or it may hereafter discover facts different from, or in addition to, those which such Releasor now knows or believes to be true with respect to the Settled Claims, but nonetheless agrees that this Agreement, including the releases granted herein, will remain binding and effective in all respects notwithstanding such discovery. Unknown Claims include contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts. These provisions concerning unknown and unsuspected claims and the inclusion of Unknown Claims in the definition of Settled Claims were separately bargained for and are an essential element of this Agreement and the Settlement.

21.    **"Settlement"** means the agreed resolution of the Settled Claims in the manner set forth in this Agreement.

22.    **"Settlement Amount"** means Twelve Million Five Hundred Thousand Dollars ($12,500,000.00) in United States currency.

23.    **"Settlement Effective Date"** means the date on which the last of both of the following have occurred:

> a. entry in the SEC Action of an order granting substantially the same relief as described in the form attached hereto as **Exhibit 1** (the **"Proposed Order"**), and, specifically, which grants the Motion defined in Paragraph 29 below and forever bars the assertion of any Settled Claims against Locke by any Receivership Party, Heartland Investor, creditor of any Heartland-Related

Receivership Party, and any Non-Receivership-Party Defendant or Relief

Defendant, and

b. the Court's order described above in (a) has become Final.

24.     **"Taxes"** means any and all taxes, whether federal, state, local, or other taxes related

to the Settlement or the Settlement Amount, and costs incurred in connection with such taxation

including, without limitation, the fees and expenses of tax attorneys and accountants.

## III. <u>DELIVERY OF SETTLEMENT AMOUNT</u>

26.     <u>Delivery of Settlement Amount:</u> Within twenty (20) days after the Settlement

Effective Date, Locke shall deliver or cause to be delivered the Settlement Amount to the Receiver

by wire transfer. The Receiver shall provide wire instructions to Locke upon execution of this

Settlement Agreement.

## IV. <u>USE AND MANAGEMENT OF SETTLEMENT AMOUNT</u>

<u>27.</u>     <u>Management and Distribution of Settlement Amount</u>: If and when the Settlement

Amount is delivered to the Receiver pursuant to the terms of this Agreement, the Receiver shall

receive and take custody of the Settlement Amount and shall maintain, manage, and distribute the

Net Settlement Proceeds under the supervision and direction of the Court. The Net Settlement

Proceeds shall be distributed to Heartland Investors as returned capital pursuant to a subsequent order

of the Court approving any such distributions. The Receiver shall be responsible for any Taxes,

Attorneys' Fees, fees, and expenses that may be due with respect to the Settlement Amount or the

management, use, administration, or distribution of the Settlement Amount.

<u>28.</u>     <u>No Liability:</u> Locke and the Locke Released Parties shall have no liability,

obligation, or responsibility whatsoever with respect to the investment, management, use,

administration, or distribution of the Settlement Amount or any portion thereof, including, but not

limited to, the costs and expenses of such investment, management, use, administration, or

distribution of the Settlement Amount, and any Taxes arising therefrom or relating thereto. Nothing in this Paragraph shall alter Locke's obligations to deliver the Settlement Amount to the Receiver pursuant to the terms of this Agreement.

## V. MOTION FOR SETTLEMENT APPROVAL AND PROPOSED ORDER

29.    Motion: On a date mutually acceptable to the Parties that is not more than ninety (90) days from the Agreement Date, unless otherwise agreed by the Parties in writing, via e-mail or otherwise, the Receiver shall submit to the Court a motion (the "Motion") requesting that the Court (a) set the date by which any objection to the Settlement or this Agreement must be filed; and (b) schedule a Hearing to consider final approval of the Settlement and the motion for entry of the Proposed Order. In advance of filing the motion papers to accomplish the foregoing, the Receiver shall provide Locke with a reasonable opportunity to review and comment on such motion papers.

30.    Notice Preparation and Dissemination: The Receiver shall be responsible for the preparation and dissemination of notice regarding this Settlement and the proposed bar order as directed by the Court. In the absence of intentional refusal by the Receiver to prepare and disseminate notice pursuant to a court order, no Interested Party or any other Person shall have any recourse against the Receiver with respect to any claims that may arise from or relate to the notice process. In the case of intentional refusal by the Receiver to prepare and disseminate notice pursuant to a court order, Locke shall not have any claim against the Receiver other than the ability to seek specific performance. The Parties do not intend to give any other Person any right or recourse against the Receiver in connection with the notice process.

31.    No Recourse Against Locke: No Interested Party or any other Person shall have any recourse against Locke or the Locke Released Parties with respect to any claims that may arise from or relate to the notice process.

32.    <u>Motion Contents:</u> In the motion papers referenced in Paragraph 29 above, the Receiver shall request that the Court, *inter alia:*

       a.     approve the Settlement and its terms as set out in this Agreement;

       b.     enter an order in the SEC Action finding that this Agreement and the releases set forth herein are final and binding on the Parties in accordance with its terms; and

       c.     enter an order in the SEC Action in substantially the same substance as the Proposed Order attached hereto as **Exhibit 1**, and which contains each of the findings, determinations, and orders for relief identified in Paragraph 35, items (b)(i)-(ix), by which the Court forever bars the assertion of any Settled Claims against Locke by any Receivership Party, Heartland Investor, creditor of any Heartland-Related Receivership Party, and any Non-Receivership-Party Defendant or Relief Defendant.

33.    <u>Parties to Advocate:</u> The Parties shall take all reasonable steps to advocate for and encourage the Court to approve the terms of this Agreement.

34.    <u>No Challenge:</u> No Party shall challenge the approval of the Settlement, and no Party will encourage or assist any Interested Party in challenging the Settlement.

## VI. <u>RESCISSION IF THE SETTLEMENT IS NOT FINALLY APPROVED OR THE RELIEF IN THE PROPOSED ORDER IS NOT GRANTED</u>

35.    <u>Right to Withdraw:</u> The Parties represent and acknowledge that the following were necessary to the Parties' agreement to this Settlement, are each an essential term of the Settlement and this Agreement, and that the Settlement would not have been reached in the absence of these terms: (a) Court approval of the Settlement and the terms of this Agreement without amendment or revision; (b) entry by the Court of an order in the SEC Action granting the substantially the same relief as that provided in the Proposed Order attached hereto as **Exhibit 1**, which (i) finds that the Settlement, including the required injunctions against Settled Claims, is in the best interest

13

of the Heartland Investors and the Heartland-Related Receivership Parties and their estates, (ii) approves the earmarking of the Net Settlement Proceeds as returned capital solely for the benefit of Heartland Investors pending future Court approval of any interim and/or final distribution, (iii) finds that the process by which Heartland Investors, creditors of Heartland-Related Receivership Parties, and Non-Receivership-Party Defendants or Relief Defendants were notified of the Settlement and Motion met all applicable requirements of law, (iv) grants the Motion, and (v) orders that the Locke Released Parties are fully released and discharged from any of the Settled Claims that the Receiver or the Receivership Parties ever had, now has, or may have hereafter, (vi) orders that the Heartland Released Parties are fully released and discharged from any of the Settled Claims that Locke ever had, now has, or may have hereafter, (vii) permanently bars, restrains, and enjoins the Receiver, the Receivership Parties, the Heartland Investors, the creditors of any Heartland-Related Receivership Party, and the Non-Receivership-Party Defendants and Relief Defendants from asserting any of the Settled Claims against the Locke Released Parties, (viii) expressly determines that there is no just reason for delaying the finality of the Order, and (ix) provides that the Order is final and appealable under Fed. R. Civ. P. 54(b); and (c) all such approvals and orders becoming Final, pursuant to Paragraph 8 of this Agreement. If the Court does not provide the approvals described in (a); if the Court does not grant the relief described in (b); or if the final result of any appeal from the approvals and orders described in (a) or (b) is that any of the approvals or orders are not affirmed, in their entirety and without material modification or limitation, then any Party has the right to withdraw its agreement to the Settlement and to this Agreement by providing to the other Party written notice of such withdrawal, within fourteen (14) days of the order or judicial determination giving rise to the right to withdraw. In the event that any Party withdraws its agreement to the Settlement or this Agreement as allowed in this

Paragraph, this Agreement will be null and void and of no further effect whatsoever, shall not be admissible in any ongoing or future proceedings for any purpose whatsoever (except for the provisions of this Paragraph, which shall survive), and shall not be the subject or basis for any claims by any Party against any other Party. If any Party withdraws from this Agreement pursuant to the terms of this Paragraph, then each Party shall be returned to such Party's respective position immediately prior to such Party's execution of the Agreement.

36.     The Parties do not have the right to withdraw from, or otherwise terminate, the Agreement for any reason other than the reasons identified in Paragraph 35. The following paragraphs of this Agreement shall survive termination of the Agreement: Paragraphs 35, 36, 45, and 46.

## VII. DISTRIBUTION OF NET SETTLEMENT PROCEEDS

37.     Duties: The Receiver, with the approval and guidance of the Court, shall be solely responsible for preparing, filing a motion seeking approval of, and implementing a process to receive, manage, and disburse the Net Settlement Proceeds. The Receiver owes no duties to Locke or the Locke Released Parties in connection with the distribution of the Net Settlement Proceeds, and if the Receiver complies with all orders issued by the Court relating to distribution of Net Settlement Proceeds, neither Locke nor the Locke Released Parties may assert any claim or cause of action against the Receiver in connection with the distribution of the Settlement Amount. In no event will the Receiver or the Receiver Released Parties be liable for damages or the payment or repayment of funds of any kind as a result of any deficiency associated with the distribution of the Settlement Amount.

38.     Distribution by Check: The Receiver must include the following statement, without alteration (except that additional releasees may be included if the Receiver includes in the distribution check funds from settlements with such other releasees), on the reverse of all checks

sent to Claimants pursuant to the distribution of Net Settlement Proceeds, above where the endorser will sign:

> BY ENDORSING THIS CHECK, I RELEASE ALL CLAIMS, KNOWN OR NOT, AGAINST LOCKE LORD LLP, ITS PARTNERS, ATTORNEYS, AND EMPLOYEES (WHETHER CURRENT OR PAST) ARISING FROM OR RELATING TO THE HEARTLAND RECEIVERSHIP PARTIES OR ANY OF THEIR RELATED ENTITIES AND ACCEPT THIS PAYMENT IN FULL SATISFACTION THEREOF.

39.   <u>No Responsibility</u>: Locke and the Locke Released Parties shall have no responsibility, obligation, or liability whatsoever with respect to the terms, interpretation, or implementation of the distribution of the Settlement Amount; the administration of the Settlement; the management, investment, or distribution of the Settlement Amount or any other funds paid or received in connection with the Settlement; the payment or withholding of Taxes that may be due or owing by the Receiver or any recipient of funds from the Settlement Amount; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or this Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters. As of the Settlement Effective Date, the Receiver and all other Persons the Receiver represents or on whose behalf the Receiver has been empowered to act by any court fully, finally, and forever release, relinquish, and discharge Locke and the Locke Released Parties from any and all such responsibility, obligation, and liability.

## VIII. <u>RELEASES, COVENANT NOT TO SUE, AND PERMANENT INJUNCTION</u>

40.   <u>Release of Locke Released Parties</u>: As of the Settlement Effective Date, the Receiver, on behalf of the Receivership Parties, fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Locke and the Locke Released Parties.

16

41. <u>Release of Receiver Released Parties:</u> As of the Settlement Effective Date, Locke fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against the Receiver and the Receiver Released Parties.

42. <u>No Release of Obligations Under Agreement:</u> Notwithstanding anything to the contrary in this Agreement, the releases and covenants contained in this Agreement do not release the Parties' rights and obligations under this Agreement or the Settlement, nor do they bar the Parties from enforcing or effectuating this Agreement or the Settlement.

43. <u>Covenant Not to Sue:</u> Effective as of the Agreement Date, the Receiver covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Locke Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum. Effective as of the Agreement Date, Locke covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Receiver Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum. Notwithstanding the foregoing, however, the Parties retain the right to sue for alleged breaches of this Agreement.

## IX. <u>REPRESENTATIONS AND WARRANTIES</u>

44. <u>Authority:</u> Each person executing this Agreement or any related documents represents and warrants that he or she has the full authority to execute the Agreement on behalf of

17

the entity each represents and that each has the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms.

## X. NO ADMISSION OF FAULT OR WRONGDOING

45.    The Settlement, this Agreement, and the negotiation and mediation thereof shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in or any proceeding relating to any Settled Claim, or any other proceeding in any Forum. The Settlement and this Agreement are a resolution of disputed claims reached in order to avoid the risk and very substantial expense of protracted litigation. The Settlement, this Agreement, and evidence thereof shall not be used, directly or indirectly, in any way, in the SEC Action or in any other proceeding, other than to enforce the terms of the Settlement and this Agreement.

## XI. CONFIDENTIALITY

46.    Confidentiality: Except as necessary to obtain Court approval of this Agreement, to provide the notices as required by this Agreement, or to enforce and effectuate the terms of the Settlement and this Agreement, the Parties will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to any Person, except (i) as required pursuant to law, regulation, or order of the Court; (ii) to Locke's partners, members, insurers, or potential insurers, on a confidential or attorney-client basis; (iii) to the Parties' respective accountants, auditors, bankers, and attorneys on a confidential or attorney-client basis; (iv) Commission counsel; and (v) with prior written consent from the other Party, which may be transmitted by e-mail.

## XII. **NON-DISPARAGEMENT**

47.     In connection with the Settlement and this Agreement, the Receiver shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, that would denigrate or embarrass Locke, or that is otherwise negative or derogatory towards Locke. Nor shall the Receiver respond to or publicly comment about any inquiry from the press regarding the Settlement and this Agreement, other than to state, "no comment." Nothing in this paragraph shall prevent the Receiver from making any statement in Court regarding Locke, nor shall this paragraph prevent the Receiver from taking any step she believes, in her sole and absolute discretion, is necessary to enforce the Settlement or this Agreement. Nothing in this paragraph shall prevent the Receiver from reporting her activities to the Court or the Commission, responding as necessary to inquiries from the Court or other governmental authorities, or carrying out any of her duties under any order addressing the scope of the Receiver's duties, including but not limited to the Receivership Order.

48.     In connection with the Settlement and this Agreement, Locke shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, which would denigrate or embarrass the Receiver or the Commission. Nor shall Locke respond to or publicly comment about any inquiry from the press regarding the Settlement and this Agreement, other than to state, "no comment." Nothing in this paragraph shall prevent Locke from making any statement in Court regarding the Receiver or the Commission, nor shall this paragraph prevent Locke from taking any step it believes, in its sole and absolute discretion, is necessary to enforce the Settlement or this Agreement.

## XIII. **MISCELLANEOUS**

49.     <u>Final and Complete Resolution:</u> The Parties intend this Agreement and the Settlement to be and constitute a final, complete, and worldwide resolution of all matters and

disputes between (1) the Receiver Released Parties, on the one hand, and (2) the Locke Released Parties on the other hand, and this Agreement, including its exhibits, shall be interpreted to effectuate this purpose.

50.     Binding Agreement: As of the Agreement Date, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. No Party may assign any of its rights or obligations under this Agreement without the express written consent of the other Parties.

51.     Incorporation of Recitals: The Recitals contained in this Agreement are essential terms of this Agreement and are incorporated herein for all purposes.

52.     Disclaimer of Reliance: The Parties represent and acknowledge that in negotiating and entering into the Settlement and this Agreement they have not relied on, and have not been induced by, any representation, warranty, statement, estimate, communication, or information, of any nature whatsoever, whether written or oral, by, on behalf of, or concerning any Party, any agent of any Party, or otherwise, except as expressly set forth in this Agreement. To the contrary, each of the Parties affirmatively represents and acknowledges that the Party is relying solely on the express terms contained within this Agreement. The Parties have each consulted with legal counsel and advisors, have considered the advantages and disadvantages of entering into the Settlement and this Agreement, and have relied solely on their own judgment and the advice of their respective legal counsel in negotiating and entering into the Settlement and this Agreement.

53.     Third-Party Beneficiaries: This Agreement is not intended to and does not create rights enforceable by any Person other than the Parties (or their respective heirs, executors, administrators, successors, and assigns, as provided in Paragraph 50 of this Agreement), except that if this Agreement provides that a Person is released or should not be sued as a consequence of

20

a covenant not to sue, then such Person may enforce the release or covenant not to sue as it relates to said Person.

54.    <u>Negotiation, Drafting, and Construction:</u> The Parties agree and acknowledge that they each have reviewed and cooperated in the preparation of this Agreement, that no Party should or shall be deemed the drafter of this Agreement or any provision hereof, and that any rule, presumption, or burden of proof that would construe this Agreement, any ambiguity, or any other matter, against the drafter shall not apply and is waived. The Parties are entering into this Agreement freely, after good-faith, arm's-length negotiation, with the advice of counsel, and in the absence of coercion, duress, and undue influence. The titles and headings in this Agreement are for convenience only, are not part of this Agreement, and shall not bear on the meaning of this Agreement. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation." The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense. Words in the masculine, feminine, or neuter gender shall include any gender. The singular shall include the plural and vice versa. "Any" shall be understood to include and encompass "all," and "all" shall be understood to include and encompass "any."

55.    <u>Cooperation:</u> The Parties agree to execute any additional documents reasonably necessary to finalize and carry out the terms of this Agreement. In the event a third party or any Person other than a Party at any time challenges any term of this Agreement or the Settlement, including the Proposed Order, the Parties agree to cooperate with each other, including using reasonable efforts to make documents or personnel available as needed to defend any such

challenge. Further, the Parties shall reasonably cooperate to defend and enforce each of the orders required under Paragraph 35 of this Agreement.

56.     Notice: Any notices, documents, or correspondence of any nature required to be sent pursuant to this Agreement shall be transmitted by both e-mail and overnight delivery to the following recipients, and will be deemed transmitted upon acknowledged receipt or receipt by the overnight delivery service.

**If to the Receiver:**

William T. Reid IV (wreid@reidcollins.com)
Keith Y. Cohan (kcohan@reidcollins.com)
Morgan M. Menchaca (mmenchaca@reidcollins.com)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy
Suite C300
Austin, TX 78746
Telephone: (512) 647-6100

Deborah D. Williamson (dwilliamson@dykema.com)
Danielle Rushing Behrends (dbehrends@dykema.com)
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

Rose L. Romero
State Bar No. 17224700
Rose.Romero@RomeroKozub.com
**LAW OFFICES OF ROMERO|KOZUB**
235 N.E. Loop 820, Suite 310
Hurst, Texas 76053
Telephone: (682) 267-1351

**If to Locke**:

Sarah Raggio (sarah.raggio@lockelord.com)
**LOCKE LORD LLP**
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
T: 214-740-8464

22

Paul Koning ([paul.koning@koningrubarts.com](mailto:paul.koning@koningrubarts.com))
**KONING RUBARTS LLP**
1700 Pacific Avenue
Suite 4500
Dallas, Texas 75201
Telephone: (214) 751-7900

Charlene Koonce ([charlene@brownfoxlaw.com](mailto:charlene@brownfoxlaw.com))
**BROWN FOX PLLC**
8111 Preston Road
Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000

Each Party shall provide notice of any change to the service information set forth above to all other Parties by the means set forth in this paragraph.

57.    <u>Choice of Law:</u> This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without regard to the choice-of-law principles of Texas or any other jurisdiction.

58.    <u>Mandatory, Exclusive Forum Selection Clause:</u> Any dispute, controversy, or claim arising out of or related to the Settlement or this Agreement, including breach, interpretation, effect, or validity of this Agreement, whether arising in contract, tort, or otherwise, shall be brought exclusively in the United States District Court for the Northern District of Texas, Fort Worth Division. With respect to any such action, the Parties irrevocably stipulate and consent to personal and subject matter jurisdiction and venue in such court, and waive any argument that such court is inconvenient, improper, or otherwise an inappropriate Forum.

59.    <u>United States Currency:</u> All dollar amounts in this Agreement are expressed in United States dollars.

60.    <u>Timing:</u> If any deadline imposed by this Agreement falls on a non-business day, then the deadline is extended until the next business day.

61.    <u>Waiver:</u> The waiver by a Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

62.    <u>Exhibits:</u> The exhibits annexed to this Agreement are incorporated by reference as though fully set forth in this Agreement.

63.    <u>Integration and Modification:</u> This Agreement sets forth the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations, and communications, whether oral or written, with respect to such subject matter, including the Term Sheet signed by the Parties prior to this Agreement. Neither this Agreement, nor any provision or term of this Agreement, may be amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by both Parties.

64.    <u>Counterparts and Signatures:</u> This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument. A signature delivered by electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.


_____
By: Deborah D. Williamson
In her capacity as the Receiver for the Receivership Parties

Date:_____


LOCKE LORD LLP

By: _____

Its: Deputy General Counsel- Claims

Date: 3/28/24

25

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

By: Deborah D. Williamson
In her capacity as the Receiver for the Receivership Parties

Date: 3/27/24


LOCKE LORD LLP

By: _____

Its: _____

Date: _____

25

**EXHIBIT 1 (Proposed Order)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
TEXAS FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | |
| THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON, | § § § § § § § § § § § § § § § § | No. 4:21-cv-1310-O-BP |
| Defendants, | § § § § § | |
| and | § § | |
| DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD., | § § § § § § § § § § § § § | |
| Relief Defendants. | § § § § | |

27

**ORDER GRANTING RECEIVER'S MOTION (I) TO APPROVE PROPOSED
SETTLEMENT WITH FORMER COUNSEL TO CERTAIN HEARTLAND-RELATED
RECEIVERSHIP PARTIES (II) TO ENTER A BAR ORDER, AND (III) TO APPROVE
PAYMENT OF FEES AND EXPENSES OF REID COLLINS & TSAI LLP, LITIGATION
COUNSEL TO RECEIVER**

Came on to be heard the *Receiver's Motion (I) To Approve Proposed Settlement with Former Counsel to Certain Heartland-Related Receivership Parties, (II) To Enter a Bar Order, and (III) To Approve Payment of Fees and Expenses of Reid Collins & Tsai LLP, Litigation Counsel to Receiver* (the "Motion").[4] After considering the Receiver's Motion, all objections or responses thereto, if any, all evidence submitted to the Court, and the arguments of counsel, the Court is of the opinion that said Motion should be **GRANTED** in all respects.

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter this Order. *SEC v. Kaleta*, 530 Fed. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this Case, and the Receiver is a proper party to seek entry of this Order.

2.      The Court finds that the methodology, form, content, and dissemination of notice were reasonably calculated, under the circumstances, to apprise all Heartland Investors, creditors of Heartland-Related Receivership Parties, or Non-Receivership-Party Defendants or Relief Defendants of the Settlement, the releases therein, and the injunctions provided for in this Order, and of the right to object to the Settlement, this Order, and to appear at the hearing on the Motion. The Court further finds that the notice met all applicable

---

[4] Capitalized terms used but not otherwise described herein shall have the meaning ascribed in the Motion and the Settlement Agreement attached to the Motion.

requirements of law and provided all persons a full and fair opportunity to be heard on these matters.

3.       The Court finds that the Settlement, including the Settlement Agreement, was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arms-length, mediated negotiations involving experienced and competent counsel. The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Locke by the Receiver and by others whose potential claims are foreclosed by this Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs may result in an ultimate lower recovery; (iv) Heartland Investors who have allowed claims with the Receiver will ultimately benefit from the Settlement Amount being paid pursuant to the Settlement; and (v) Locke would not have agreed to the terms of the Settlement in the absence of this Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Heartland Receivership Parties. *See SEC v. Kaleta*, No. 4:09-3674, 2012 U.S. Dist. LEXIS 14880, at *34 (S.D. Tex. Feb. 7, 2012) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary). Additionally, the Court finds that any Settled Claims that Heartland Investors, creditors of Heartland-Related Receivership Parties, or Non-Receivership-Party Defendants or Relief Defendants may hold against Locke are derivative of and dependent on the Receiver's claims, "compete for the same dollars" available to satisfy such claims, and any claims held by such parties against Locke therefore

affect Receivership Assets. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 900 (5th Cir. 2019).

4.      The injunction against the Settled Claims, as set forth herein, is therefore a necessary and appropriate order ancillary to the relief obtained for Heartland Investors pursuant to the Settlement. The Court concludes that the Settlement is the best option for maximizing the net amount recovered from Locke for the Heartland-Related Receivership Parties and the Heartland Investors.

5.      The Court further finds that the Receiver's claims process and the proposed distribution plan (subject to further Order of the Court) contemplated in the Settlement Agreement and the Motion have been designed to ensure that all Heartland Investors and creditors of Heartland-Related Receivership Parties have received an opportunity to pursue their claims against any Heartland-Related Receivership Party through the Receiver's claims process, which was previously approved by the Court. *See* ECF No. 431.

6.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all persons claiming an interest in, having authority over, or asserting a claim against Locke or the Heartland-Related Receivership Parties. The Court also finds that this Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally **APPROVED**. The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Order.

7.      Pursuant to Paragraph 40 of the Settlement Agreement, as of the Settlement Effective Date, Locke and all of the other Locke Released Parties, shall be fully, finally, and

forever released and discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Receiver or the Receivership Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, is derivative of, or is in any manner connected with the Settled Claims, as defined in the Settlement Agreement.

8.      Pursuant to Paragraph 41 of the Settlement Agreement, as of the Settlement Effective Date, the Receiver and all of the other Receiver Released Parties, shall be fully, finally, and forever released and discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that Locke ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, is derivative of, or is in any manner connected with the Settled Claims, as defined in the Settlement Agreement.

9.      Notwithstanding anything to the contrary in this Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or

the Settlement Agreement. Further, the foregoing releases do not bar or release any claims that Locke may have against any Locke Released Party, including but not limited to Locke's insurers, reinsurers, employees, and agents.

10.     The Court hereby permanently bars, restrains, and enjoins the Receiver, the Receivership Parties, the Heartland Investors, the creditors of any Heartland-Related Receivership Party, and the Non-Receivership-Party Defendants and Relief Defendants, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Locke or any of the Locke Released Parties, any action, lawsuit, cause of action, liability, claim, investigation, demand, levy, complaint, or proceeding of any nature in any forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Settled Claims, as defined in the Settlement Agreement.

11.     Nothing in this Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any complaints, claims, allegations, or defenses.

12.     Without in any way affecting the finality or enforceability of this Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among

32

other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, and this Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, any distribution plan, and any payment of attorneys' fees and expenses to RCT.

13.     Within five (5) business days of entry, this Order shall be served by counsel for the Receiver, via email, first class mail, or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or the Motion.

14.     The Court expressly determines that there is no just reason for delaying the finality of this Order and that this Order is final and appealable under FED. R. CIV. P. 54(b).

Signed this ___day of _____, 2024.

                                     _____

                                     HAL R. RAY, JR.
                                     UNITED STATES MAGISTRATE JUDGE

<u>Prepared and submitted by</u>:

Danielle Rushing Behrends State
Bar No. 24086961
dbehrends@dykema.com
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

and

Rose L. Romero
State Bar No. 17224700
Rose.Romero@RomeroKozub.com
**LAW OFFICES OF ROMERO | KOZUB**
235 N.E. Loop 820, Suite 310
Hurst, Texas 76053
Telephone: (682) 267-1351

**COUNSEL TO RECEIVER**

**EXHIBIT B (Proposed Order)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | |
| **THE HEARTLAND GROUP VENTURES, LLC; HEARTLAND PRODUCTION AND RECOVERY LLC; HEARTLAND PRODUCTION AND RECOVERY FUND LLC; HEARTLAND PRODUCTION AND RECOVERY FUND II LLC; THE HEARTLAND GROUP FUND III, LLC; HEARTLAND DRILLING FUND I, LP; CARSON OIL FIELD DEVELOPMENT FUND II, LP; ALTERNATIVE OFFICE SOLUTIONS, LLC; ARCOOIL CORP.; BARRON PETROLEUM LLC; JAMES IKEY; JOHN MURATORE; THOMAS BRAD PEARSEY; MANJIT SINGH (AKA ROGER) SAHOTA; and RUSTIN BRUNSON,** | § § § § § § § § § § § § § § § | **No. 4:21-cv-1310-O-BP** |
| **Defendants,** | § § § § | |
| **and** | § § | |
| **DODSON PRAIRIE OIL & GAS LLC; PANTHER CITY ENERGY LLC; MURATORE FINANCIAL SERVICES, INC.; BRIDY IKEY; ENCYPHER BASTION, LLC; IGROUP ENTERPRISES LLC; HARPRIT SAHOTA; MONROSE SAHOTA; SUNNY SAHOTA; BARRON ENERGY CORPORATION; DALLAS RESOURCES INC.; LEADING EDGE ENERGY, LLC; SAHOTA CAPITAL LLC; and 1178137 B.C. LTD.,** | § § § § § § § § § § § | |
| **Relief Defendants.** | § § § | |

## ORDER GRANTING RECEIVER'S MOTION (I) TO APPROVE PROPOSED SETTLEMENT WITH FORMER COUNSEL TO CERTAIN HEARTLAND-RELATED RECEIVERSHIP PARTIES (II) TO ENTER A BAR ORDER, AND (III) TO APPROVE PAYMENT OF FEES AND EXPENSES OF REID COLLINS & TSAI LLP, LITIGATION COUNSEL TO RECEIVER

Came on to be heard the *Receiver's Motion (I) To Approve Proposed Settlement with Former Counsel to Certain Heartland-Related Receivership Parties, (II) To Enter a Bar Order, and (III) To Approve Payment of Fees and Expenses of Reid Collins & Tsai LLP, Litigation Counsel to Receiver* (the "Motion").[1]  After considering the Receiver's Motion, all objections or responses thereto, if any, all evidence submitted to the Court, and the arguments of counsel, the Court is of the opinion that said Motion should be **GRANTED** in all respects.

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter this Order. *SEC v. Kaleta*, 530 Fed. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this Case, and the Receiver is a proper party to seek entry of this Order.

2.      The Court finds that the methodology, form, content, and dissemination of notice were reasonably calculated, under the circumstances, to apprise all Heartland Investors, creditors of Heartland-Related Receivership Parties, or Non-Receivership-Party Defendants or Relief Defendants of the Settlement, the releases therein, and the injunctions provided for in this Order, and of the right to object to the Settlement, this Order, and to appear at the hearing on the Motion. The Court further finds that the notice met all applicable

---

[1] Capitalized terms used but not otherwise described herein shall have the meaning ascribed in the Motion and the Settlement Agreement attached to the Motion.

requirements of law and provided all persons a full and fair opportunity to be heard on these matters.

3.      The Court finds that the Settlement, including the Settlement Agreement, was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arms-length, mediated negotiations involving experienced and competent counsel. The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Locke by the Receiver and by others whose potential claims are foreclosed by this Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs may result in an ultimate lower recovery; (iv) Heartland Investors who have allowed claims with the Receiver will ultimately benefit from the Settlement Amount being paid pursuant to the Settlement; and (v) Locke would not have agreed to the terms of the Settlement in the absence of this Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Heartland Receivership Parties. *See SEC v. Kaleta*, No. 4:09-3674, 2012 U.S. Dist. LEXIS 14880, at *34 (S.D. Tex. Feb. 7, 2012) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary). Additionally, the Court finds that any Settled Claims that Heartland Investors, creditors of Heartland-Related Receivership Parties, or Non-Receivership-Party Defendants or Relief Defendants may hold against Locke are derivative of and dependent on the Receiver's claims, "compete for the same dollars" available to satisfy such claims, and any claims held by such parties against Locke therefore

affect Receivership Assets. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 900 (5th Cir. 2019).

4.      The injunction against the Settled Claims, as set forth herein, is therefore a necessary and appropriate order ancillary to the relief obtained for Heartland Investors pursuant to the Settlement. The Court concludes that the Settlement is the best option for maximizing the net amount recovered from Locke for the Heartland-Related Receivership Parties and the Heartland Investors.

5.      The Court further finds that the Receiver's claims process and the proposed distribution plan (subject to further Order of the Court) contemplated in the Settlement Agreement and the Motion have been designed to ensure that all Heartland Investors and creditors of Heartland-Related Receivership Parties have received an opportunity to pursue their claims against any Heartland-Related Receivership Party through the Receiver's claims process, which was previously approved by the Court.  *See* ECF No. 431.

6.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all persons claiming an interest in, having authority over, or asserting a claim against Locke or the Heartland-Related Receivership Parties. The Court also finds that this Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally **APPROVED**. The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Order.

7.      Pursuant to Paragraph 40 of the Settlement Agreement, as of the Settlement Effective Date, Locke and all of the other Locke Released Parties, shall be fully, finally, and

forever released and discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Receiver or the Receivership Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, is derivative of, or is in any manner connected with the Settled Claims, as defined in the Settlement Agreement.

8.    Pursuant to Paragraph 41 of the Settlement Agreement, as of the Settlement Effective Date, the Receiver and all of the other Receiver Released Parties, shall be fully, finally, and forever released and discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that Locke ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, is derivative of, or is in any manner connected with the Settled Claims, as defined in the Settlement Agreement.

9.    Notwithstanding anything to the contrary in this Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or

the Settlement Agreement. Further, the foregoing releases do not bar or release any claims that Locke may have against any Locke Released Party, including but not limited to Locke's insurers, reinsurers, employees, and agents.

10. The Court hereby permanently bars, restrains, and enjoins the Receiver, the Receivership Parties, the Heartland Investors, the creditors of any Heartland-Related Receivership Party, and the Non-Receivership-Party Defendants and Relief Defendants, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Locke or any of the Locke Released Parties, any action, lawsuit, cause of action, liability, claim, investigation, demand, levy, complaint, or proceeding of any nature in any forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Settled Claims, as defined in the Settlement Agreement.

11. Nothing in this Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any complaints, claims, allegations, or defenses.

12. Without in any way affecting the finality or enforceability of this Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among

other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, and this Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, any distribution plan, and any payment of attorneys' fees and expenses to RCT.

13.     Within five (5) business days of entry, this Order shall be served by counsel for the Receiver, via email, first class mail, or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or the Motion.

14.     The Court expressly determines that there is no just reason for delaying the finality of this Order and that this Order is final and appealable under FED. R. CIV. P. 54(b).

Signed this ___ day of _____, 2024.

_____
HAL R. RAY, JR.
UNITED STATES MAGISTRATE JUDGE

Prepared and submitted by:

Danielle Rushing Behrends
State Bar No. 24086961
dbehrends@dykema.com
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

and

Rose L. Romero
State Bar No. 17224700
Rose.Romero@RomeroKozub.com
**LAW OFFICES OF ROMERO | KOZUB**
235 N.E. Loop 820, Suite 310
Hurst, Texas 76053
Telephone: (682) 267-1351

**COUNSEL TO RECEIVER**

**<u>EXHIBIT C (RCT Expenses)</u>**

# Expenses - Reid Collins & Tsai LLP

| Date | Expense | Description | Amount |
|---|---|---|---|
| 08/22/2023 | W. Reid travel to Dallas for Mediation | Air Transportation | $561.69 |
| 08/22/2023 | W. Reid travel to Dallas for Mediation | Ground Transportation | $234.00 |
| 08/22/2023 | W. Reid travel to Dallas for Mediation | Lodging | $1,049.82 |
| 08/22/2023 | W. Reid travel to Dallas for Mediation | Meals | $1,042.24 |
| 08/22/2023 | K. Cohan travel to Dallas for Mediation | Lodging | $801.11 |
| 08/22/2023 | K. Cohan travel to Dallas for Mediation | Meals | $7.57 |
| 08/22/2023 | K. Cohan travel to Dallas for Mediation | Parking | $60.00 |
| 08/22/2023 | K. Cohan travel to Dallas for Mediation | Mileage | $286.89 |
| 08/22/2023 | M. Menchaca travel to Dallas for Mediation | Air Transportation | $138.98 |
| 08/22/2023 | M. Menchaca travel to Dallas for Mediation | Ground Transportation | $37.75 |
| 08/22/2023 | M. Menchaca travel to Dallas for Mediation | Lodging | $1,214.37 |
| 09/30/2023 | PACER Service Center | Research | $9.40 |
| | **TOTAL EXPENSES** | | **$5,443.82** |