IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:21-cv-01310-O-BP |
| THE HEARTLAND GROUP VENTURES, LLC, *et al.*, | § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Receiver's Omnibus Objection to Claim Submissions Pursuant to Court-Approved Claims Procedure (ECF No. 500) (the "Objection") and attachments in support (ECF Nos. 501-33, 548). On May 13, 2024, the Court ordered any party or person opposing the Objection to file a response by June 3, 2024, and set the Objection for consideration at a hearing, which the Court held on June 6, 2024. ECF No. 537. The Court also ordered the Receiver to transmit a copy of that order (ECF No. 537) to all unrepresented parties and interested persons. *Id.* The Receiver filed proof of that transmission on May 13, 2024. ECF No. 538; *see also* ECF Nos. 539, 543-44. Claimants Angela J. Ruffino ("Ms. Ruffino"), John Rogers ("Mr. Rogers"), and Thomas A. and Suzanne J. Nickens ("Mr. and Mrs. Nickens") filed written responses opposing the Objection. ECF Nos. 545-47. At the June 6 hearing, Mr. Rogers appeared along with his counsel, Fabiana Baum, Esq. of Provost Umphrey Law Firm L.L.P., and Claimant Edward O. Hoem ("Mr. Hoem") appeared *pro se* to oppose the Objection.

After considering the pleadings, legal authorities, arguments heard and evidence admitted at the hearing, and for the reasons discussed below, the undersigned **RECOMMENDS** that United

States District Judge Reed O'Connor **SUSTAIN** the Objection (ECF No. 500), except with respect to Mr. Rogers, and **ENTER** an order in the form substantially like the one attached below.

I.     **BACKGROUND**

This case involves an oil and gas offering fraud conducted over three years. ECF No. 1 at 2. On December 1, 2021, Plaintiff U.S. Securities and Exchange Commission (the "SEC") filed its Complaint (ECF No. 1) and its Emergency Motion for a Temporary Restraining Order and Emergency Ancillary Relief (ECF No. 3), which included an application for the appointment of a receiver for Defendants The Heartland Group Ventures, LLC; Heartland Production and Recovery LLC; Heartland Production and Recovery Fund LLC; Heartland Production and Recovery Fund II LLC; The Heartland Group Fund III, LLC; Heartland Drilling Fund I, LP; Carson Oil Field Development Fund II, LP; Alternative Office Solutions, LLC; ArcoOil Corp.; and Barron Petroleum LLC; and Relief Defendants Dodson Prairie Oil & Gas LLC; Panther City Energy LLC; Encypher Bastion, LLC; Barron Energy Corporation; Dallas Resources Inc.; Leading Edge Energy, LLC; Sahota Capital LLC; and 1178137 B.C. LTD (collectively, the "Receivership Parties").

On December 2, 2021, the Court appointed Deborah D. Williamson as the Receiver and directed her to take possession and control over all funds, property, and other assets in the possession of or under the control of the Receivership Parties. ECF No. 17 at 4-5. Since then, the Receiver has liquidated all of the receivership assets that the Receivership Parties owned or held in their name, and she now intends to distribute certain funds to the defrauded investors and other creditors of the Receivership Parties, in accordance with her Motion for Order Approving Distribution Plan and Interim and/or Final Distribution. *See* ECF No. 534. Thus, she now "seeks

a determination of this Court as to any claim amount on the outstanding disputed claims submissions." ECF No. 500 at 3.

To ascertain the claims of the defrauded investors and other creditors, the Court entered an Order (*see* ECF No. 431), which set a claims bar date, established a claims procedure, approved a notification process, and approved the "net" transaction calculation method for each Known Investor's net Claim amount (as those terms are defined in ECF No. 408 at 6, 13). *See* ECF Nos. 408, 422, 431. The Order required "any known investor that disputed a transaction schedule and/or net transaction amount *and* any non-investor asserting a claim against any Receivership Party . . . to submit proof of the claim" to the Receiver's Court-approved claims agent, Bankruptcy Management Solutions Inc. d/b/a Stretto ("Stretto"), on or before February 5, 2024 at 11:59 p.m. C.S.T. (the "Bar Date"). ECF Nos. 500 at 5; 408; 422; 431.

The Receiver has resolved all of the claims she has received except for thirty-five of them. ECF No. 400 at 5-7. The Receiver replied to each of the disputed claims in accordance with the claims procedure. *Id.* at 6; *see also* ECF Nos. 500-533. She now asks the Court to determine the claim amount, if any of the remaining thirty-five disputed claims. *Id.* at 7.

## II. LEGAL STANDARD

"Once assets have been placed in receivership, it is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (cleaned up and citation omitted). Such discretion stems both from the statutory grant of power from the securities laws and "the court's equitable power to fashion appropriate remedies as 'ancillary relief' measures." *Id.* (citing *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). But the Court's power is not unlimited; it must exercise its broad discretion with the goal of marshalling assets, preserving

value, and equally distributing to similarly situated victims and creditors. *Id.* at 841 (citation omitted); *see also SEC v. Cap. Consultants*, 397 F.3d 733, 738-39 (9th Cir. 2005).

### III. ANALYSIS

#### A. Angela J. Ruffino

Ms. Ruffino claims $50,000.00 from Receivership Party The Heartland Group Ventures. *See* ECF No. 527 at 2. Although she provides ample evidence that she paid $50,000.00 to Southeast Oil & Gas Fund, LLC ("SEOGF") at the urging of her financial advisor, Clifford Moss (*see* ECF Nos. 527, 546), she offers no evidence that a Receivership Party ever actually received those funds. The Court does not doubt that Ms. Ruffino gave Mr. Moss a check made out to SEOGF for $50,000.00, but SEOGF is not a Receivership Party in this case. Although Ms. Ruffino may be entitled to some relief, the Receivership Parties are not the appropriate parties from whom that relief is due. Therefore, it would be neither fair nor equitable to allow her claim. Judge O'Connor should **SUSTAIN** the Objection as to Ms. Ruffino's claim and **DISALLOW** any claim amount for her in this case.

#### B. Edward O. Hoem

Mr. Hoem claims $100,000.00 from all of the Heartland-related Receivership Parties. ECF No. 521 at 5. Mr. Hoem invested $100,000 in Texas International Energy Production, Inc. ("TIEP"). *See* ECF No. 521 at 14. However, TIEP is not a Receivership Party. *Id.* at 6, 14. At the hearing, Mr. Hoem argued that the Heartland-related Receivership Parties assumed TIEP's liabilities, relying on (1) an Assignment and Assumption Agreement signed by Mr. Hoem only (ECF No. 521 at 27); (2) checks Mr. Hoem received from one of the Heartland-related Receivership Parties; and (3) email communications from Mr. Hoem's deceased financial advisor, apparently relaying information from telephone conversations with one of Heartland's executives,

4

which Mr. Hoem read into the record. This evidence is insufficient to show that any Receivership Party received Mr. Hoem's money. Accordingly, Mr. Hoem is not a Known Investor. *See* ECF No. 408 at 6.

This is not, as Mr. Hoem asserted at the hearing, a "creative technicality." The Court may only order distributions to parties whose investment in the Receivership Parties is known, not to parties who invested in non-Receivership Parties, even if a third party represented to Mr. Hoem that his investment was assigned to Heartland. Like Ms. Ruffino's situation, the Receivership Parties are not the appropriate parties against whom Mr. Hoem should seek relief. Accordingly, Judge O'Connor should **SUSTAIN** the Objection as to Mr. Hoem's claim and **DISALLOW** any claim amount for him in this case.

C. **Mr. and Mrs. Nickens**

Mr. and Mrs. Nickens claim $200,000.00 from all Heartland-related Receivership Parties. ECF No. 524 at 4. The Receiver's Net Transaction Amount (as detailed in ECF No. 408) for Mr. and Mrs. Nickens is $98,937.49 (ECF No. 524 at 110), which Mr. and Mrs. Nickens do not dispute. *See* ECF No. 547 at 4. They argue that they are entitled to an additional $100,000.00 from all eighteen Receivership Parties related to their purchase of working interests in the Mariner C Well No. 1 and Loving JW Estate Well No. 1 (the "Nickens Wells"). ECF No. 533 at 3, 11.

Pursuant to the Court's September 5, 2023 Order (ECF No. 404), the Receiver abandoned its oil and gas-related Receivership Assets (except for those in Val Verde and Crockett Counties (ECF Nos. 404; 388 at 3)) "that did not sell pursuant to the Court-approved oil and gas sale procedures" (*see* ECF No. 215). ECF No. 500 at 37. The Nickens Wells did not sell in the sale of assets that the Receiver conducted, and the Receiver has not sold them in any other sale. *Id.* at 38. The Nickens Wells are in Palo Pinto County and Jack County, not Val Verde or Crockett County.

ECF No. 533 at 11. To the extent that the Nickens Wells still exist, Mr. and Mrs. Nickens presumably retain their working interests in them. The funds that the Receiver requests to distribute at this time do not include funds received from sale of the Nickens Wells or Mr. and Mrs. Nickens's working interests in those wells. *See* ECF Nos. 215, 404, 538. Accordingly, distributions based on this claim are not appropriate at this time, and Judge O'Connor should **SUSTAIN** the Objection as to the Mr. and Mrs. Nickens's claims arising from their working interests in the Nickens wells in the amount of $100,000.00 and only allow the claim relating to their Heartland investments in the amount of $98,937.49.

### D.     John Rogers

Mr. Rogers sued Receivership Parties ArcoOil Corp. ("ArcoOil") and Barron Petroleum, LLC ("BP") (collectively the "State Defendants") in the 90th Judicial District Court of Young County, Texas ("the State Case") for personal injuries. ECF Nos. 272 at 2, 4; 500 at 35. He alleges that he worked for one or both of the State Defendants on or about December 16, 2019, when he fell off a drilling rig's muddy catwalk that did not have a slip pad, rig flooring safety matting, guardrails, or any railing. ECF No. 272 at 2. Mr. Rogers and the Receiver stipulate that the State Defendants "did not maintain a general liability insurance policy" or a workers compensation policy when Mr. Rogers was injured. *See also id.* at 2-3. On December 2, 2021, the Court stayed the State Case. *See id.*; ECF No. 1. Mr. Rogers requested the Court to lift the stay so that he could pursue the State Case (ECF No. 272), but the Court denied his motion. ECF Nos. 365, 396.

#### 1.     <u>The Court should allow Mr. Rogers's claim in part.</u>

Mr. Rogers asserts a claim against the State Defendants. ECF No. 531 at 5. At the hearing, he waived his claim against Receivership Party Sahota Capital LLC. In his proof of claim submitted to the Receiver, he did not identify a monetary amount that he sought and only included

his Second Amended Petition from the State Case. *See* ECF No. 531. The Receiver objects to his claim on this ground and asks the Court to disallow it. ECF No. 500 at 37. On May 31, 2024, Mr. Rogers responded to the Objection and asserted $2,377,334.00 in damages for past and future medical bills and expenses; mental anguish, physical pain and suffering, disability, past and future loss of enjoyment of life, loss of earnings and earning capacity, disfigurement, and prejudgment and post-judgment interest. ECF Nos. 545 at 4-5; 531 at 12.

Although the Receiver correctly argues that the Court could, in its discretion, disallow Mr. Rogers's claim because he did not submit a monetary claim by the Bar Date, this would not be fair or equitable. A state court jury in Texas has discretion over the amount of damages to award in personal injury cases. *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 517-18 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citation omitted). "The process of awarding damages for amorphous, discretionary injuries such as physical pain and mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Id.* at 518. Moreover, "personal injury damages are unliquidated and are not capable of certain measurement[.]" *Krishnan v. Ramirez*, 42 S.W.3d 205, 225 (Tex. App.—Corpus Christi 2001, pet denied). The Court stayed the State Case while it was in the discovery phase. ECF No. 272 at 2. Accordingly, under Mr. Rogers's unique circumstance, it is hardly surprising that he had a difficult time ascertaining and asserting a specific monetary claim by the Bar Date. The Receiver was aware of Mr. Rogers's claim well before the Bar Date, though the amount of the claim was not stated until recently. In the interest of justice, Judge O'Connor should **OVERRULE** the Receiver's Objection to Mr. Rogers's claim as untimely.

    2.  <u>The Court should allow Mr. Rogers's claim in the amount of $767,372.54.</u>

  The Court has original jurisdiction over state-law claims that are ancillary to a receivership established under federal security laws. *See Taylor v. Cmty. Bankers Sec., LLC*, No. CIV.A. H-12-02088, 2013 WL 3166336, at *3 (S.D. Tex. June 20, 2013) "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit or by ancillary proceedings." *Riehle v. Margolies*, 279 U.S. 218, 223 (1929) (internal citations omitted).

  The undersigned finds that Mr. Rogers was an employee of ArcoOil and that he was injured on property controlled by BP. The evidence showed that Mr. Rogers was injured on or about December 16, 2019 when he slipped on a drilling rig owned or operated by one or both of the State Defendants. He sustained injuries to his lower back and legs as a proximate result of the negligence of the State Defendants in providing an unsafe place to work. These injuries aggravated preexisting, minimally symptomatic (*see* Rogers's Ex. 1 at 1) back and leg problems. Mr. Rogers sustained lost earning capacity in the past and will, in all reasonable probability, sustain lost earning capacity in the future. He incurred medical expenses in the past and will, in all reasonable medical probability, incur medical expenses in the future due to his injuries. He also suffered pain and mental anguish as a proximate result of his injuries.

  The State Defendants did not provide worker's compensation insurance to Mr. Rogers. Under the Texas Workers' Compensation Act, "an employer who does not have workers' compensation insurance cannot assert the defenses of contributory negligence, assumption of the risk, or negligence of a fellow employee in an action brought by an employee to recover damages for personal injuries." *Cupit v. Walts*, 90 F.3d 107, 109 (5th Cir. 1996) (citing Tex. Lab. Code

Ann. § 406.033 (West 1995)). Accordingly, the State Defendants were negligent on the occasion in question, Mr. Rogers was injured on that day as a proximate result of their negligence, and he is entitled to recover damages from the State Defendants.

Mr. Rogers and the Receiver agreed for the Court to determine Roger's allowed claim amount, if any. *See* ECF No. 500 at 37. At the hearing, Mr. Rogers consented to the Court's jurisdiction, and he and the Receiver offered evidence of his damages. Mr. Rogers maintains that he suffered $1,188,667.00 in economic damages, and he seeks an additional $1,188,667.00 in noneconomic damages. *See* ECF No. 545 at 4-5. The Receiver asserted at the hearing that the evidence supports that Mr. Rogers only suffered $105,238.54 in damages resulting from his past medical expenses and his lost wages from the time of his injury until the Court's order of December 2, 2021 that terminated the employment of the Receivership Parties's employees.

        *a.*        *Mr. Rogers lost $214,650.00 in past earning capacity.*

Mr. Rogers demands damages for loss of earning capacity. ECF No. 532 at 12. In Texas, personal injury plaintiffs may recover damages for past and future loss of earning capacity. *Holcombe v. United States*, 584 F. Supp. 3d 225, 286 (W.D. Tex. 2022) (citing *Texas Pattern Jury Charges – General Negligence, Intentional Personal Torts and Workers' Compensation* (2020), PJC 28.3 & cmt.). "Loss of past earning capacity is a plaintiff's diminished ability to work during the period between the injury and the date of the trial." *Hospadales v. McCoy*, 513 S.W.3d 724, 742 (Tex. App.—Houston [1st Dist.] 2017, no pet.). To analyze a plaintiff's past loss of earning capacity, Courts consider "(1) what the plaintiff's capacity to earn was, and (2) how that capacity was impaired by the injury." *Holcombe*, 584 F. Supp. 3d at 286 (internal quotation marks omitted) (quoting *Perez v. Arredondo*, 452 S.W.3d 847, 862 (Tex. App.—San Antonio 2014, no pet.)). Lost wages are evidence of loss of earning capacity. *Bowler v. Metro Transit Auth.*, No. 01-06-00553-

CV, 2007 WL 1299803, at *2 (Tex. App.—Houston [1st Dist.] May 3, 2007, no pet.) (citing *McIver v. Gloria*, 169 S.W.2d 710, 713 (1943) ("Plaintiff's . . . occasional earnings from work by the day, though not conclusive upon the measure of his damages for loss of earning capacity, [] were not too remote to be of assistance to the jury in estimating his loss." (collecting cases))).

The only evidence of Mr. Rogers's earning capacity at the time of the incident at issue are three checks he received from ArcoOil, in the amounts of $720.00, $972.00, and $216.00, for a total of $1,908.00. ECF No. 551-8 at 11-12. The $720.00 check appears to be dated December 12, 2019, and the other two checks are dated December 20, 2019. *Id.* Mr. Rogers testified that he worked 84 hours per week (or 12 hours per day, 7 days per week) at the rate of $18.00 an hour. *See also* ECF No. 545 at 4. Thus, he says that these checks represent a week's work: 40 regular hours at $18.00 an hour, plus 44 overtime hours at time and a half, or $27.00 an hour. *See also id.* Although he does not recall the exact dates that he worked for ArcoOil as represented on the checks, he remembers that the $720.00 and $972.00 checks each were for separate periods, and that the $216.00 check was a correction for underpaid overtime hours.

The Receiver contends that the checks represent two weeks' worth of work. The Court agrees and finds that the preponderance of the evidence proves that the checks represent two weeks' worth of work. The $720.00 check is dated over a week apart from the other two. Moreover, Mr. Roger's testimony suggests that the $720.00 and $972.00 represent payments for two different time periods. It would be strange for ArcoOil to pay Mr. Rogers twice for work performed in the same week. Moreover, he testified that the $216.00 check was a correction for an underpayment of overtime hours. This would indicate that the $720.00 check (which when divided by $18.00 per hour shows 40 hours of work) erroneously left off his overtime hours. Accordingly, the Court finds that the checks totaling $1,908.00 represent Mr. Rogers's wages over a two-week period.

The Court further finds that, based on his testimony and the checks themselves, Mr. Rogers earned $18.00 per hour for regular hours and $27.00 per hour for overtime hours. Mr. Rogers testified that he worked 84 hours a week, and his damages calculation includes no days off. But the preponderance of the evidence suggests he worked closer to 48.67 hours a week on average. As discussed above, the Court finds that the $720.00 check represents 40 hours of work. Mr. Rogers testified that the $216.00 check represents overtime hours. $216.00 divided by $27.00 per hour equals 8 overtime hours. Similarly, the $972.00 check minus $720.00 (for the regular hours), divided by $27.00 per hour equals 9.33 overtime hours. Thus, on average, Mr. Rogers worked about 8.67 overtime hours per week. The Court therefore finds that his weekly earnings were approximately $954.00. The Court also finds that Mr. Rogers likely would have worked fifty weeks out of the year, making his capacity to earn equal $47,700.00 a year.

The Receiver argues that the Court should only calculate Mr. Rogers's damages to December 2, 2021, the day that the Court's order terminated the employment of the Receivership Parties's employees. ECF No. 17 at 4. The Receiver reasons that because Mr. Rogers would have lost his job with the State Defendants then, he only is entitled to past lost wages from a Receivership Party from the date of his injury to December 2, 2021. But the Court's inquiry does not stop at Mr. Rogers's lost wages. They only inform the Court's determination of Mr. Rogers's capacity to earn. *See McIver*, 169 S.W.2d at 713.

Next, the Court must determine how the injury impaired Mr. Rogers's capacity to earn. *Holcombe*, 584 F. Supp. 3d at 286. Mr. Rogers's treating physician, Richard A. Marks, M.D. opined that Mr. Rogers's fall is the source of his back problems and that it in turn has, even with a successful surgery, likely limited Rogers to "basically sedentary work." Rogers's Ex. 2 at 1. Mr. Rogers's testimony at the hearing supports this conclusion. He has tried to work since his injury,

including as a cattle auctioneer assistant, in which he was required to open and close a gate at a sale barn. But he could not perform this job because it required him to stand for more than six hours a day, which he could not do. Similarly, he has not been able to procure lasting gainful employment since the incident at issue. Mr. Rogers has spent his life acquiring skills related to active work, and the evidence suggests that the injury has greatly diminished his capacity to use those skills. The Receiver presented no evidence to the contrary. Accordingly, the Court finds that Mr. Rogers is entitled to $47,700.00 per year for each year of diminished capacity. It has been 4.5 years since Mr. Rogers's injury, and 4.5 years multiplied by 50 weeks equals 225 weeks. Using a pay rate of $954.00 per week, the Court calculates Mr. Rogers's loss of past earning capacity to be $214,650.00.

### a. Mr. Rogers lost $47,700.00 in future earning capacity.

"Loss of future earning capacity is the plaintiff's diminished capacity to earn a living after the trial." *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 35-36 (Tex. App.—Tyler 2003, pet. denied) (citation omitted). The Court determines lost future earning capacity based on several factors: "(1) past earnings; (2) the plaintiff's stamina, efficiency, and ability to work with pain; (3) the weakness and degenerative changes that will naturally result from the plaintiff's injury; and (4) the plaintiff's work life expectancy." *Perez*, 452 S.W.3d at 862.

Again, the three ArcoOil checks are the only evidence of Mr. Rogers's past earnings. Mr. Roger demands three years' worth of future earnings "based on his age." ECF No. 545 at 5. Mr. Rogers's testimony and Dr. Marks's letters indicate that he is hard working and high in stamina. They support his claim for future loss of earning capacity. *See* Rogers's Ex. 1 at 1. However, Mr. Rogers is 69 years old, and he had six back surgeries before the incident at issue. Rogers's Ex. 1 at 1. Thus, weakness and degenerative changes in all likelihood naturally would have resulted from

Mr. Rogers's previous injuries. Accordingly, the Court finds that the preponderance of the evidence entitles Mr. Rogers to loss of future earning capacity for one year, or $47,700.00.

### b. Mr. Rogers is entitled to $405,022.54 in medical expenses.

The parties do not dispute that Mr. Rogers already has paid $5,022.54 in medical expenses, but they do dispute the amount of his likely future medical expenses. The only evidence in the record of these future damages are two letters from Dr. Marks that Mr. Rogers offered at the hearing. Rogers's Exs. 1 and 2.

The first letter, dated October 6, 2021, indicates that Dr. Marks has treated Mr. Rogers since at least 1992. Rogers's Ex. 1 at 1. Based on an MRI and a CT scan that Dr. Marks ordered, he concluded that "[Mr. Rogers's] symptoms strongly suggested neural compression, but no significant neural compression was noted on the MRI or the CT." *Id.* From the medical evidence that he was able to obtain, Dr. Marks discussed two potential treatment plans with Mr. Rogers. *Id.* First, they discussed a minimally invasive decompressive procedure at the L3-4 level, which would have a global cost "in the $30-40,000 range." *Id.* at 2. Next, they discussed an invasive decompressive procedure combined with fusion at the L3-4 level, which would cost from $250,000 to $350,000. *Id.* at 1.

The second letter, dated April 19, 2024, described Dr. Marks's examination of Mr. Rogers on April 16, 2024. Dr. Marks found that Mr. Rogers's symptoms "were gradually worsening[.]" Rogers's Ex. 2 at 1. "His most recent lumbar MRI[,] dated 3/13/2024, showed disc desiccation at L3-4 as well as L4-5 with disc protrusion at both levels." *Id.* Dr. Marks opined that given Mr. Rogers's symptoms and the radiographic pathology, "his prognosis without surgical intervention is poor." *Id.* Dr. Marks further opined that "the anticipated procedure would be a fusion and neural

13

decompression at L4-5, exploration of fusion with augmentation at L5-S1, and a likely decompressive procedure at L3-L4." *Id.* This surgery costs between $350,000 and $450,000. *Id.*

The Receiver questions Dr. Marks's credibility and asserts that Dr. Marks wrote the 2024 letter after retiring from his medical practice. Mr. Rogers argues that the longstanding relationship with Dr. Marks as his only treating physician suggests that his letters are credible. Moreover, Mr. Rogers's medical records support and are consistent with the letters. *See* Rogers' Ex. 3. Although, as the Receiver argues, Dr. Marks wrote the 2021 letter closer to the injury date, the 2024 letter represents the most current information and indicates that Mr. Rogers's symptoms (left untreated in part due to his inability to pursue the State Case) are worsening and require a more expensive surgical procedure. This treatment is consistent with those contemplated in Dr. Marks's 2021 letter. Accordingly, the Court finds that the preponderance of the evidence supports a finding of $400,000 in damages for future medical expenses.

> *i.     Mr. Rogers is entitled to $100,000.00 in noneconomic damages.*

Mr. Rogers's economic damages are $667,372.54, composed of $214,650.00 in loss of past earning capacity, $47,700.00 in loss of future earning capacity, $5,022.54 in past medical expenses, and $400,000.00 in future medical expenses. Mr. Rogers asks the Court to double his economic damages to account for his pain and suffering, past impairment, loss of enjoyment of life, and mental anguish. ECF No. 545 at 5.

"In Texas, . . . a jury has wide discretion in considering circumstantial evidence of pain and suffering and arriving at a sum." *Montano v. Orange Cnty., Texas*, 842 F.3d 865, 880 (5th Cir. 2016). Mr. Rogers testified that has been in severe pain since he fell on the derrick, that he loathes being a burden on his family, and that he has had thoughts of suicide. He testified that the injury prevents him from making a living for himself. The Court finds that Mr. Rogers is entitled to

$100,000.00 for pain and suffering, impairment, loss of enjoyment of life, and mental anguish because the evidence shows that his injury prevented him from fully enjoying his life and likely will affect his life in the future. The Court finds that Mr. Rogers is not entitled to additional noneconomic damages because such an award would not be fair or equitable based on all of the evidence admitted at the hearing. Accordingly, Judge O'Connor should **ALLOW** Mr. Rogers a claim in this matter in the total amount of $767,372.54.

### E. Remaining Claims

No other claimant responded to the Objection. The Court reviewed each disputed claim, and after considering the claims and the applicable legal authorities, the undersigned finds that Judge O'Connor should **SUSTAIN** the Objection and authorize a partial distribution in the amounts requested by the Receiver, except as to Mr. Rogers's claim.

## IV. CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **SUSTAIN** the Objection (ECF No. 500), except with respect to Mr. Rogers's claim, which the Court should allow in the amount of **$767,372.54, and ENTER** an order in the form substantially like the one attached below.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on June 14, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 4:21-cv-01310-O-BP |
| **THE HEARTLAND GROUP VENTURES, LLC,** *et al.*, | § § § § | |
| **Defendants.** | § | |

### ORDER SUSTAINING RECEIVER'S OMNIBUS OBJECTION TO CLAIM SUBMISSIONS PURSUANT TO COURT-APPROVED CLAIMS PROCEDURE

Came on to be heard the *Receiver's Omnibus Objection to Claim Submissions Pursuant to Court-Approved Claims Procedure* (the "Objection").[1] After considering the Receiver's Objections, all responses thereto, if any, all evidence submitted to the Court, and the arguments of counsel, the Court is of the opinion that the Objection should be **SUSTAINED** as detailed herein.

**IT IS THEREFORE ORDERED** that:

1. Investors in this Case are not entitled to allegedly due amounts relating to interest (paid and/or unpaid), attorney's fees, or any other amounts claimed, whether or not such amounts are based on Heartland investment documentation. Investor claim amounts shall be solely determined in accordance with the "net" transaction calculation method approved in the Claims Procedure Order.

2. Jerry D. Mercer's allowed claim amount in this Case is $25,000.00.

3. Cory J. Dawkins's allowed claim amount in this Case is $70,000.00.

---

[1] Capitalized terms used but not otherwise described herein shall have the meaning ascribed in the Objection or Receivership Order, as applicable.

4. Nichole M. Dawkins's allowed claim amount in this Case is $192,228.70.

5. Sheri Partington's allowed claim amount in this Case is $99,056.04.

6. James L. "Jim" Mundus' allowed claim amount in this Case is $317,247.88.

7. Marvin Christensen's allowed claim amount in this Case is $47,874.98.

8. Jerald C. Katzer's allowed claim amount in this Case is $230,707.19.

9. April McNeeley's allowed claim amount in this Case is $24,822.91.

10. Patrick J. Jordan's allowed claim amount in this Case is 96,458.35.

11. Jeffery Vincent's allowed claim amount in this Case is $23,937.52.

12. Earl Richardson's allowed claim amount in this Case is $180,000.00.

13. John P. Dawkins's allowed claim amount in this Case is $197,147.58.

14. Matthew Mohn's allowed claim amount in this Case is $34,752.08.

15. Stephen Riker's allowed claim amount in this Case is $23,937.52.

16. Lauren Faye Walker & Paul Carlin McCabe Jr.'s allowed claim amount in this Case is $60,000.00.

17. Paul McCabe's allowed claim amount in this Case is $1,600,000.00.

18. Charlotte H. Carson's allowed claim amount in this Case is $39,010.00.

19. Donald P. Albertson's allowed claim amount in this Case is $425,624.97.

20. Tae Kim's allowed claim amount in this Case is $280,000.00.

21. Jeffrey Darrach's allowed claim amount in this Case is $412,999.99.

22. Michael Everette Moore shall not have an allowed claim in this Case.

23. Phyllis Macy shall not have an allowed claim in this Case.

24. Edward O. Hoem shall not have an allowed claim in this Case.

25. Paula S. Guthrie shall not have an allowed claim in this Case.

26. James Irwin's allowed claim amount in this Case is $24,347.50.

27. Thomas and Suzanne Nickens's allowed investor claim amount in this Case is $98,937.49.

28. Flying A Pumping Services, LLC shall not have an allowed claim in this Case.

29. Jeff Michael Haydon shall not have an allowed claim in this Case.

30. Angela J. Ruffino shall not have an allowed claim in this Case.

31. Sabine Royalty Trust, whose claim was submitted by Argent Trust Company, shall not have an allowed claim in this Case, as all royalty payments due by Receivership Party Barron Petroleum LLC through the effective date of abandonment were satisfied in full.

32. Tri-Best Inc. shall not have an allowed claim in this Case.

33. Cowhand Saddlery, LLC dba Cowhand Services shall not have an allowed claim in this Case.

34. Richard H. Spicer shall not have an allowed claim in this Case.

35. John Rogers's allowed claim amount in this Case is $767,372.54.

36. Thomas and Suzanne Nickens shall not have an allowed non-investor claim in this Case. The Nickens's sole allowed claim in this Case relates to their Heartland investments in the amount of $98,937.49.

**IT IS FURTHER ORDERED** that there shall be no further allowed claims in this Case, and all outstanding disputed claims are resolved.

**IT IS FURTHER ORDERED** that the Receiver may take any action necessary with respect to the relief granted herein.

**IT IS FURTHER ORDERED** that this Court retains exclusive jurisdiction with respect to this Order.

**SO ORDERED** this ____ day of _____, 2024.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE